# 25-____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

IN RE ABDERRAHMANE FARHANE,
*Petitioner.*

On Petition for Writ of Mandamus to the United States District Court for the
Southern District of New York, Nos. 18-cv-11973-LAP, 05-cr-00673-LAP

**PETITION FOR A WRIT OF MANDAMUS**

RAMZI KASSEM
NAZ AHMAD
CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
CUNY SCHOOL OF LAW
2 Court Square
Long Island City, NY 11101
(718) 340-4558
ramzi.kassem@law.cuny.edu

ALAN E. SCHOENFELD
DYLAN REICHMAN
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
alan.schoenfeld@wilmerhale.com

ASMA S. JABER
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Attorneys for Petitioner*

November 18, 2025

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ....................................................................................1

RELIEF SOUGHT ....................................................................................2

ISSUES PRESENTED................................................................................2

BACKGROUND ......................................................................................3

A. Criminal Proceedings................................................................3

B. Habeas Proceedings and Appeal..............................................4

C. Remand Proceedings ................................................................6

LEGAL STANDARD...............................................................................9

ARGUMENT ..........................................................................................10

I. THE PETITION RAISES IMPORTANT ISSUES OF FIRST IMPRESSION
FOR THIS COURT ............................................................................10

    A. The District Court's Ruling Finding Overbroad Waiver
Raises An Important, Unresolved Question....................10

    B. The Protections Afforded To Disclosed Communications
Raise An Important Question of First Impression ............14

II. MR. FARHANE'S PRIVILEGE WILL BE LOST IF REVIEW MUST
AWAIT FINAL JUDGMENT................................................................16

    A. Mr. Farhane's Privilege Will Be Lost Without Immediate
Review.....................................................................................17

    B. The Limited Protective Order Exacerbates The Harm
Caused By The Overbroad Waiver Ruling ........................18

III. IMMEDIATE RESOLUTION WILL AVOID THE DEVELOPMENT OF
DISCOVERY PRACTICES OR DOCTRINE UNDERMINING THE
ATTORNEY-CLIENT PRIVILEGE .......................................................20

    A. The Overbroad Waiver Risks The Proliferation Of
Rulings Undermining The Attorney-Client Privilege........20

    B. The Narrow Protective Order Erodes The Attorney-
Client Privilege....................................................................23

IV.   Mr. Farhane Is Clearly Entitled To The Writ......................................25

     A.   The Waiver Finding Is A Clear Abuse Of Discretion........................25

     B.   The Limited Protective Order Is A Clear Abuse Of Discretion ........................................................................30

CONCLUSION ...............................................................................34

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003)................. 14, 15, 18, 23, 31, 32

*Brown v. United States*, 2023 WL 3626466 (S.D.N.Y. Apr. 13, 2023) ..................12

*Bussey v. Greiner*, 320 F. App'x 54 (2d Cir. 2009)...................................12

*Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159
    (2d Cir. 1992)........................................................21, 23

*Farhane v. United States*, 121 F.4th 353 (2d Cir. 2024) .....................................5, 6

*Farhane v. United States*, 77 F.4th 123 (2d Cir. 2023) ............................................5

*Giordano v. United States*, 2011 WL 1831578 (D. Conn. Mar. 17,
    2011) .................................................................................10

*In re City of New York*, 607 F.3d 923 (2d Cir. 2010) ...........................11, 12, 13, 17

*In re County of Erie*, 546 F.3d 222 (2d Cir. 2008) ................... 10, 11, 13, 21, 25, 26

*In re Grand Jury Investigation of Ocean Transportation*, 604 F.2d 672
    (D.C. Cir. 1979) ...........................................................30

*In re Kellogg Brown & Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014)...................22, 23

*In re Long Island Lighting Company*, 129 F.3d 268 (2d Cir. 1997).... 11, 16, 17, 21, 23

*In re Lott*, 424 F.3d 446 (6th Cir. 2005) .......................................................14

*In re Sims*, 534 F.3d 117 (2d Cir. 2008) ...........................................*passim*

*In re von Bulow*, 828 F.2d 94 (2d Cir. 1987)..................... 10, 11, 16, 17, 18, 19, 24

*John Doe Company v. United States*, 350 F.3d 299 (2d Cir. 2003) ...........27, 28, 29

*Kaur v. Warden, Maryland Correctional Institution for Women*,
    151 F.4th 595 (4th Cir. 2025)...............................................32, 33

*Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009) ....................................9

*New York Times Company v. DOJ*, 939 F.3d 479 (2d Cir. 2019) ..........................28

*SEC v. Rajaratnam*, 622 F.3d 159 (2d Cir. 2010) ...................................................12

*Swidler & Berlin v. United States*, 524 U.S. 399 (1998) .........................................13

*Ullrich v. Hearst Corporation*, 809 F. Supp. 229 (S.D.N.Y. 1992) ......16, 24, 30, 31

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) .......................................28

*United States v. Cruz-Polanco*, 2023 WL 119438 (S.D.N.Y. Jan. 6, 2023) ....................................................................................................12

*United States v. Green*, 2020 WL 6822986 (S.D.N.Y. Nov. 19, 2020) .................13

*United States v. Moree*, 220 F.3d 65 (2d Cir. 2000) ...............................................12

*United States v. Nobles*, 422 U.S. 225 (1975) .........................................................27

*United States v. Prevezon Holdings Ltd.*, 839 F.3d 227 (2d Cir. 2016) ....................................................................................................12

*United States v. Ray*, 2021 WL 5493839 (S.D.N.Y. Nov. 22, 2021) .....................13

*United States v. Schulte*, 2020 WL 133620 (S.D.N.Y. Jan. 13, 2020) ...................13

*Upjohn Company v. United States*, 449 U.S. 383 (1981) ........................................13

*Waters v. United States*, 302 A.3d 522 (D.C. 2023) ...............................................15

## DOCKETED CASES

*United States v. Farhane*, No. 05-cr-00673-LAP (S.D.N.Y.) ..................................6

*United States v. Farhane*, No. 18-cv-04347-RPK (E.D.N.Y.) ................................4

## STATUTES AND RULES

28 U.S.C.
 §1651 .........................................................................................................2
 §2255 .........................................................................................................4

Federal Rule of Appellate Procedure 21 ....................................................................2

## OTHER AUTHORITIES

Davidson, George A. & William H. Voth, *Waiver of the Attorney–Client Privilege*, 64 Or. L. Rev. 637 (1986) .................................................13

*Table C-3—U.S. District Courts–Civil Statistical Tables For The Federal Judiciary*, U.S. Courts (June 30, 2025), https://www.uscourts.gov/data-news/data-tables/2022/06/30/statistical-tables-federal-judiciary/c-3 ............................12

# INTRODUCTION

This petition arises from an extraordinary discovery order that threatens to irreparably destroy attorney-client privilege in this case and undermine the fairness of habeas proceedings throughout this Circuit. Following this Court's en banc decision vacating the denial of Abderrahmane Farhane's §2255 motion and remanding for further proceedings, the district court ordered sweeping disclosure of privileged communications between Mr. Farhane and his trial counsel. The court also refused to impose meaningful safeguards to prevent the government from accessing and consulting those communications in parallel proceedings, including a pending civil denaturalization case and any criminal retrial.

Mandamus is necessary here to preserve Mr. Farhane's privilege and avoid irreparable harm to him, and there are several independent reasons the Court should grant it. *First*, this petition presents two important questions of first impression in this Circuit: the scope of waiver of attorney-client privilege when a habeas petitioner alleges ineffective assistance of counsel and the protections afforded to any privileged information disclosed by trial counsel. *Second*, absent mandamus relief, Mr. Farhane's privilege will be permanently lost, and he will be irreparably harmed. Once revealed, these communications cannot be un-disclosed, and post-judgment review cannot remedy this injury. *Third*, resolving this issue will prevent the

adoption of similar orders that fail to meaningfully protect attorney-client communications.

This Court should issue a writ of mandamus because the district court's ruling was a clear abuse of discretion. The court expanded waiver of attorney-client privilege far beyond communications Mr. Farhane relied on. It also denied essential protective measures despite clear legal authority requiring safeguards to prevent privileged information from shaping the government's strategy in other proceedings. Accordingly, Mr. Farhane is entitled to a writ of mandamus.

## RELIEF SOUGHT

Pursuant to the All Writs Act, 28 U.S.C. §1651(a), and Federal Rule of Appellate Procedure 21, Mr. Farhane respectfully requests that this Court grant this petition for a writ of mandamus vacating the district court's order of October 23, 2025, and remanding with instructions to issue a new order consistent with this Court's decision.

## ISSUES PRESENTED

Whether the district court erred in (i) ruling that Mr. Farhane waived privilege as to communications with trial counsel regarding six subjects, including communications upon which Mr. Farhane does not rely in his §2255 proceedings; and (ii) denying Mr. Farhane's request for an order (a) prohibiting the government in any other proceeding from accessing or consulting the information disclosed by

trial counsel and (b) prohibiting individuals participating for the government in this proceeding from participating in or communicating about this matter with any individuals participating for the government in other judicial or administrative proceedings involving Mr. Farhane.

## BACKGROUND

### A.    Criminal Proceedings

Abderrahmane Farhane is a naturalized citizen who immigrated to the United States nearly three decades ago.  *See* A86-87.[1]  He became a U.S. citizen in 2002. *See id*. ¶¶ 15-16.

In 2005, Mr. Farhane was arrested.  He was subsequently indicted, including on a charge of conspiring to provide material support for terrorism.  A31-32.  The conduct underlying that charge allegedly occurred before his naturalization.  *Id.* Trial counsel during Mr. Farhane's criminal proceedings was aware that Mr. Farhane was a naturalized citizen.  A51.

Trial counsel negotiated a plea on behalf of Mr. Farhane.  A89.  Based on his counsel's advice, Mr. Farhane pleaded guilty in November 2006 to making false statements to law enforcement and conspiring to commit money laundering.  A67-71, A169-192.  Trial counsel never discussed with Mr. Farhane that denaturalization

---

[1] Citations to "A" are to the Appendix that is being filed with this Petition.

and deportation were possible consequences of his plea or otherwise advised him about those risks.  A89.

Mr. Farhane served eleven years in prison and was released early, owing to good conduct, in 2017.  A90.  A year after his release, the government filed a civil complaint to revoke Mr. Farhane's naturalization.  A121-192.[2]  The government alleges that Mr. Farhane unlawfully procured his citizenship by falsely affirming, when he applied for citizenship, that he had never committed a crime for which he had not been arrested.  A121-125.  The government's claim rests on the contention that certain conduct admitted in Mr. Farhane's guilty plea shows he "illegally procured" naturalization.  A131-134.

### B.    Habeas Proceedings and Appeal

In December 2018, Mr. Farhane moved pursuant to 28 U.S.C. §2255 to vacate his guilty plea, conviction, and sentence.  A72.  He alleged that his counsel provided ineffective assistance by not warning him of the risks of denaturalization and deportation accompanying his guilty plea.  A75-76.

Mr. Farhane filed an affidavit in support of his §2255 petition in which he described certain communications with trial counsel.  A85-91.  Among other things, he explained that trial counsel never discussed the potential denaturalization and

---

[2]    *United States v. Farhane*, No. 1:18-cv-04347 (E.D.N.Y.) (the "Denaturalization Case").

deportation consequences of his plea and that, had he been properly advised, he would have gone to trial. A88-90.

Nowhere in Mr. Farhane's affidavit does he describe conversations with counsel about the facts of the case, its relation in time to his naturalization, his ties to Morocco, the perceived strengths and weaknesses of the government's case, or trial strategy. Trial counsel did not testify or provide an affidavit.

The district court denied Mr. Farhane's motion, and Mr. Farhane appealed. In August 2023, a divided panel of this Court affirmed. *See Farhane v. United States*, 77 F.4th 123, 133 (2d Cir. 2023). This Court agreed to rehear the case en banc and vacated the denial of habeas relief. *See Farhane v. United States*, 121 F.4th 353 (2d Cir. 2024) (en banc). This Court held that defense attorneys are obligated to inquire about and advise naturalized U.S. citizens of any risk of deportation following denaturalization proceedings that accompanies a guilty plea, like they are for noncitizen clients. *Id*. at 363.

This Court remanded for the district court to address Mr. Farhane's claim of ineffective assistance of counsel. *See Farhane*, 121 F.4th at 374. This Court instructed the district court to evaluate "whether Farhane's counsel's performance in 2006 was objectively unreasonable by analyzing relevant authorities on professional norms and providing Farhane's trial counsel with an opportunity to speak." *Id*. at 375 (emphasis omitted). This Court further instructed the district

court to determine whether any failure to advise was prejudicial to Mr. Farhane. *Id.* at 374-376.

## C.    Remand Proceedings

Because this Court directed that trial counsel be heard on remand, the parties proposed, and the district court ordered, that they file briefs concerning the extent to which Mr. Farhane waived attorney-client privilege by bringing his claim, as the scope of this waiver affects the information that trial counsel would be compelled to disclose.  A92-93.  In particular, the court directed the parties to address (a) the subject matter that trial counsel would be required to disclose and (b) whether otherwise privileged documents must also be produced.  A92.

Mr. Farhane argued that he waived privilege only as to communications upon which he relied in bringing his claim—namely, communications regarding potential denaturalization and deportation consequences of his plea.  Dkt. 290, Mem. In Support of Mot. for Order Concerning Scope of Waiver of Attorney-Client Privilege, at 6-14.[3]  Mr. Farhane also requested that the district court issue a protective order that (1) limited the use of any disclosed communications to the habeas proceedings; (2) prohibited the government from accessing, consulting, or using any such communications in any other proceeding; (3) required any such communications to

_____

[3] Unless otherwise noted, docket entries refer to *United States v. Farhane*, 05-cr-00673-LAP (S.D.N.Y.).

- 6 -

be filed under seal; and (4) prohibited individuals participating for the government in the habeas proceedings from participating in or communicating about this matter with any individuals participating for the government in any re-prosecution of Mr. Farhane and the Denaturalization Case. *See id.* at 15-22.

In contrast, the government argued that Mr. Farhane waived privilege as to "*all* communications *relevant* to" his claim.[4]  Dkt. 293, Opp. to Mot. for Order Concerning Scope of Waiver of Attorney-Client Privilege, at 1.  Specifically, the government argued that Mr. Farhane waived privilege as to communications about six subjects:

> (1) the defendant's naturalization, including whether the naturalization overlapped in time with the offense conduct, (2) the defendant's desire to live in the United States, (3) the nature and strength of the defendant's ties to Morocco or another foreign country, (4) the defendant's attitudes toward United States citizenship for himself or his family, (5) the perceived strength of the Government's evidence, including potential trial defenses, and (6) the defendant's goals and instructions to [trial counsel] with respect to plea negotiations.

*Id.* at 7.  The government also opposed Mr. Farhane's request for a protective order. *Id.* at 9-11.

The district court ruled on October 23, 2025.  A94-108.  The court found that Mr. Farhane waived privilege as to communications with trial counsel regarding all six subjects proposed by the government.  A107.  The court reasoned that waiver

---

[4] All emphases are added and citations omitted, unless otherwise noted.

should extend to subjects that are "directly relevant to the *Strickland* inquiry or are topics upon which Defendant relied in his Affidavit in support of his habeas petition." A102. According to the court, ruling otherwise would be "unfair" to trial counsel, as it would "deny [him] the opportunity to address these topics." A103.

The court granted Mr. Farhane's request for a protective order only in part. It ordered that "[t]he attorney-client privilege shall not be deemed automatically waived in any other Federal or State proceeding by virtue of the Court-ordered disclosure in this §2255 proceeding" and prohibited the government from "using the information disclosed by … trial counsel" absent further court order or written waiver. A108. However, it denied Mr. Farhane's request to "i) prohibit the government from accessing or consulting any such materials in any other proceeding and ii) prohibit individuals participating for the government in this proceeding from participating in or communicating about this matter with any individuals participating for the Government in any future proceedings." A106-107. The court claimed, without further explanation, that there was "no need to constrain the government's ability to communicate amongst itself or restrict its ability to allocate and staff government attorneys, given the government's inability to use the waived material in any future proceedings." *Id.*

The court directed the parties to submit a joint letter "advising the Court of how they propose to proceed." A108. In the parties' joint submission, Mr. Farhane

stated that he intended to seek mandamus review. Because the next event in the district court proceedings is for trial counsel to disclose the information ordered by the district court, Mr. Farhane requested that further proceedings in the district court "be stayed pending [the] resolution of Mr. Farhane's petition for a writ of mandamus." A110. The district court denied that request and ruled that it would stay proceedings only until November 17, 2025 "to permit Defendant to seek a stay from the Court of Appeals." A113.

## LEGAL STANDARD

This Court has long recognized that mandamus review is available where a discovery order threatens to irreparably harm a party's rights by ordering disclosure of privileged information. The Court uses a three-part test to determine whether mandamus is available to review such orders: (1) the petition must raise an important issue of first impression; (2) the privilege will be lost if review must await final judgment; and (3) immediate resolution will avoid the development of discovery practices or doctrine that undermine the privilege. *See In re Sims*, 534 F.3d 117, 129 (2d Cir. 2008); *see also Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-111 (2009) (recognizing mandamus is available to review privilege rulings, even though not appealable as collateral orders).

When mandamus review is available, a district court's finding that a party has waived privilege is reviewed under the abuse-of-discretion standard. *Sims,* 534 F.3d

at 131-132 (citing *In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987)). "A district court has abuse[d] its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *Id.* at 132 (citations and quotation marks omitted).

## ARGUMENT

I. **THE PETITION RAISES IMPORTANT ISSUES OF FIRST IMPRESSION FOR THIS COURT**

A. **The District Court's Ruling Finding Overbroad Waiver Raises An Important, Unresolved Question**

Mr. Farhane's petition presents an important issue the Second Circuit has not directly addressed in this context: the extent to which a habeas petitioner alleging ineffective assistance of counsel waives attorney-client privilege over communications with prior counsel. Though this Court has addressed implied waiver of attorney-client privilege generally, *see, e.g.*, *In re County of Erie*, 546 F.3d 222, 228-229 (2d Cir. 2008), it "has never had occasion to consider" the scope of a habeas petitioner's privilege waiver when asserting an ineffective-assistance claim, *see Giordano v. United States*, 2011 WL 1831578, at *2 (D. Conn. Mar. 17, 2011).[5]

A petition raises an important issue of first impression where, as Mr. Farhane does here, the petitioner seeks mandamus to determine the scope of a privilege

---

[5] The district court's observation in *Giordano* in 2011 remains true today.

waiver in "an entirely new context." *Sims*, 534 F.3d at 129 (factor met where this Court had not addressed "waiver … in the context of the psychotherapist-patient privilege"); *see, e.g.*, *In re City of N.Y.*, 607 F.3d 923, 940 (2d Cir. 2010) (same where the "petition require[d the Court] to clarify so many aspects of [its] standard for addressing claims of law enforcement privilege"); *Erie*, 546 F.3d at 227 (same where Court was asked "to clarify the scope of the waiver"); *von Bulow*, 828 F.2d at 97 (same where petition sought review of privilege waiver based on attorney publishing book).

This Court established a framework for litigating claims of implied waiver of attorney-client privilege. Under that framework, a litigant impliedly waives attorney-client privilege only when he "*rel[ies]* on privileged advice from his counsel to make his claim," and the opposing party requires those communications, as a matter of fairness, to rebut the claim or defense. *Erie*, 546 F.3d at 229 (emphasis in original). Because this Petition involves "the extension of [this] established principle" (implied waiver) "'to an entirely new context'" (habeas proceeding asserting an ineffective-assistance claim), mandamus review is appropriate. *Sims*, 534 F.3d at 129 (quoting *In re Long Island Lighting Co.*, 129 F.3d 268, 271 (2d Cir. 1997)).

Further, resolving the issues in this Petition would "aid in the administration of justice by helping district courts avoid erroneous discovery orders" in future

habeas proceedings. *SEC v. Rajaratnam*, 622 F.3d 159, 171 (2d Cir. 2010); *see City of N.Y.*, 607 F.3d at 942 (mandamus raised significant issue where Court "will provide guidance for the courts of our Circuit in an important, yet underdeveloped, area of law"); *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 238 (2d Cir. 2016) ("Addressing this unusual set of circumstances will offer useful guidance to the district courts."). Hundreds of habeas petitions like Mr. Farhane's are filed in this Circuit each year. *See Table C-3—U.S. District Courts–Civil Statistical Tables For The Federal Judiciary*, U.S. Courts (June 30, 2025) (more than 100 habeas petitions filed between January 2025 and June 2025). And it "'is commonplace for … a defendant to allege' ineffective assistance of counsel" in habeas proceedings. *Bussey v. Greiner*, 320 F. App'x 54, 56 (2d Cir. 2009) (quoting *United States v. Moree*, 220 F.3d 65, 71 (2d Cir. 2000)).

Yet district courts in this Circuit routinely misapply this Court's framework governing implied waiver when dealing with these claims. Some district courts, purporting to apply *Erie* in habeas proceedings, have found (incorrectly) that petitioners bringing these claims waive privilege as to *all communications* or all *relevant* communications with prior counsel. *See, e.g.*, *Brown v. United States*, 2023 WL 3626466, at *1 (S.D.N.Y. Apr. 13, 2023); *United States v. Cruz-Polanco*, 2023 WL 119438, at *1 (S.D.N.Y. Jan. 6, 2023); *United States v. Green*, 2020 WL

6822986, at \*4-5 (S.D.N.Y. Nov. 19, 2020).[6]  This misapplication leads to exceedingly broad waivers of privilege rather than limiting those waivers to those communications upon which petitioner relies.

This Petition presents this Court with the opportunity to correct this recurring misapplication of law.  This issue could hardly be more significant, given the "need for certainty and predictability inherent in the purpose of the [attorney-client] privilege" and that "[d]ecisions on questions of privilege may have a far more profound effect on the administration of justice than the decisions on questions of substantive law to which judges give most of their attention."  *City of N.Y.*, 607 F.3d at 942 (quoting Davidson & Voth, *Waiver of the Attorney–Client Privilege*, 64 Or. L. Rev. 637, 639, 666 (1986)); *see also Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981) ("An uncertain privilege … is little better than no privilege at all.").  The attorney-client privilege is one of the "oldest recognized privileges for confidential communications," and its purpose is to "encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'"  *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998).  Non-intervention by this Court risks

---

[6] *But see United States v. Schulte*, 2020 WL 133620, at \*4 (S.D.N.Y. Jan. 13, 2020) (noting that the "key" to finding implied waiver is that the party "*relies* on the privileged communication" (quoting *Erie*, 546 F.3d at 228)); *United States v. Ray*, 2021 WL 5493839, at \*6 (S.D.N.Y. Nov. 22, 2021) (same).

disincentivizing habeas petitioners from bringing these claims, and "[d]emanding that a person waive any of these privileges in order to assert [his claim] is inconsistent with society's historical insistence that these confidential relationships deserve protection." *In re Lott*, 424 F.3d 446, 456 (6th Cir. 2005).

**B.     The Protections Afforded To Disclosed Communications Raise An Important Question of First Impression**

This Petition raises another important issue of first impression in this context: the protection afforded to otherwise privileged communications disclosed during habeas proceedings.

This Court has not yet addressed this issue, but other courts have.  In *Bittaker v. Woodford*, the Ninth Circuit affirmed entry of a protective order "precluding use of the privileged materials for any purpose other than litigating the federal habeas petition, and barring the Attorney General from turning them over to any other persons or offices, including, in particular, law enforcement or prosecutorial agencies."  331 F.3d 715, 717 (9th Cir. 2003) (en banc).  District courts, the Ninth Circuit explained, "should aim to restore [the defendant] to the position he would have occupied, had the first trial been constitutionally error free."  *Id.* at 722. Allowing prosecutors to use otherwise privileged information in different proceedings, like a retrial, "would assuredly not put the parties back at the same starting gate."  *Id.* at 722-723.  Instead, it would likely "give the [government] a wholly gratuitous advantage" because it would "skew the second trial in the

prosecution's favor." *Id.* at 722-724. Following *Bittaker*, "every court to have considered this issue seems to agree" with this approach. *Waters v. United States*, 302 A.3d 522, 534 & n.2 (D.C. 2023) (collecting cases).

This question is significant to any habeas petitioner who seeks a new trial due to ineffective assistance of trial counsel. If disclosed communications are not protected, a petitioner would face an unfair retrial even if his habeas petition is successful. But it is especially significant to those (like Mr. Farhane) who face additional judicial and administrative proceedings like civil denaturalization and removal. For this reason, courts must strictly limit disclosure to what is necessary to adjudicate the habeas claim.

It is not enough to order—as the district court did here—that the materials should be filed under seal, that the disclosure of otherwise privileged materials does not constitute waiver in another proceeding, and that the materials may not be "us[ed]" in other proceedings. A108. Instead, it is also necessary to prevent government personnel involved in the habeas proceeding from participating in other proceedings and to prevent government personnel involved in other proceedings from consulting disclosed materials. "Adverse use … includes knowing what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject, and innumerable other uses." *Ullrich v. Hearst Corp.*, 809

- 15 -

F. Supp. 229, 236 (S.D.N.Y. 1992) (Leval, D.J.)).  As a result, a protective order that bars only the use of otherwise privileged materials but does not prevent government personnel in other proceedings from consulting those materials is inadequate.

Absent clarity on the limits district courts should impose on the disclosure and use of privileged information provided in habeas proceedings, habeas petitioners will face grave uncertainty as to whether such information may be used against them elsewhere.  Habeas petitioners should not be forced to choose between two fundamental rights: the right to effective assistance of counsel and the right to privileged and confidential attorney-client communications.

## II.    MR. FARHANE'S PRIVILEGE WILL BE LOST IF REVIEW MUST AWAIT FINAL JUDGMENT

The district court's order threatens to irreparably harm Mr. Farhane if review of that order awaits final judgment.  As this Court has recognized, this factor is "normally present when the privilege is meant to protect the confidentiality of a communication," *Sims*, 534 F.3d at 129, like the communications between an attorney and client, because "a remedy after final judgment cannot unsay the confidential information that has been revealed," *von Bulow*, 828 F.2d at 99.  Indeed, "[t]he absence of an effective remedy once the case reaches the appellate stage in the normal course of proceedings justifies the more liberal use of mandamus in the context of privilege issues."  *See Long Island Lighting*, 129 F.3d at 271; *von Bulow*,

828 F.2d at 99 (collecting cases). Because post-judgment review cannot undo the disclosure, mandamus is the only adequate avenue of review for Mr. Farhane.

### A.    Mr. Farhane's Privilege Will Be Lost Without Immediate Review

In recognition of "the more liberal use of mandamus in the context of privilege issues," *Long Island Lighting*, 129 F.3d at 271, this Court has consistently found mandamus warranted where disclosure of privileged communications would result in irreparable harm, as post-judgment review cannot restore confidentiality. *See, e.g.*, *Sims*, 534 F.3d at 129 (granting writ and reversing order requiring disclosure of psychiatric records because disclosure could not be remedied on appeal); *City of N.Y.*, 607 F.3d at 940-942 (granting writ and vacating order requiring disclosure of law-enforcement materials, finding post-judgment appeal inadequate); *Long Island Lighting*, 129 F.3d at 271 (granting writ and vacating order finding waiver where party would "lose the privilege" absent mandamus review).

"[A] remedy after final judgment cannot unsay the confidential information that has been revealed." *von Bulow*, 828 F.2d at 99; *see also Sims*, 534 F.3d at 129. For example, in *von Bulow*, the Court granted mandamus and vacated an order compelling disclosure of attorney-client communications after counsel published a book recounting aspects of the representation. 828 F.2d at 98-99. The Court rejected the district court's broad waiver ruling, emphasizing that compliance with the order

would "destroy[] the right sought to be protected," and that awaiting appeal after judgment "is inadequate at best" and "often an exercise in futility." *Id.*

That reasoning applies with equal, if not greater, force here. Mandamus is the only appropriate mechanism to review the court's order. Otherwise, "his confidential communications will already have been exposed." *von Bulow*, 828 F.2d at 99. Post-judgment review is particularly inadequate here, as the court allowed the government to consult these communications in the pending Denaturalization Case against Mr. Farhane. An appeal after final judgment—even if successful—would therefore be "an exercise in futility." *Id.*

## B. The Limited Protective Order Exacerbates The Harm Caused By The Overbroad Waiver Ruling

The district court's order, which permits government attorneys not assigned to Mr. Farhane's habeas case to consult privileged communications disclosed by trial counsel, multiplies the harm caused by finding an overly broad waiver of privilege. If review must await final judgment, Mr. Farhane's privilege will be irreparably lost.

Even though the order nominally limits use of the disclosed communications to the habeas proceeding absent further court order, it allows government employees who may participate in the Denaturalization Case, a potential retrial if Mr. Farhane's conviction is vacated, or potential removal proceedings to access those materials. Courts recognize that such access—even absent formal use—can irreparably damage a litigant's rights. *See Bittaker*, 331 F.3d at 727-728 ("[D]istrict courts have

the obligation, whenever they permit discovery of attorney-client materials as relevant to the defense of ineffective assistance of counsel claims in habeas cases, to ensure that the party given such access does not disclose these materials, except to the extent necessary in the habeas proceeding, i.e., to ensure that such a party's actions do not result in a rupture of the privilege.").

The risk is not abstract here. The government has already filed a civil complaint seeking to revoke Mr. Farhane's citizenship based on alleged misrepresentations during the naturalization process, leveraging the criminal conviction that Mr. Farhane seeks to vacate. A121. The district court's order requires disclosure of privileged communications directly relevant to that case, including "whether the naturalization overlapped in time with the offense conduct" and Mr. Farhane's "attitudes toward United States citizenship." A107. Without an order walling off prosecutors, there is a grave risk that privileged information will be shared and shape the government's strategy in the Denaturalization Case. And once that information is shared, it cannot be unshared. *See von Bulow*, 828 F.2d at 99 ("[A] remedy after final judgment cannot unsay the confidential information that has been revealed ….").

III. **IMMEDIATE RESOLUTION WILL AVOID THE DEVELOPMENT OF DISCOVERY PRACTICES OR DOCTRINE UNDERMINING THE ATTORNEY-CLIENT PRIVILEGE**

The Court should resolve this issue at this time to prevent similarly broad waivers of attorney-client privilege and overly narrow protective orders in ineffective-assistance cases from becoming further widespread in this Circuit.

A. **The Overbroad Waiver Risks The Proliferation Of Rulings Undermining The Attorney-Client Privilege**

The district court's order risks undermining the attorney-client privilege and inspiring decisions that are out of step with this Court's precedent in two ways.

*First*, the district court found that Mr. Farhane waived privilege as to a broad swathe of communications upon which he does not rely and the disclosure of which the government does not need to defend against his claim. The district court did so by misconstruing this Court's implied-waiver doctrine and accepting the government's contention that waiver should extend to subjects that are "directly relevant to the *Strickland* inquiry" *or* those "upon which Defendant relied." A102-103. It concluded that Mr. Farhane waived privilege over topics including Mr. Farhane's "desire to live in the United States," the "nature and strength" of Mr. Farhane's ties to "Morocco or another foreign country," his "attitudes toward United States citizenship for himself or his family," and the "perceived strength of the Government's evidence," A107, even though he does not rely on communications regarding any of those topics to assert his claim. The Court applied a far more

- 20 -

permissive test than this Court requires, and it risks rendering reliance sufficient, but not necessary, for implied waiver.

This Court's decision in *Sims* is instructive. There, the Court granted mandamus relief from an order that threatened to "eviscerate the effectiveness of the psychotherapist-patient privilege," if similar orders "proliferat[ed]." 534 F.3d at 130. The district court reasoned that "a plaintiff's allegation that an assault on him was unprovoked" forfeited the psychotherapist-patient privilege by placing his mental state at issue. *Id.* If left undisturbed, the Second Circuit predicted, the "'potentially broad applicability and influence of the privilege ruling under attack[]'" created "uncertainty as to whether a privileged communication [would] be protected." *Id.* at 129 (quoting *Long Island Lighting*, 129 F.3d at 271).

Like that privilege ruling, the district court's order here has "'potentially broad applicability[,]'" *Sims*, 534 F.3d at 129, and throws into doubt whether ineffective-assistance claims impliedly waive privilege over communications on any topic "directly relevant" to petitioners' claims, A102. This is so despite clear language in *Erie* stating that the touchstone for implied waiver is reliance, not relevance. 546 F.3d at 229. This Court must not "fail to act now," to forestall an outcome where "the attorney-client privilege will have been undermined" if comparable privilege rulings spread further. *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 164 (2d Cir. 1992).

- 21 -

*Second*, rather than examining whether fairness to the *opposing party* requires deeming privilege over certain communications waived, the district court considered whether it would be "unfair to deny [*trial counsel*] the opportunity to address these topics." A103 (emphasis added); *see also* A103-104 ("Fairness demands that [trial counsel] be permitted an opportunity to disclose communications regarding Petitioner's goals and instructions to him with respect to plea negotiations."). That is not the proper question. This reformulated fairness inquiry threatens to "upend certain settled understandings and practices" concerning the limits of implied waiver. *In re Kellogg Brown & Root, Inc.,* 756 F.3d 754, 762 (D.C. Cir. 2014). It would vastly expand communications for which courts deem privilege impliedly waived to encompass those that as a matter of fairness to trial counsel must be disclosed (without guidance for district courts to judge what it means for disclosure to be "fair" to trial counsel), not those that the opposing party requires to defend itself in court.

Mandamus relief is therefore warranted to avoid this error from infecting future decisions concerning implied waiver in habeas petitions. If left to "proliferat[e]," orders like this one would render "uncertain" the integrity of attorney-client privilege over communications between criminal defendants and trial counsel. *Sims,* 534 F.3d at 130. Such rulings have the potential to destabilize the attorney-client privilege and relationship by chilling communications between

defendants and counsel on sensitive topics core to representation and to deter individuals from seeking to vindicate their constitutional right to effective assistance of counsel if that pursuit risks broad waiver of privilege. *See Long Island Lighting*, 129 F.3d at 271 (granting mandamus where order "may call into question the status of confidences exchanged when employers seek legal counsel concerning ERISA plans"); *Chase Manhattan Bank*, 964 F.2d at 164 (same where "were [the Court to] fail to act now, use of the procedure might become widespread" and "the attorney-client privilege will have been undermined").

**B.    The Narrow Protective Order Erodes The Attorney-Client Privilege**

Likewise, the minimal protections that the district court afforded the disclosed communications risk "upend[ng] certain settled understandings and practices[,]" *Kellogg*, 756 F.3d at 762, regarding protective orders in cases like these.

As explained previously, *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003) (en banc), is the seminal case on this issue. There, the Ninth Circuit affirmed entry of an order requested by a habeas petitioner raising an ineffective-assistance challenge that limited use *and* disclosure of the privileged material to the habeas proceeding. *Id.* at 717, 728. The district court's order here is at odds with this approach, which has been adopted by courts throughout the country. *See supra* p. 15. Instead of restoring Mr. Farhane to the position he would have occupied, it offers the government an unfair and unwarranted strategic advantage in the

Denaturalization Case and any retrial of Mr. Farhane—not to mention any removal proceedings—by allowing government employees to communicate about otherwise privileged materials with attorneys participating in these proceedings against Mr. Farhane. The order enables the government to use Mr. Farhane's privileged communications to shape its strategic approach, the legal theories they pursue, the questions they ask witnesses, the witnesses they call, and more. *See Ullrich v. Hearst Corp.*, 809 F. Supp. 229, 236 (S.D.N.Y. 1992) (Leval, D.J.) ("Adverse use of confidential information … includes knowing what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject, and innumerable other uses.").

Should this protective order be left to stand, and similar privilege rulings issue thereafter, this could threaten to "eviscerate the effectiveness," *Sims,* 534 F.3d at 130, of the attorney-client privilege. At the very least, such inadequate protections render the force of the privilege "'uncertain,'" which is reason enough for intervention by this Court to "prevent the development of discovery practices" that breed doubt about the extent to which defendants can rely on this fundamental and sacrosanct privilege. *Id*. at 129 (quoting *von Bulow*, 828 F.2d at 100).

- 24 -

IV.    **MR. FARHANE IS CLEARLY ENTITLED TO THE WRIT**

A.    **The Waiver Finding Is A Clear Abuse Of Discretion**

The district court's ruling on the scope of the waiver was an abuse of discretion three times over.

*First*, the decision was "'based … on an erroneous view of the law,'" *Sims*, 534 F.3d at 132, because the district court found, in the face of this Court's precedents governing implied waivers, that Mr. Farhane waived privilege over communications on which he does not rely to make his claim, A101-104. A litigant impliedly waives privilege only when he "*rel[ies]* on privileged advice from his counsel to make his claim," and the opposing party requires those communications, as a matter of fairness, to defend against that claim. *Erie*, 546 F.3d at 229 (emphasis in original). Reliance is the "key to a finding of implied waiver" and "the essential element … in order to effect a waiver." *Id.* at 228-229. Since "privileged information may be in some sense *relevant* in any lawsuit," this is "insufficient to place legal advice at issue." *Id.* at 229.

Here, Mr. Farhane *relies* only on communications with trial counsel concerning the potential denaturalization and deportation consequences of his plea, and the government requires no additional communications as a matter of fairness. As Mr. Farhane explains, trial counsel did not discuss with him the possibility of

- 25 -

denaturalization and deportation as a consequence of his plea agreement, or advise him to those risks, A89, and that is the basis for his habeas claim, A75-76.

Though Mr. Farhane's affidavit mentions other conversations with counsel, Mr. Farhane did not "*rely* on" on those conversations with "his counsel to make his claim." *See Erie*, 546 F.3d at 229. Those facts are not necessary to prove his claim or can be established by other evidence. For example, that he was told by his counsel that going to trial was "not a good idea," A88, is not necessary to Mr. Farhane's claim because he has asserted he *would have* gone to trial had he known about the potential immigration consequences of a guilty plea. Mr. Farhane's stated priority that he wanted "the shortest separation from [his] family," A88, is apparent from the contemporaneous record evidence and without any privileged conversations. His statement relaying his trial counsel's generic advice that he would "negotiate the best possible deal," A89, is not relevant to his ineffective-assistance claim. And the fact that his counsel advised him that he faced a long prison sentence, *id.*, is provable from record evidence other than his privileged conversations with counsel, such as from the plea agreement that both counsel and client reviewed before signing.

Nonetheless, the district court ruled that privilege was waived over subjects unrelated to Mr. Farhane and trial counsel's discussions (or a lack thereof) of the denaturalization and deportation consequences of his plea. By accepting the government's view that waiver should extend to subjects that are "directly relevant

to the *Strickland* inquiry" *or* those "upon which Defendant relied," A102, the court contravened *Erie*'s demand that reliance—not relevance—is the touchstone.

*Second*, the decision was based on a second, related erroneous view of the law. The district court took the incorrect view that when Mr. Farhane waived privilege as to communications with trial counsel, fairness required finding a waiver of privilege as to communications on which he does not rely, simply because those communications could potentially be relevant and help rebut his ineffective-assistance claim generally, rather than the specific factual assertions at issue. *See* A101-104.

The fairness prong of the implied waiver doctrine does not sweep so broadly. Instead, fairness requires finding waiver only over communications "as to the facts the [petitioner] put in issue." *John Doe Co. v. United States*, 350 F.3d 299, 303 (2d Cir. 2003). Seminal implied-waiver cases make as much clear. For example, in *United States v. Nobles*, 422 U.S. 225 (1975), the defendant wished to call as a witness an investigator that he hired. *Id.* at 229. The investigator had produced a report of his interview of a key witness for the prosecution, and the government sought to compel production of that report. *Id.* The trial court held, and the Supreme Court affirmed, that by calling the investigator, the defendant had waived privilege as to the report. *Id.* at 239-240. The Court did not rule, however, that other privileged information possessed by the investigator—for example, conversations

- 27 -

with the defendant about the witness—must be disclosed simply because they could help the prosecution rebut the defendant's case. The Court required disclosure only of information about the topic the defendant placed at issue—the witness's interview.[7]

The crux of the fairness prong is that when a litigant places certain facts regarding privileged communications at issue, the opposing party should have access to "*directly* pertinent material that might effectively impeach" the litigant's assertions. *John Doe*, 350 F.3d at 303. It is not a license to open the door to other communications between an attorney and his client that do not relate to the litigant's asserted fact, merely because they could help an adversary.

Here, Mr. Farhane concededly put at issue the absence of conversations with his attorney about denaturalization and deportation. *See* A75-76, 89. The government is entitled only to "directly pertinent material that might effectively impeach" Mr. Farhane's claim that no such conversations occurred. *John Doe*, 350 F.3d at 303. Yet the district court swept far more broadly, ruling that privilege was waived over subjects entirely unrelated to this question. The doctrine of implied

---

[7] *See also United States v. Bilzerian*, 926 F.2d 1285, 1291-1292 (2d Cir. 1991) (finding waiver over "conversations with counsel regarding the legality of [defendant's] schemes" where defendant intended to testify regarding legality of conduct, without finding waiver as to other conversations with counsel).

waiver "is not nearly so broad." *N.Y. Times Co. v. DOJ.*, 939 F.3d 479, 496 (2d Cir. 2019).

*Finally*, the district court made a third error of law. The fairness prong of the implied-waiver doctrine considers "fairness to the party's adversary"—here, the government. *John Doe*, 350 F.3d at 302. Instead, the district court required broad disclosure of privileged communications out of fairness to trial counsel. *See* A103 ("it would be unfair to deny [trial counsel] the opportunity to address these topics"); A103-104 ("Fairness demands that [trial counsel] be permitted an opportunity to disclose communications regarding Petitioner's goals and instructions to him with respect to plea negotiations."). Just because this Court instructed the district court to "provid[e] Farhane's trial counsel with an opportunity to speak," does not mean that he should be allowed—let alone required—to disclose privileged communications with Mr. Farhane unrelated to Mr. Farhane's specific factual assertions. Nor does it mean that this Court intended to bless in passing a dramatic departure from the norm that considerations of fairness to the adversary are what matters. The district court's decision—based on "[f]airness" to trial counsel, not to the government (A103-104)—is thus at odds with the law governing implied waiver. *See John Doe*, 350 F.3d at 302. That is a paradigmatically "erroneous view of the law" that constitutes an abuse of discretion. *Sims*, 534 F.3d at 132.

### B.     The Limited Protective Order Is A Clear Abuse Of Discretion

To prevent the government from using information from trial counsel to its advantage in the Denaturalization Case, a potential retrial, or potential administrative removal proceedings, Mr. Farhane requested that the district court prohibit (1) the government from accessing or consulting any materials disclosed by trial counsel in any other proceeding, and (2) individuals from the government participating in the habeas case from participating in or communicating about materials from trial counsel with government officials participating in any other proceeding. *See* Dkt. 290, at 19-22. The district court rejected that request. *See* A106-107. That decision was based on an "'erroneous view of the law'" governing protective orders and was therefore an abuse of discretion. *Sims*, 534 F.3d at 132.

Critically, the district court failed to acknowledge the commonsense fact that "Government attorneys' minds cannot be expunged" once they learn of privileged information, *In re Grand Jury Investigation Ocean Transp.*, 604 F.2d 672, 675 (D.C. Cir. 1979). Such information can prove vital to those prosecuting other cases even where it cannot be formally "used" in those cases. *See, e.g., Ullrich*, 809 F. Supp. at 236 ("Adverse use of confidential information is not limited to disclosure. It includes knowing what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject, and innumerable other uses.").

The district court's ruling gives the government wide latitude to use—even if not formally as evidence or otherwise—information from trial counsel to shape and strengthen their case in other proceedings. Take, for example, the Denaturalization Case. Under the district court's ruling, trial counsel will be required to disclose information related to Mr. Farhane's naturalization, including whether trial counsel understood Mr. Farhane to have been aware that "the naturalization overlapped in time with the offense conduct." A107. That is at the very heart of the Denaturalization Case. A121-122. As a result, under the district court's order, Mr. Farhane may face a perverse scenario in which he prevails on his habeas claim but is actually left worse off than before, not "restore[d] to the position he would have occupied, had the first trial been constitutionally error-free." *Bittaker*, 331 F.3d at 722.

Same for a removal proceeding in immigration court. The order would have trial counsel testify as to Mr. Farhane's "desire to live in the United States," "the nature and strength of [his] ties to Morocco," and his "attitudes toward United States citizenship for himself or his family." A107. It takes no stretch to imagine how the government might use what it learns from trial counsel to shape its strategy and pursue certain lines of attack, so that it might deport Mr. Farhane to Morrocco. *See Ullrich*, 809 F. Supp. at 236.

And should Mr. Farhane ultimately prevail in his habeas proceedings, allowing the same government officials handling his habeas case to participate in his retrial is patently unfair. Here, the district court has ordered trial counsel to testify about "the perceived strength of the government's evidence, *including potential trial defenses.*" A107 (emphasis added). Allowing the government to learn about Mr. Farhane's potential trial defenses, then giving it the opportunity to keep the same attorneys on the case to prosecute a retrial, or to communicate freely with other prosecutors, would be exactly the type of "wholly gratuitous advantage" that courts must avoid providing the government. *Bittaker*, 331 F.3d at 724.

That concern is not merely hypothetical—the Fourth Circuit faced the results of such a tainted retrial in *Kaur v. Warden, Maryland Correctional Institution for Women*, 151 F.4th 595 (4th Cir. 2025). There, the defendant was convicted of murder. In state habeas proceedings, the defendant alleged ineffective assistance of counsel, and her trial counsel provided an affidavit about his representation. *Id.* at 600-601. The trial court granted her petition for post-conviction relief. The defendant requested (among other things) "that the State be required to use a different prosecution team in the new trial—one that had not been privy to the privileged evidence." *Id.* at 603. The trial court rejected that request. *Id.* Instead, like the district court here ordered below, it prohibited the state only "from using as direct evidence Kaur's testimony relating to attorney-client communication or

information contained in the affidavit filed in support of Kaur's motion for a new trial." *Id.*

But on retrial in *Kaur*, the state was able to use the privileged information it had learned to fashion a new strategy and severely hamper the defense. 151 F.4th at 603-607. While the state courts denied postconviction relief, the Fourth Circuit found it "was objectively unreasonable and ignored clear and convincing evidence to the contrary" for the state court to find that this did not prejudice the defendant at her second trial. *Id.* at 608.[8]

*Kaur* is a cautionary tale. Allowing the government to communicate about and make decisions based on information it learns from trial counsel poses a fundamental threat to the integrity of any retrial, even where it is not allowed to "use" that information on retrial.

The Court should therefore grant mandamus to prevent such significant harm to Mr. Farhane and his attorney-client privilege.

---

[8] In *Kaur*, the state court of appeals assumed that permitting the same prosecution to access privileged attorney-client materials during a retrial amounted to a constitutional violation, but denied relief after finding no prejudice. *Kaur*, 151 F.4th at 608. On federal habeas review, the Fourth Circuit held that the appellate court's finding of no prejudice was objectively unreasonable, given the harm caused by the prosecution's use of privileged information at retrial. *Id*. at 611-613. The case was remanded for the district court to determine whether a Sixth Amendment violation occurred. *Id*. at 613.

## CONCLUSION

Mr. Farhane respectfully requests that the Court vacate the district court's order of October 23, 2025, and remand with instructions to issue a new order consistent with this Court's decision.

Respectfully submitted,

*/s/ Ramzi Kassem*

RAMZI KASSEM
NAZ AHMAD
CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
CUNY School of Law
2 Court Square
Long Island City, NY 11101
(718) 340-4558
ramzi.kassem@law.cuny.edu
naz.ahmad@law.cuny.edu

*/s/ Alan E. Schoenfeld*

ALAN E. SCHOENFELD
DYLAN REICHMAN
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
alan.schoenfeld@wilmerhale.com

ASMA S. JABER
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
asma.jaber@wilmerhale.com

*Counsel for Petitioner*
*Abderrahmane Farhane*

November 18, 2025

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this Petition complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) and typeface requirements of Fed. R. App. P. 32(a)(5).

1.      Exclusive of the exempted portions, the Petition contains 7,583 words.

2.      The Petition has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO in 14-point Times New Roman font as required by Fed. R. App. P. 32(a)(5).

*/s/ Alan E. Schoenfeld*
ALAN E. SCHOENFELD


November 18, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2025, the foregoing document was filed electronically using the CM/ECF system, and a copy of the foregoing document was served on the other party to the proceeding in the trial court (who consented to electronic service) at the following email address:

> Jun Xiang
> Assistant United States Attorney
> 1 St. Andrew's Plaza
> New York, NY 10007
> (212) 637-2289
> jun.xiang@usdoj.gov

I hereby further certify that a copy of the foregoing document is to be provided to the District Court at the following address:

> Hon. Loretta A. Preska
> United States District Court
> Southern District of New York
> Daniel Patrick Moynihan
> United States Courthouse
> 500 Pearl St.
> New York, NY 10007-1312

*/s/ Alan E. Schoenfeld*
ALAN E. SCHOENFELD

November 18, 2025



# 25-____

## IN THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

———————————

IN RE ABDERRAHMANE FARHANE,
*Petitioner.*

———————————

On Petition for Writ of Mandamus to the United States District Court for the Southern District of New York, Nos. 18-cv-11973-LAP, 05-cr-00673-LAP

———————————

**APPENDIX (A1-A192)**

———————————

RAMZI KASSEM
NAZ AHMAD
CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
CUNY SCHOOL OF LAW
2 Court Square
Long Island City, NY 11101
(718) 340-4558
ramzi.kassem@law.cuny.edu

ALAN E. SCHOENFELD
DYLAN REICHMAN
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
alan.schoenfeld@wilmerhale.com

ASMA S. JABER
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Attorneys for Petitioner*

November 18, 2025

# APPENDIX

# TABLE OF CONTENTS

Page

Docket, Case No. 1:05-CR-00673-LAP-4 (S.D.N.Y) .................................................A1

Docket, Case No. 1:18-CV-11973-LAP (S.D.N.Y)...................................................A20

Indictment, Dkt. 21 (Feb. 8, 2006)...........................................................................A28

Transcript of Criminal Cause for Detention Hearing, Dkt. 23 (Nov. 2, 2005).........A35

Superseding Information, Dkt. 85 (Nov. 9, 2006) .....................................................A67

Waiver of Indictment, Dkt. 86 (Nov. 9, 2006)...........................................................A71

Motion to Vacate Sentence, Dkt. 220 (Dec. 19, 2018)..............................................A72

Affidavit in Support of Motion to Vacate Plea and Sentence, Dkt. 232 (Feb. 4,
    2019) ....................................................................................................................A85

Endorsed Joint Letter Regarding Schedule, Dkt. 288 (Jan. 27, 2025).......................A92

Memorandum and Order Concerning Scope of Waiver of Attorney-Client
    Privilege, Dkt. 295 (Oct. 23, 2025).....................................................................A94

Joint Letter Motion Regarding Scheduling, Dkt. 298 (Oct. 31, 2025) ....................A109

Order Granting Government's Motion to Proceed and Denying Defendant's
    Motion to Stay, Dkt. 299 (Nov. 3, 2025) ..........................................................A113

Docket, Case No. 1:18-CV-04347-RPK (E.D.N.Y) ...............................................A114

Complaint to Revoke Naturalization, Dkt. 1 (E.D.N.Y, Aug. 13, 2018)................A121

Certificate of Service

i

**Query    Reports    Utilities    Help    Log Out**

CLOSED,ECF,PRIOR

# U.S. District Court
## Southern District of New York (Foley Square)
## CRIMINAL DOCKET FOR CASE #: 1:05-cr-00673-LAP-4

Case title: USA v. Shah et al                 Date Filed: 02/09/2006

Related  Case: 1:18-cv-11973-LAP            Date Terminated: 04/23/2007
Magistrate judge case number: 1:05-mj-01797-UA

---

Assigned to: Judge Loretta A. Preska

**Defendant (4)**

**Abdulrahman Farhane**                represented by    **Henry J. Steinglass**
*TERMINATED: 04/23/2007*                                Law Office of Henry J. Steinglass
*also known as*                                          299 Broadway, Suite 1802
"Abderr Farhan,"                                         Ny, NY 10007
*TERMINATED: 04/23/2007*                                 (212) 406-7700
                                                         Fax: 212) 406-7702
                                                         Email: hjsteinglasslaw@earthlink.net
                                                         *LEAD ATTORNEY*
                                                         *Designation: CJA Appointment*

                                                         **Michael Oliver Hueston**
                                                         Michael Hueston, Attorney at Law
                                                         350 Fifth Avenue, Suite 4810
                                                         Empire State Building
                                                         New York, NY 10118
                                                         (212) 643-2900
                                                         Fax: (212) 643-2901
                                                         Email: mh@michaelhueston.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Designation: CJA Appointment*

                                                         **Ramzi Kassem**
                                                         Main Street Legal Services, Inc.
                                                         2 Court Square West
                                                         Ste 5th Floor
                                                         Long Island City, NY 11101
                                                         718-340-4558
                                                         Fax: 718-340-4478
                                                         Email: ramzi.kassem@law.cuny.edu
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Designation: Pro Bono*

**A1**

**Alan Schoenfeld**
Wilmer Cutler Pickering Hale & Dorr LLP
(NYC)
7 World Trade Center
New York, NY 10007
(212) 937-7294
Fax: (212) 230-8888
Email: alan.schoenfeld@wilmerhale.com
*ATTORNEY TO BE NOTICED*

**David Alan Berman**
7 World Trade Center
250 Greenwich Street
New York, NY 10007
212-295-6288
Email: David.Berman@wilmerhale.com
*TERMINATED: 12/20/2019*
*ATTORNEY TO BE NOTICED*

**Naz Ahmad**
Main Street Legal Services, Inc
Cuny School of Law 2 Court Square
Long Island City, NY 10026
(718)-340-4630
Email: naz.ahmad@law.cuny.edu
*ATTORNEY TO BE NOTICED*
*Designation: Pro Bono*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:371.F CONSPIRACY TO DEFRAUD THE UNITED STATES (1s) | Imprisonment: 60 months. Supervised Release: 2 years. |
| 18:1001.F STATEMENTS OR ENTRIES GENERALLY (2s) | Imprisonment: 96 months. Supervised Release: 2 years. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| TERRORIST ACTIVITY (CONSPIRACY TO PROVIDE MATERIAL SUPPORT TO TERRORISTS) (5) | Count dismissed on the motion of the U.S. |
| STATEMENTS OR ENTRIES GENERALLY (FALSE STATEMENTS TO FEDERAL AGENT IN CONNECTION WITH TERRORISM INVESTIGATION) (6) | Count dismissed on the motion of the U.S. |

**A2**

**Highest Offense Level (Terminated)**

Felony

**Complaints**                                                        **Disposition**

18:1001:MAKING MATERIALLY FALSE
STATEMENTS TO FEDERAL
AUTHORITIES IN TERRORISM
INVESTIGATION.

---

**Plaintiff**

**USA**                                        represented by   **Jennifer Gillum Rodgers**
                                                               U.S. Attorney's Office, SDNY (St Andw's)
                                                               One St. Andrew's Plaza
                                                               New York, NY 10007
                                                               (212) 637-2513
                                                               Fax: (212) 637-0097
                                                               Email: Jennifer.Rodgers@usdoj.gov
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Jun Xiang**
                                                               U.S. Attorney's Office for the Southern
                                                               District of New
                                                               One St. Andrews Plaza
                                                               New York, NY 10007
                                                               212-637-2289
                                                               Email: jun.xiang@usdoj.gov
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Victor L. Hou**
                                                               Cleary Gottlieb
                                                               One Liberty Plaza
                                                               New York, NY 10006
                                                               212-225-2609
                                                               Fax: (212) 225-3999
                                                               Email: victor.hou@usdoj.gov
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Benjamin Woodside Schrier**
                                                               DOJ-USAO
                                                               1 St. Andrew's Plaza
                                                               New York, NY 10007
                                                               212-637-1062
                                                               Email: benjamin.schrier@greenoaks.com
                                                               *TERMINATED: 03/30/2022*
                                                               *Designation: Retained*

                                                               **Karl N Metzner**

**A3**

U.S. Attorney's Office, SDNY (86
Chambers St.)
86 Chambers Street
New York, NY 10007
212-637-2200
Fax: 718-422-1701
Email: karl.metzner@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/25/2005 | 1 | COMPLAINT as to Abdulrahman Farhane (1) in violation of 18 U.S.C. 1001 ( signed by Mag. Judge Frank Maas ) (gq, ) [1:05-mj-01797-UA] (Entered: 10/27/2005) |
| 10/26/2005 | | Attorney update in case as to Abdulrahman Farhane. Attorney Henry J. Steinglass for Abdulrahman Farhane added. (gq, ) [1:05-mj-01797-UA] (Entered: 10/27/2005) |
| 10/26/2005 | | Arrest of Abdulrahman Farhane. (gq, ) [1:05-mj-01797-UA] (Entered: 10/27/2005) |
| 10/26/2005 | | Minute Entry for proceedings held before Judge Frank Maas :Initial Appearance as to Abdulrahman Farhane held on 10/26/2005. Deft appears with CJA atty Henry Steinglass. AUSA Victor Hou present for the gov't. Detention. Detention Hearing set for 10/31/2005 11:30 AM before Judge Unassigned. Preliminary Examination set for 11/9/2005 10:00 AM before Judge Unassigned. (gq, ) [1:05-mj-01797-UA] (Entered: 10/27/2005) |
| 10/26/2005 | 6 | CJA 20 as to Abdulrahman Farhane: Appointment of Attorney Henry J. Steinglass for Abdulrahman Farhane.. (Signed by Judge Frank Maas on 10/26/05) CJA office has mailed original to the attorney and has sent a copy to the file.(sao, ) [1:05-mj-01797-UA] (Entered: 11/14/2005) |
| 10/31/2005 | 4 | FILING ERROR - ELECTRONIC FILING FOR NON-ECF CASE - NOTICE OF ATTORNEY APPEARANCE: Michael Oliver Hueston appearing for Abdulrahman Farhane. (Hueston, Michael) Modified on 11/1/2005 (gf, ). [1:05-mj-01797-UA] (Entered: 10/31/2005) |
| 10/31/2005 | 5 | NOTICE OF ATTORNEY APPEARANCE: Michael Oliver Hueston appearing for Abdulrahman Farhane. (kwi, ) [1:05-mj-01797-UA] (Entered: 11/07/2005) |
| 11/01/2005 | | ***NOTE TO ATTORNEY TO RE-FILE DOCUMENT - NON-ECF CASE ERROR. Note to Attorney Michael Hueston as to Abdulrahman Farhane: to MANUALLY RE-FILE Document Notice of Attorney Appearance, Document No. 4. This case is not ECF. (gf, ) [1:05-mj-01797-UA] (Entered: 11/01/2005) |
| 11/02/2005 | | Minute Entry for proceedings held before Judge Theodore H. Katz :Detention Hearing as to Abdulrahman Farhane held on 11/2/2005. Deft appears with atty Michael Hueston. AUSA Victor Hou present for the gov't. $150,000 PRB. 5 FRP. $5,000 cash/property. Travel restricted to SDNY, EDNY. Surrender travel documents (& no new applications). Strict pretrial supervision. Home detention. Electronic monitoring. Deft to be permitted to work in his bookstore - 9 A.M. to 9 P.M. Monitoring at home and at store. Preliminary Hearing set for 11/28/2005. (gq, ) [1:05-mj-01797-UA] (Entered: 11/02/2005) |
| 11/02/2005 | | Set/Reset Deadlines/Hearings as to Abdulrahman Farhane: Preliminary Examination set for 11/28/2005 10:00 AM before Judge Unassigned.(gq, ) [1:05-mj-01797-UA] (Entered: 11/02/2005) |
| 11/10/2005 | 7 | PRB APPEARANCE Bond Entered as to Abdulrahman Farhane in amount of $ 150,000 PRB, 5 FRP'S; Secured by $5,000 Cash/Property; Travel Limited to SDNY/EDNY; Surrender Travel Documents (& No New Applications); Strict Pretrial Supervision; Home |

A4

| | | Detention with Electronic Monitoring; Deft to be Permitted to work in his Bookstore; 9 AM to 9 PM; Monitoring at Home and at Store (dif, ) [1:05-mj-01797-UA] (Entered: 11/21/2005) |
|---|---|---|
| 11/10/2005 | 8 | ADVICE OF PENALTIES AND SANCTIONS as to Abdulrahman Farhane. (dif, ) [1:05-mj-01797-UA] (Entered: 11/21/2005) |
| 11/28/2005 | 9 | ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Abdulrahman Farhane. Time excluded from 11/28/2005 until 12/28/2005. . (Signed by Judge Kevin Nathaniel Fox on 11/28/2005)(dif, ) [1:05-mj-01797-UA] (Entered: 11/30/2005) |
| 12/28/2005 | 10 | AFFIRMATION of Victor Hou in Support by USA as to Abdulrahman Farhane RE: For the request of continuance until 1/27/06.(kwi, ) [1:05-mj-01797-UA] (Entered: 12/29/2005) |
| 12/28/2005 | | ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Abdulrahman Farhane re: 10 Affirmation in Support filed by USA,. Time excluded from 12/28/05 until 1/27/06. Follows oral order of 12/28/05.. (Signed by Judge Douglas F. Eaton on 12/28/05)(kwi, ) [1:05-mj-01797-UA] (Entered: 12/29/2005) |
| 01/27/2006 | 11 | ORDER as to Abdulrahman Farhane. Ordered that purs to 18 U.S.C. 3006A, that certified interpreter Noureddine Charif will be compensated in accordance with Criminal justice Act as an interpreter in a felony case as of 1/27/06 through 2/13/06 at the rate of $192.00 for a half a day of services and $335.00 for a full day of services. The costs of these services shall not exceed $2,000.00. (Signed by Judge Ronald L. Ellis on 1/27/06)(vb, ) [1:05-mj-01797-UA] (Entered: 01/27/2006) |
| 01/27/2006 | | ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Abdulrahman Farhane. Time excluded from 1/27/06 until 2/10/06. Follows oral order of 1/27/06.(Signed by Judge Ronald L. Ellis on 1/27/06)(vb, ) [1:05-mj-01797-UA] (Entered: 01/30/2006) |
| 01/27/2006 | 12 | AFFIRMATION of Victor L. Hou in Support of the application for an extension of the order of continuance, filed by USA as to Abdulrahman Farhane. (vb, ) [1:05-mj-01797-UA] (Entered: 01/30/2006) |
| 02/08/2006 | 21 | (S2) SUPERSEDING INDICTMENT FILED as to Tarik Ibn Osman Shah (1) count(s) 1ss, 2ss, 5ss, Rafiq Sabir (2) count(s) 1ss, 2ss, Mahmud Faruq Brent (3) count(s) 3s, 4s, Abdulrahman Farhane (4) count(s) 5, 6. (jm, ) (Entered: 02/09/2006) |
| 02/08/2006 | | Minute Entry for proceedings held before Judge Loretta A. Preska :Arraignment as to Abdulrahman Farhane (4) Count 5,6 held on 2/8/2006. Deft. pres. w/atty zMichael Heuston & AUSA Victor Hou & NYCPD Detective John White & Brian Murphy FBI. Deft. waives reading of indictment. Pleads not guilty. Bail hearing was previously held before Mag. Judge Katz. The govt seeks detention of the deft. Arraignment to be continued on 2/10/06 @ 12:30 PM. Bail cont'd. (Court Reporter Denise Richards, Arabic translator Fouad Kheir) (pr, ) (Entered: 02/15/2006) |
| 02/08/2006 | | Minute Entry for proceedings held before Judge Loretta A. Preska : Plea entered by Abdulrahman Farhane (4) Count 5,6 Not Guilty. (pr, ) (Entered: 02/15/2006) |
| 02/08/2006 | | ORAL ORDER as to Abdulrahman Farhane. Arraignment continued to 2/10/2006 12:30 PM before Judge Loretta A. Preska..(by Judge Loretta A. Preska on 2/8/06)(pr, ) (Entered: 02/15/2006) |
| 02/09/2006 | | Case Designated ECF as to Abdulrahman Farhane.(jm, ) (Entered: 02/09/2006) |
| 02/10/2006 | | Minute Entry for proceedings held before Judge Loretta A. Preska :Status Conference as to Abdulrahman Farhane held on 2/10/2006, as to Abdulrahman Farhane; Status Conference set for 2/17/2006 09:30 AM before Judge Loretta A. Preska. Defendant |

A5

| | | |
|---|---|---|
| | | present with his atty Michael Hueston. AUSA present Victor Hou. Bail is denied; defendant is remanded. Next conference scheduled for 2/17/06 at 9:30. Time is excluded from today through 2/17/06 from calculation under the speedy trial act in the interests of justice. (jw, ) (Entered: 02/15/2006) |
| 02/17/2006 | | Minute Entry for proceedings held before Judge Loretta A. Preska :Status Conference as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane held on 2/17/2006. Deft Shah present w/his atty Anthony Ricco and Erika Edwards; deft Sabir present w/his atty Edward Wilford and Natali Todd; deft Brent present w/his atty Hassen Ibn Abdellah; deft Abdulrahman Farhane. AUSA Karl Metzner for Victor Hou present. Defts Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent arraigned on S(2) Indictment. Reading of Indictment waived, defts all enter a plea of not guilty. Next conference scheduled for 3/17/06 at 9:30 a.m. Time is excluded from today until 3/17/06 under the Speedy Trial Act, in the interest of justice. (bw, ) (Entered: 03/02/2006) |
| 02/17/2006 | | ORAL ORDER as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane. Time excluded from 2/17/06 until 3/17/06. Pretrial Conference set for 3/17/2006 09:30 AM before Judge Loretta A. Preska.(bw, ) (Entered: 03/02/2006) |
| 02/28/2006 | 22 | TRANSCRIPT of Proceedings as to Abdulrahman Farhane held on 2/10/06 before Judge Loretta A. Preska. (jbe, ) (Entered: 02/28/2006) |
| 03/16/2006 | 23 | TRANSCRIPT of Proceedings as to Abdulrahman Farhane held on 11/2/05 before Judge Theodore H. Katz. (jw, ) (Entered: 03/17/2006) |
| 03/17/2006 | | Minute Entry for proceedings held before Judge Loretta A. Preska :Status Conference as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane held on 3/17/2006. Dft Tarik Ibn Osman Shah pres w/atty Erika Edwards. Dft Rafiq Sabir pres w/attys Edward Wilford and Natali Todd. Dft Mahmud Faruq Brent pres w/atty Hassen Ibn Abdellah. Dft Abdulrahman Farhane pres w/attys Josh Dratel and Michael Kim. AUSA Victor Hou and Karl Metzner pres. Retained attys Anthony Ricco Erika and Edwards are relieved as counsel for Tarik Shah. Michael Kim is appointed as CJA counsel for Tarik Shah. Interpreter Fouad Kheir (Arabic) pres. Dft's Motions due by 6/30/2006; Govt's Response due by 8/18/2006; dft's Reply due by 9/8/2006. Oral Argument set for 10/30/2006 09:30 AM. Bail application hearing w/respect to dft Rafiq Sabir held. Request for bail is denied. T/E from today until 10/30/06 under the STA, IOJ. (Court Reporter Eve Giniger) (ja, ) (Entered: 03/24/2006) |
| 03/20/2006 | 24 | TRANSCRIPT of Proceedings as to Abdulrahman Farhane held on 02/08/06 before Judge Loretta A. Preska. (es, ) (Entered: 03/20/2006) |
| 03/20/2006 | 25 | TRANSCRIPT of Proceedings as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane held on 2/17/06 before Judge Loretta A. Preska. (mo, ) (Entered: 03/20/2006) |
| 04/20/2006 | 29 | EX PARTE ORDER as to Abdulrahman Farhane. ORDERED that pursuant to 18 USC 3006A, that certified interpreter Noureddine Charif will be compensated in accordance with the Criminal Justice Act as an interpreter in a felony case as of the date of this order at the rate of $192.00 for a half day of services, and $355.00 for a full day of services; ORDERED that pursuant to 18 USC 3006A, that deft will be provided with duplication services that will be compensated in accordance with the Crimial Justice Act for the duplication of government disclosures made available to the deft at either JAGG Mangaement and Dupe Coop Copiers; and ORDERED that pursuant to 18 USC 3006A, that deft will be provided with computer (hardware/software) systems services that will be compensated in accordance with the Criminal Justice Act for those disclosures made available by the government to the deft in digital format.. (Signed by Judge Loretta A. Preska on 4/10/06)(jw, ) (Entered: 04/20/2006) |

A6

| | | |
|---|---|---|
| 04/20/2006 | 31 | TRANSCRIPT of Proceedings as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane held on 3/17/2006 @ 10:00 a.m. before Judge Loretta A. Preska. (lb, ) (Entered: 04/20/2006) |
| 06/29/2006 | 40 | ENDORSED LETTER as to Abdulrahman Farhane, addressed to Judge Preska, from Michael Oliver Hueston, Atty for dft, dated 6/27/06, re: request a 4-week extension of the present pretrial motion schedule from 6/30/06 to 7/28/06.... and it is my understanding that time under the STA has already been excluded for motion practice. -- Judge endorsed: and is excluded to July 28 in the IOJ. SO ORDERED. Motions due by 7/28/2006. (Signed by Judge Loretta A. Preska on 6/28/06)(ja, ) (Entered: 06/30/2006) |
| 07/10/2006 | 43 | NOTICE OF ATTORNEY APPEARANCE Jennifer Gillum Rodgers appearing for USA. (Rodgers, Jennifer) (Entered: 07/10/2006) |
| 07/11/2006 | 44 | NOTICE OF ATTORNEY APPEARANCE Karl N Metzner appearing for USA. (Metzner, Karl) (Entered: 07/11/2006) |
| 07/31/2006 | 54 | ENDORSED LETTER as to Abdulrahman Farhane, addressed to Judge Preska, from Michael Hueston, Atty for dft, dated 7/19/06, re: request a three-week extension of the present pretrial motion schedule from 7/28/06 to 8/18/06 for dft.... Time under the STA has already been excluded for motion practice and the gov't consents to this request. -- Judge endorsed: SO ORDERED. Motions due by 8/18/2006. (Signed by Judge Loretta A. Preska on 7/28/06)(ja, ) (Entered: 07/31/2006) |
| 08/18/2006 | 55 | RESPONSE in Opposition by USA as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane re 52 MOTION to Dismiss *Suppress statements, suppress physical evidence, Disclose evidence, Disclose 404(b) evidence, join motions of co-defendants.*, 45 MOTION Suppression, Dismissal, Discovery.. *Notice of Ex Parte Filing Re Motion for Disclosure of Electronic Surveillance* (Metzner, Karl) (Entered: 08/18/2006) |
| 08/21/2006 | 56 | ENDORSED LETTER as to Abdulrahman Farhane addressed to Judge Preska from Attorney Michael Oliver Hueston dated 8/17/06 re: submitted to request a two-week extension of the present pretrial motion schedule from 8/18/06 to 9/1/06 for deft to serve his pretrial motions. Judge So Ordered. (Signed by Judge Loretta A. Preska on 8/18/06) (bw, ) (Entered: 08/22/2006) |
| 08/21/2006 | | Set/Reset Deadlines/Hearings as to Abdulrahman Farhane: Motions due by 9/1/2006.(bw, ) (Entered: 08/22/2006) |
| 08/24/2006 | 58 | GOVT'S EX PARTE, IN CAMERA CLASSIFIED MEMORANDUM by USA as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane. (pr, ) (Entered: 08/25/2006) |
| 08/24/2006 | 59 | ORDER DENYING DEFT'S JOINT MOTION TO COMPEL GOVT. DISCLOSURE OF WARRANTLESS AND OR ELECTRONIC OR OTHER SURVILLANCE (REDACTED) as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane. .(pr, ) (Entered: 08/25/2006) |
| 09/01/2006 | 60 | FIRST MOTION to Dismiss. Document filed by Abdulrahman Farhane. (Hueston, Michael) (Entered: 09/01/2006) |
| 09/01/2006 | 61 | DECLARATION of Michael Hueston in Support as to Abdulrahman Farhane re: 60 FIRST MOTION to Dismiss.. (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit) (Hueston, Michael) (Entered: 09/01/2006) |
| 09/01/2006 | 62 | MEMORANDUM in Support by Abdulrahman Farhane re 60 FIRST MOTION to Dismiss.. (Hueston, Michael) (Entered: 09/01/2006) |

A7

| 09/07/2006 | 63 | ORDER as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane. 1. Govt. time to respond to defts' pretrial motions is extended to 9/8/06, except as indicated 2. Govt. time to respond to the motions of Farhane, to the FISA-related motions of Shah, an Al Mutazzim's motions aside from severance is extended to 9/29/06; 3. replies, if any to the above shall be werved 1 week after the govt's response date; 4.suppression hearing with respect to Shah's motion to suppress statements he mad on May 28 and May 29, 2005 shall be held on 9/25/06 @ 10am. To the extent an individual atty cannot become available (or arrange for co-counsel to be available) on that date, counsel shall confer and propose alternative dates to the court's deputy clerk. So Ordered (Signed by Judge Loretta A. Preska on 9/6/06)=(pr, ) (Entered: 09/08/2006) |
| 09/07/2006 | | Set/Reset Hearings as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane: Suppression Hearing with respect to Shah's motion set for 9/25/2006 10:00 AM before Judge Loretta A. Preska..(pr, ) (Entered: 09/08/2006) |
| 09/08/2006 | 64 | MEMORANDUM in Opposition by USA as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane re 39 JOINT MOTION removal from Special housing unit.. (Rodgers, Jennifer) (Entered: 09/08/2006) |
| 09/11/2006 | 66 | ENDORSED LETTER as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane addressed to Judge Preska, from Karl Metzner/Jennifer G. Rodgers, AUSAs, dated 9/8/06, re: request two days to 9/12/06 to file the bulk of the Govt's response to dfts' pretrial motions.... -- Judge endorsed: SO ORDERED. Response due by 9/12/2006. (Signed by Judge Loretta A. Preska on 9/8/06)(ja, ) (Entered: 09/11/2006) |
| 09/12/2006 | 67 | MEMORANDUM in Opposition by USA as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane re 60 FIRST MOTION to Dismiss., 52 MOTION to Dismiss *Suppress statements, suppress physical evidence, Disclose evidence, Disclose 404(b) evidence, join motions of co-defendants.*, 45 MOTION Suppression, Dismissal, Discovery., 49 MOTION dismissal of indictment;disciovery; suppression of evidence.. (Rodgers, Jennifer) (Entered: 09/12/2006) |
| 09/12/2006 | 68 | FIRST MOTION to Dismiss *(Corrected)*. Document filed by Abdulrahman Farhane. (Hueston, Michael) (Entered: 09/12/2006) |
| 09/12/2006 | 69 | DECLARATION of Michael Hueston (Corrected) in Support as to Abdulrahman Farhane re: 68 FIRST MOTION to Dismiss *(Corrected)*.. (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3)(Hueston, Michael) (Entered: 09/12/2006) |
| 09/12/2006 | 70 | MEMORANDUM in Support by Abdulrahman Farhane re 68 FIRST MOTION to Dismiss *(Corrected)*.. *(Corrected)* (Hueston, Michael) (Entered: 09/12/2006) |
| 09/29/2006 | 73 | RESPONSE to Motion by USA as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane re 52 MOTION to Dismiss *Suppress statements, suppress physical evidence, Disclose evidence, Disclose 404(b) evidence, join motions of co-defendants.*, 45 MOTION Suppression, Dismissal, Discovery., 68 FIRST MOTION to Dismiss *(Corrected)*.. *Notice of Filings In Response to Motion to Suppress FISA-Derived Evidence* (Metzner, Karl) (Entered: 09/29/2006) |
| 09/29/2006 | 74 | DECLARATION of Attorney General Alberto R. Gonzales in Opposition by USA as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane re: 52 MOTION to Dismiss *Suppress statements, suppress physical evidence, Disclose evidence, Disclose 404(b) evidence, join motions of co-defendants.*, 45 MOTION Suppression, Dismissal, Discovery., 68 FIRST MOTION to Dismiss *(Corrected)*.. (Metzner, Karl) (Entered: 09/29/2006) |

A8

| | | |
|---|---|---|
| 09/29/2006 | 75 | MEMORANDUM in Opposition by USA as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane re 52 MOTION to Dismiss *Suppress statements, suppress physical evidence, Disclose evidence, Disclose 404(b) evidence, join motions of co-defendants.*, 45 MOTION Suppression, Dismissal, Discovery., 68 FIRST MOTION to Dismiss *(Corrected).. Unclassified Memorandum In Opposition To Motions To Suppress FISA-Derived Evidence* (Metzner, Karl) (Entered: 09/29/2006) |
| 09/29/2006 | 76 | MEMORANDUM in Opposition by USA as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane re 68 FIRST MOTION to Dismiss *(Corrected).*, 71 MOTION to Suppress.. (Rodgers, Jennifer) (Entered: 09/29/2006) |
| 10/30/2006 | | Minute Entry for proceedings held before Judge Loretta A. Preska :Oral Argument as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane held on 10/30/2006. Deft Shah present with his atty Joshua Dratel; deft Sabir present with his atty Edward Wilford and Natali Todd; Deft Brent present with his atty Hassen Ibn Abdellah; deft Abdulrahman Farhane. AUSA Jennifer Rodgers and Karl Metzner present. Argument on the Special Housing issue will be held on 12/7/2006 at 9:00am. The motion for serverance is denied. The decision on the motion for the sufficiency of the indictment is reserved; deft Brent's motion to suppress is denied. The motion to dismiss the indictment on the argument of entrapment of outrageous conduct is denied. Trial scheduled for 4/23/2007 with a back-up date of 6/4/2007. Time is excluded from today until 4/23/2007 under the speedy trial act, in the interest of justice. (jar, ) (Entered: 11/01/2006) |
| 10/30/2006 | | ORAL ORDER as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane Time excluded from 10/30/2006 until 4/23/2007. As to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane Ready for Trial by 4/23/2007. Oral Argument set for 12/7/2006 09:00 AM before Judge Loretta A. Preska. (Signed by Judge Loretta A. Preska on 10/30/2006)(jar, ) (Entered: 11/01/2006) |
| 11/09/2006 | 85 | (S3) SUPERSEDING INFORMATION (Felony) filed as to Abdulrahman Farhane (4) count(s) 1s, 2s. (jar, ) (Entered: 11/17/2006) |
| 11/09/2006 | 86 | WAIVER OF INDICTMENT by Abdulrahman Farhane. [received on 11/14/2006] (jar, ) Modified on 11/17/2006 (jar, ). (Entered: 11/17/2006) |
| 11/09/2006 | | Minute Entry for proceedings held before Judge Loretta A. Preska :Arraignment as to Abdulrahman Farhane (4) Count 1s,2s held on 11/9/2006. Defendant present with his atty Michael Hueston. AUSA Jennifer Rodgers present. Waiver of Indictment signed. The deft enters a plea of guilty to the S3 information. Sentencing scheduled for 2/13/2007 at 4:00pm. PSI ordered. (jar, ) (Entered: 11/17/2006) |
| 11/09/2006 | | Minute Entry for proceedings held before Judge Loretta A. Preska : Plea entered by Abdulrahman Farhane (4) Guilty as to Count 1s,2s. (jar, ) (Entered: 11/17/2006) |
| 11/09/2006 | | ORDER FOR PRE-SENTENCE INVESTIGATION REPORT as to Abdulrahman Farhane. (Signed by Judge Loretta A. Preska on 11/6/2006)(jar, ) (Entered: 11/17/2006) |
| 11/09/2006 | | ORAL ORDER as to Abdulrahman Farhane, As to Abdulrahman Farhane Sentencing set for 2/13/2007 04:00 PM before Judge Loretta A. Preska. (Signed by Judge Loretta A. Preska on 11/6/2006)(jar, ) (Entered: 11/17/2006) |
| 12/13/2006 | 90 | TRANSCRIPT of Proceedings as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane held on 10/30/06 before Judge Loretta A. Preska. (mo, ) (Entered: 12/13/2006) |
| 12/13/2006 | 91 | TRANSCRIPT of Proceedings as to Abdulrahman Farhane held on 11/6/06 before Judge Loretta A. Preska. (jbe, ) (Entered: 12/13/2006) |

A9

| 02/09/2007 | 99 | ENDORSED LETTER as to Abdulrahman Farhane from Michael Oliver Hueston dated 2/8/07 re: Adjournment of the 2/13/07 sentence. Sentencing is adjourned to 3/20/07 @ 10:30AM. So ordered. (Signed by Judge Loretta A. Preska on 2/9/07)(pr) (Entered: 02/13/2007) |
|---|---|---|
| 02/09/2007 | | Set/Reset Hearings as to Abdulrahman Farhane: Sentencing set for 3/20/2007 10:30 AM before Judge Loretta A. Preska.. (pr) (Entered: 02/13/2007) |
| 02/26/2007 | 101 | NOTICE of Change of Address as to Abdulrahman Farhane. New Address: Michael Hueston, Esq., 350 Fifth Avenue, Suite 4810, New York, New York, USA 10118, (212) 643-2900. (Hueston, Michael) (Entered: 02/26/2007) |
| 03/16/2007 | 104 | ENDORSED LETTER as to Abdulrahman Farhane addressed to Judge Preska from Attorney Michael Oliver Hueston dated 3/13/07 re: submitted to request a two-week adjournment of the parties' 3/20/07 sentencing. ENDORSEMENT: Sentencing is adjourned to April 10 at 3:00 p.m. (Signed by Judge Loretta A. Preska on 3/16/07)(bw) (Entered: 03/16/2007) |
| 03/16/2007 | | Set/Reset Hearings as to Abdulrahman Farhane: Sentencing set for 4/10/2007 03:00 PM before Judge Loretta A. Preska. (bw) (Entered: 03/16/2007) |
| 04/06/2007 | 113 | SENTENCING MEMORANDUM by Abdulrahman Farhane. (Attachments: # 1 Exhibit 1.1 (Letters)# 2 Exhibit 1.2 (Letters)# 3 Exhibit 1.3 (Letters)# 4 Exhibit 1.4 (Letters)# 5 Exhibit 1.5 (Letters)# 6 Exhibit 3 (Articles)# 7 Exhibit 2 (Photographs))(Hueston, Michael) (Entered: 04/06/2007) |
| 04/12/2007 | 122 | SENTENCING MEMORANDUM by USA as to Abdulrahman Farhane. (Rodgers, Jennifer) (Entered: 04/12/2007) |
| 04/16/2007 | | Minute Entry for proceedings held before Judge Loretta A. Preska :Sentencing held on 4/16/2007 for Abdulrahman Farhane (4) Counts 1s and 2s. (ja) (Entered: 04/24/2007) |
| 04/23/2007 | | DISMISSAL OF COUNTS on Government Motion as to Abdulrahman Farhane (4) Counts 5 and 6. (ja) (Entered: 04/24/2007) |
| 04/23/2007 | 133 | FILED JUDGMENT IN A CRIMINAL CASE as to Abdulrahman Farhane (4), Count(s) 5 and 6 are dismissed on the motion of the U.S. The defendant pleaded guilty to Counts 1s and 2s, Imprisonment: 60 months on count one and 96 months on count two to run consecutively for a total term of 156 months. The court recommends to the Bureau of Prisons that the defendant be designated to a facility as close as possible to NYC and that he be afforded educational and vocational training as well as medical treatment. Supervised Release: 2 years on counts one and two to run concurrently. SA: $200.00. (Signed by Judge Loretta A. Preska on 4/23/07)(ja) Additional attachment(s) added on 4/24/2007 (Adams, Jacqueline). (Entered: 04/24/2007) |
| 04/23/2007 | | Judgment entered in money judgment book as #07,0805 as to Abdulrahman Farhane in the amount of $ 200.00, re: 133 Judgment. (dt) (Entered: 04/30/2007) |
| 05/03/2007 | 140 | NOTICE OF APPEAL by Abdulrahman Farhane from 133 Judgment.(tp) (Entered: 05/08/2007) |
| 05/08/2007 | | Appeal Remark as to Abdulrahman Farhane re: 140 Notice of Appeal - Final Judgment. NO FEE, CJA. (tp) (Entered: 05/08/2007) |
| 05/08/2007 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Abdulrahman Farhane to US Court of Appeals re: 140 Notice of Appeal - Final Judgment. (tp) (Entered: 05/08/2007) |

| | | |
|---|---|---|
| 05/08/2007 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Abdulrahman Farhane re: 69 Declaration in Support of Motion, 62 Memorandum in Support of Motion, 67 Memorandum in Opposition to Motion, 63 Order,,, 76 Memorandum in Opposition to Motion, 56 Endorsed Letter, 60 FIRST MOTION to Dismiss., 64 Memorandum in Opposition to Motion, 140 Notice of Appeal - Final Judgment, 99 Endorsed Letter, 75 Memorandum in Opposition to Motion, 86 Waiver of Indictment, 61 Declaration in Support of Motion, 54 Endorsed Letter, Set Deadlines/Hearings,, 40 Endorsed Letter, Set Deadlines/Hearings,, 113 Sentencing Memorandum, 44 Notice of Attorney Appearance - USA, 70 Memorandum in Support of Motion, 133 Judgment,, 4 Notice of Attorney Appearance - Defendant, 58 Memorandum of Law, 85 Information - Felony, 73 Response to Motion, 74 Declaration in Opposition to Motion, 21 Indictment, 122 Sentencing Memorandum, 43 Notice of Attorney Appearance - USA, 104 Endorsed Letter, 101 Notice of Change of Address, 55 Response in Opposition to Motion, 66 Endorsed Letter, Set Deadlines/Hearings,, 68 FIRST MOTION to Dismiss *(Corrected)*., 59 Order were transmitted to the U.S. Court of Appeals. (tp) (Entered: 05/08/2007) |
| 05/14/2007 | 145 | TRANSCRIPT of Proceedings as to Abdulrahman Farhane held on 4/16/07 before Judge Loretta A. Preska. (tro) (Entered: 05/14/2007) |
| 05/15/2007 | | USCA Appeal Fees received $ 455.00, receipt number E 614884 as to Abdulrahman Farhane on 5/15/2007 re: 140 Notice of Appeal - Final Judgment filed by Abdulrahman Farhane. (nd) (Entered: 05/15/2007) |
| 05/24/2007 | | USCA SCHEDULING ORDER as to Abdulrahman Farhane related to 140 Notice of Appeal - Final Judgment filed by Abdulrahman Farhane, USCA Case Number 07-1968-cr. Defendant Brief due by 6/21/2007. Government Brief due by 7/23/2007. (nd) (Entered: 05/24/2007) |
| 06/11/2007 | 149 | TRANSCRIPT of Proceedings as to Abdulrahman Farhane held on April 16, 2007 at 2:20 p.m. before Judge Loretta A. Preska. (aba) (Entered: 06/11/2007) |
| 09/20/2007 | | USCA SCHEDULING ORDER as to Abdulrahman Farhane related to 140 Notice of Appeal - Final Judgment filed by Abdulrahman Farhane, USCA Case Number 07-1968-cr. Defendant Brief due by 12/24/2007. Government Brief due by 1/24/2007. Appeal Record due by 10/8/2007. (nd). (Entered: 09/20/2007) |
| 11/21/2007 | 175 | First Supplemental ROA Sent to USCA (Index). Notice that the Supplemental Index to the record on Appeal as to Abdulrahman Farhane re: 140 Notice of Appeal - Final Judgment USCA Case Number 07-1968-cr, 3 Copies of the index, Certified Supplemental Clerk Certificate and Certified Docket Sheet were transmitted to the U.S. Court of Appeals. (nd) (tp). (Entered: 11/21/2007) |
| 11/27/2007 | | First Supplemental ROA Sent to USCA (File). First Supplemental Indexed record on Appeal Files as to Abdulrahman Farhane re: 140 Notice of Appeal - Final Judgment USCA Case Number 07-1968-cr, were transmitted to the U.S. Court of Appeals. (tp) (Entered: 11/27/2007) |
| 05/24/2011 | 187 | MANDATE of USCA (certified copy) as to Rafiq Sabir, Abdulrahman Farhane re: 177 Notice of Appeal - Final Judgment, 140 Notice of Appeal - Final Judgment, USCA Case Number 07-1968-cr(L), 07-5531-cr(con). IT IS HEREBY ORDERED, ADJUDGED, AMD DECREED that the judgment of the District Court is AFFIRMED in accordance with the opinion of this Court. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit, Clerk USCA. Issued As Mandate: 05/24/2011. (nd) (Entered: 05/24/2011) |
| 05/24/2011 | | Transmission of USCA Mandate/Order to the District Judge re: 187 USCA Mandate - Final Judgment Appeal,. (nd) (Entered: 05/24/2011) |

| 10/04/2011 | | First Supplemental ROA Returned. Supplemental Indexed record on Appeal Files as to Abdulrahman Farhane USCA Case Number 07-1968-cr, returned from the U.S. Court of Appeals. (nd) (Entered: 11/10/2011) |
|---|---|---|
| 12/19/2018 | 219 | MOTION to Vacate under 28 U.S.C. 2255. Document filed by Abdulrahman Farhane. (jgl) Civil case 1:18-cv-11973 opened. (Entered: 12/19/2018) |
| 12/19/2018 | 220 | MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 18-CV-11973.) Document filed by Abdulrahman Farhane. (Attachments: # 1 Civil Cover Sheet)(Kassem, Ramzi) (Entered: 12/19/2018) |
| 12/19/2018 | 221 | **FILING ERROR - DEFICIENT DOCKET ENTRY** - FIRST MOTION for Extension of Time to File *a Memorandum of Law in Support of Motion to Vacate*. Document filed by Abdulrahman Farhane. (Attachments: # 1 Text of Proposed Order, # 2 Declaration in Support of Motion to Request an Extension of Time to File a Memorandum of Law) (Kassem, Ramzi) Modified on 12/20/2018 (ka). (Entered: 12/19/2018) |
| 12/20/2018 | | ***NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR as to Abdulrahman Farhane: Notice to Attorney Kassem, Ramzi to RE-FILE Document 221 FIRST MOTION for Extension of Time to File *a Memorandum of Law in Support of Motion to Vacate. ERROR(S): Filing Error of Attachment #2. Supporting Declaration must be filed individually. Event code located under Replies, Opposition and Supporting Documents.***NOTE: Separate docket entry for each. (ka)** *(Entered: 12/20/2018)* |
| 12/20/2018 | 222 | FIRST MOTION for Extension of Time to File *a Memorandum of Law in Support of Motion to Vacate*. Document filed by Abdulrahman Farhane. (Attachments: # 1 Text of Proposed Order)(Kassem, Ramzi) (Entered: 12/20/2018) |
| 12/20/2018 | 223 | DECLARATION of Ramzi Kassem, Esq. in Support as to Abdulrahman Farhane re: 222 FIRST MOTION for Extension of Time to File *a Memorandum of Law in Support of Motion to Vacate*.. (Kassem, Ramzi) (Entered: 12/20/2018) |
| 01/02/2019 | 224 | ORDER as to Abdulrahman Farhane: GOOD CA USE appearing, the Movant's application to file a memorandum of law in support of his motion pursuant to 28 U.S.C. § 2255 by February 1, 2019 is hereby granted. (Signed by Judge Loretta A. Preska on 12/21/2018) (ap) (Entered: 01/02/2019) |
| 01/28/2019 | 225 | NOTICE OF ATTORNEY APPEARANCE: Naz Ahmad appearing for Abdulrahman Farhane. Appearance Type: Pro Bono. (Ahmad, Naz) (Entered: 01/28/2019) |
| 01/28/2019 | 226 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU** - MOTION for Leave to File Excess Pages . Document filed by Abdulrahman Farhane. (Ahmad, Naz) Modified on 1/28/2019 (ka). (Entered: 01/28/2019) |
| 01/28/2019 | | **NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR as to Abdulrahman Farhane: Notice to Attorney Ahmad, Naz to RE-FILE Document 226 MOTION for Leave to File Excess Pages. Use the event type Letter Motiond found under the event list Motions. (ka)** (Entered: 01/28/2019) |
| 01/28/2019 | 227 | LETTER MOTION addressed to Judge Loretta A. Preska from Naz Ahmad dated January 28, 2019 re: Leave to File Excess Pages . Document filed by Abdulrahman Farhane. (Ahmad, Naz) (Entered: 01/28/2019) |
| 01/30/2019 | 228 | MEMO ENDORSEMENT granting 227 LETTER MOTION filed by Abdulrahman Farhane (4), addressed to Judge Loretta A. Preska from Naz Ahmad dated January 28, 2019 re: Leave to File Excess Pages. Requesting leave to file a memorandum of law up to |

| | | |
|---|---|---|
| | | 25 pages. ENDORSEMENT: SO ORDERED. (Signed by Judge Loretta A. Preska on 1/29/2019) [*** NOTE: Also docketed in related civil case 18-Cv-11973(LAP), Doc.#8. ***] (bw) (Entered: 01/30/2019) |
| 02/01/2019 | 229 | MEMORANDUM in Support by Abdulrahman Farhane re 219 MOTION to Vacate under 28 U.S.C. 2255, 220 MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 18-CV-11973.). (Ahmad, Naz) (Entered: 02/01/2019) |
| 02/01/2019 | 230 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** DECLARATION of Abderrahmane Farhane in Support as to Abdulrahman Farhane re: 219 MOTION to Vacate under 28 U.S.C. 2255, 220 MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 18-CV-11973.). (Ahmad, Naz) Modified on 2/4/2019 (ka). (Entered: 02/01/2019) |
| 02/01/2019 | 231 | DECLARATION of Naz Ahmad in Support as to Abdulrahman Farhane re: 219 MOTION to Vacate under 28 U.S.C. 2255, 220 MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 18-CV-11973.). (Attachments: # 1 Exhibit A - Plea Agreement)(Ahmad, Naz) (Entered: 02/01/2019) |
| 02/04/2019 | | **NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR as to Abdulrahman Farhane: Notice to Attorney Ahmad, Naz to RE-FILE Document 230 Declaration in Support of Motion. Use the event type Affidavit in Support of Motion found under the event list Replies, Opposition and Supporting Documents.** (ka) (Entered: 02/04/2019) |
| 02/04/2019 | 232 | AFFIDAVIT of Abderrahmane Farhane in Support as to Abdulrahman Farhane re 219 MOTION to Vacate under 28 U.S.C. 2255, 220 MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 18-CV-11973.). (Ahmad, Naz) (Entered: 02/04/2019) |
| 05/01/2019 | 233 | NOTICE OF ATTORNEY APPEARANCE: Alan Schoenfeld appearing for Abdulrahman Farhane. Appearance Type: Retained. (Schoenfeld, Alan) (Entered: 05/01/2019) |
| 05/01/2019 | 234 | **FILING ERROR - DEFICIENT DOCKET ENTRY (SEE DOCUMENT #235) -** NOTICE OF ATTORNEY APPEARANCE: Bruce M. Berman appearing for Abdulrahman Farhane. Appearance Type: Retained. (Berman, Bruce) Modified on 5/1/2019 (ldi). (Entered: 05/01/2019) |
| 05/01/2019 | 235 | NOTICE OF ATTORNEY APPEARANCE: David Alan Berman appearing for Abdulrahman Farhane. Appearance Type: Retained. (Berman, David) (Entered: 05/01/2019) |
| 05/06/2019 | 236 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** *AFFIDAVIT of Charles Gazzola by Abdulrahman Farhane. (Affidavit of Service)* (Schoenfeld, Alan) Modified on 5/6/2019 (ka). (Entered: 05/06/2019) |
| 05/06/2019 | | **NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR as to Abdulrahman Farhane: Notice to Attorney Schoenfeld, Alan to RE-FILE Document 236 Affidavit. Use the event type Certificate of Service found under the event list Service of Process.** (ka) (Entered: 05/06/2019) |
| 05/06/2019 | 237 | Certificate of Service of CIVIL COVER SHEET; MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY; PETITIONER'S MOTION TO REQUEST AN EXTENSION OF TIME TO FILE A MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VA CATE; DECLARATION OF RAMZI KASSEM, ESQ., IN SUPPORT OF MOTION TO REQUEST AN EXTENSION OF TIME; PROPOSED ORDER REGARDING MOTION FOR EXTENSION OF TIME TO FILE; ORDER GRANTING LETTER MOTION FOR EXTENSION OF TIME TO FILE; LETTER REQUESTING LEA VE TO FILE A |

SDNY CM/ECF NextGen Version 1.8.4

| | | |
|---|---|---|
| | | MEMORANDUM OF LAW UP TO 25 PAGES; ORDER GRANTING LEA VE TO FILE A MEMORANDUM OF LAW UP TO 25 PAGES; PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE PLEA AND SENTENCE PURSUANT TO 28 U.S.C. § 2255; AFFIDAVIT IN SUPPORT OF MOTION TO VACATE PLEA AND SENTENCE PURSUANT TO 28 U.S.C. § 2255; and DECLARATION OF NAZ AHMAD IN SUPPORT OF PETITIONER ABDERRAHMAN FARHANE'S MOTION TO VACATE PLEA AND SENTENCE PURSUANT TO 28 U.S.C. § 2255 by Abdulrahman Farhane. Document was served on Criminal Division: United States Attorney's Office on 05/03/2019. Service was accepted by G Gray. Service was made by Mail. (Schoenfeld, Alan) (Entered: 05/06/2019) |
| 05/09/2019 | 238 | NOTICE OF ATTORNEY APPEARANCE Jun Xiang appearing for USA. (Xiang, Jun) (Entered: 05/09/2019) |
| 05/13/2019 | 239 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** MOTION for Leave to File Opposition . Document filed by USA as to Abdulrahman Farhane. (Xiang, Jun) Modified on 5/13/2019 (ka). (Entered: 05/13/2019) |
| 05/13/2019 | | **NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR as to Abdulrahman Farhane: Notice to Attorney Xiang, Jun to RE-FILE Document 239 MOTION for Leave to File Opposition. Use the event type Letter Motion found under the event list Motions. (ka)** (Entered: 05/13/2019) |
| 05/28/2019 | 240 | LETTER MOTION addressed to Judge Loretta A. Preska from Alan E. Schoenfeld dated May 28, 2019 re: Leave to File Reply . Document filed by Abdulrahman Farhane. (Schoenfeld, Alan) (Entered: 05/28/2019) |
| 05/30/2019 | 241 | LETTER MOTION addressed to Judge Loretta A. Preska from Jun Xiang dated May 30, 2019 re: Order Permitting Probation to Provide Presentence Report . Document filed by USA as to Abdulrahman Farhane. (Xiang, Jun) (Entered: 05/30/2019) |
| 05/31/2019 | 242 | MEMO ENDORSEMENT granting 241 LETTER MOTION filed by USA as to Abdulrahman Farhane (4), addressed to Judge Loretta A. Preska from AUSA Jun Xiang dated May 30, 2019 re: Order Permitting Probation to Provide Presentence Report. The Government submits this letter to respectfully request that the Court issue an order permitting the U.S. Probation Office to provide the Government with a copy of the Presentence Report ("PSR") prepared for Mr. Farhane's April 16, 2007 sentencing. ENDORSEMENT: SO ORDERED. (Signed by Judge Loretta A. Preska on 5/31/2019) [*** NOTE: Also docketed in related civil case 18-Cv-11973(LAP), Doc.#21. ***] (bw) (Entered: 05/31/2019) |
| 05/31/2019 | 243 | ENDORSED LETTER as to (05-Cr-673-4) Abdulrahman Farhane addressed to Judge Loretta A. Preska from Attorney Alan E. Schoenfeld dated May 28, 2019 re: we respectfully request leave to submit a reply to the Government's answer within thirty days from the date on which the answer is filed. ENDORSEMENT: SO ORDERED.(Signed by Judge Loretta A. Preska on 5/31/2019) [*** NOTE: Also docketed in related civil case 18-Cv-11973(LAP), Doc.#20. ***] (bw) (Entered: 05/31/2019) |
| 06/14/2019 | 244 | MEMORANDUM in Opposition by USA as to Abdulrahman Farhane re 220 MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 18-CV-11973.). (Xiang, Jun) (Entered: 06/14/2019) |
| 07/09/2019 | 245 | LETTER MOTION addressed to Judge Loretta A. Preska from Alan E. Schoenfeld dated July 9, 2019 re: 220 MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 18-CV-11973.) re: Extension of Time to File the Reply and Leave to File a Reply Memorandum of up to 20 Pages . Document filed by Abdulrahman Farhane. (Schoenfeld, Alan) (Entered: 07/09/2019) |

| 07/10/2019 | 246 | MEMO ENDORSEMENT as to Abdulrahman Farhane (4) on 245 LETTER MOTION addressed to Judge Loretta A. Preska from Alan E. Schoenfeld dated July 9, 2019 re: 220 MOTION to Vacate under 28 U.S.C. 2255 (Civil Action 18-CV-11973.) re: Extension of Time to File the Reply and Leave to File a Reply Memorandum of up to 20 Pages. ENDORSEMENT: SO ORDERED. The Government may file a sur-reply addressing any new arguments in Petitioner's Reply. (Signed by Judge Loretta A. Preska on 7/10/2019) (ap) (Entered: 07/10/2019) |
| --- | --- | --- |
| 07/10/2019 | | Set/Reset Deadlines as to Abdulrahman Farhane: Replies due by 7/29/2019. (ap) (Entered: 07/10/2019) |
| 07/24/2019 | 247 | LETTER MOTION addressed to Judge Loretta A. Preska from Alan E. Schoenfeld dated July 24, 2019 re: 220 MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 18-CV-11973.) re: Extension of six weeks, up to and including September 9, 2019, to file the reply . Document filed by Abdulrahman Farhane. (Schoenfeld, Alan) (Entered: 07/24/2019) |
| 07/25/2019 | 248 | MEMO ENDORSEMENT 247 LETTER MOTION Request an extension of six weeks, up to and including September 9, 2019, to file the reply...ENDORSEMENT...SO ORDERED. (Signed by Judge Loretta A. Preska on 7/25/2019) (jw) (Entered: 07/25/2019) |
| 07/25/2019 | | Set/Reset Deadlines/Hearings as to Abdulrahman Farhane: Replies due by 9/9/2019 (jw) (Entered: 07/25/2019) |
| 09/03/2019 | 249 | LETTER MOTION addressed to Judge Loretta A. Preska from Alan E. Schoenfeld dated September 3, 2019 re: 220 MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 18-CV-11973.) re: Extension of Two Months, up to and Including November 8, 2019, to File the Reply . Document filed by Abdulrahman Farhane. (Schoenfeld, Alan) (Entered: 09/03/2019) |
| 09/05/2019 | 250 | MEMO ENDORSED re: 249 LETTER MOTION Extension of Two Months, up to and Including November 8, 2019, to File the Reply as to Abdulrahman Farhane (4)...ENDORSEMENT: Mr. Farhane's time to reply is extended to October 9. SO ORDERED. (Signed by Judge Loretta A. Preska on 9/5/19) (jbo) (Entered: 09/05/2019) |
| 09/05/2019 | | Set/Reset Deadlines as to Abdulrahman Farhane: Replies (Defendant) due by 10/9/2019. (jbo) (Entered: 09/05/2019) |
| 10/09/2019 | 251 | REPLY MEMORANDUM OF LAW in Support as to Abdulrahman Farhane re: 220 MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 18-CV-11973.) . (Schoenfeld, Alan) (Entered: 10/09/2019) |
| 12/17/2019 | 252 | MOTION for David A. Berman to Withdraw as Attorney . Document filed by Abdulrahman Farhane. (Berman, David) (Entered: 12/17/2019) |
| 12/20/2019 | 253 | NOTICE OF WITHDRAWAL OF DAVID BERMAN AS COUNSEL OF RECORD AND [PROPOSED] ORDER as to Abdulrahman Farhane (4). SO ORDERED (Signed by Judge Loretta A. Preska on 12/20/19) (jbo) (Entered: 12/20/2019) |
| 03/31/2020 | 254 | ORDER - Petitioner Abderrahmane Farhane's motion to vacate his plea, conviction, and sentence under 28 U.S.C. § 2255 based on ineffective assistance of counsel. For the foregoing reasons, Mr. Farhanes motion is DENIED. The Clerk of the Court is directed to mail a copy of this order to Mr. Farhane and to mark this action closed and all pending motions denied as moot. Refer to 18 civ 11973 (LAP) (Signed by Judge Loretta A. Preska on 3/31/2020) (jw) (Entered: 03/31/2020) |

| | | |
|---|---|---|
| 04/16/2020 | 255 | LETTER by Abdulrahman Farhane addressed to Judge Loretta A. Preska from Alan E. Schoenfeld dated April 16, 2020 re: Pre-Motion Conference (Schoenfeld, Alan) (Entered: 04/16/2020) |
| 04/21/2020 | 256 | LETTER by USA as to Abdulrahman Farhane addressed to Judge Loretta A. Preska from AUSA Jun Xiang dated April 21, 2020 re: Opposition to Certificate of Appealability Document filed by USA. (Xiang, Jun) (Entered: 04/21/2020) |
| 04/22/2020 | 257 | LETTER by Abdulrahman Farhane addressed to Judge Loretta A. Preska from Alan E. Schoenfeld dated April 22, 2020 re: Reply in Further Support for a Certificate of Appealability (Schoenfeld, Alan) (Entered: 04/22/2020) |
| 04/27/2020 | 258 | ORDER as to Abdulrahman Farhane: The Court finds that Defendant has not made a substantial showing of the denial of a constitutional right, and thus the request for a certificate of appealability is denied. (Signed by Judge Loretta A. Preska on 4/27/2020) (See ORDER set forth) (ap) (Entered: 04/27/2020) |
| 05/22/2020 | 259 | NOTICE OF APPEAL by Abdulrahman Farhane from 254 Order on Motion to Vacate (2255). *(Original Document Entered in Civil Case # 18-cv-11973, Doc. #38)* (tp) (Entered: 05/23/2020) |
| 05/23/2020 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Abdulrahman Farhane to US Court of Appeals re: 259 Notice of Appeal. (tp) (Entered: 05/23/2020) |
| 05/23/2020 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Abdulrahman Farhane re: 259 Notice of Appeal were transmitted to the U.S. Court of Appeals. (tp) (Entered: 05/23/2020) |
| 04/27/2021 | 276 | NOTICE OF ATTORNEY APPEARANCE Benjamin Woodside Schrier appearing for USA. (Schrier, Benjamin) (Entered: 04/27/2021) |
| 04/27/2021 | 277 | LETTER by USA as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane addressed to Judge Loretta A. Preska from Benjamin Woodside Schrier dated April 27, 2021 re: Firearms Destruction Order Document filed by USA. (Schrier, Benjamin) (Entered: 04/27/2021) |
| 04/27/2021 | 278 | LETTER by USA as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane addressed to Judge Loretta A. Preska from Benjamin Woodside Schrier dated April 27, 2021 re: Firearms Destruction Order Document filed by USA. (Schrier, Benjamin) (Entered: 04/27/2021) |
| 04/28/2021 | 279 | MEMO ENDORSEMENT as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane on re: 278 The Government respectfully writes to request that the Court authorize the Federal Bureau of Investigation (the "FBI") to destroy three firearms recovered in connection with the arrest of Tank Ibn Osman Shah, one of the defendants in the above-captioned case, on or about May 28, 2005. The FBI requires a court order before it can destroy a firearm...ENDORSEMENT...SO ORDERED (Signed by Judge Loretta A. Preska on 4/28/21)(jw) (Entered: 04/28/2021) |
| 03/30/2022 | 281 | MEMO ENDORSEMENT as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane on re: 280 LETTER by USA as to Tarik Ibn Osman Shah addressed to Judge Loretta A. Preska from AUSA Benjamin Woodside Schrier dated March 29, 2022 re: AUSA Withdrawal. ENDORSEMENT: SO ORDERED. (Signed by Judge Loretta A. Preska on 3/30/2022)(bw) (Entered: 03/30/2022) |
| 03/30/2022 | | Attorney update in case as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane. (AUSA) Attorney Benjamin Woodside Schrier terminated. (bw) (Entered: 03/30/2022) |

| 10/31/2024 | 282 | OPINION of USCA (certified copy) re: 259 Notice of Appeal - Final Judgment USCA Case Number 20-1666. For the foregoing reasons, we VACATE the decision of the prior panel Majority; VACATE the judgment of the District Court; and REMAND the case for further proceedings consistent with this opinion. Catherine O'Hagan Wolfe, Clerk USCA. Certified: 10/31/2024. Documents also filed in case 18cv11973. (Attachments: # 1 Exhibit Supporting Document, # 2 Exhibit Supporting Document, # 3 Exhibit Supporting Document, # 4 Exhibit Supporting Document, # 5 Exhibit Supporting Document)(km) (Entered: 10/31/2024) |
|---|---|---|
| 10/31/2024 | | Transmission of USCA Mandate/Order to the District Judge re: 282 USCA Opinion. (km) (Entered: 10/31/2024) |
| 01/02/2025 | 283 | MANDATE of USCA (Certified Copy) as to Abdulrahman Farhane re: A 259 Notice of Appeal filed by Abdulrahman Farhane. USCA Case Number 20-1666. IT IS HEREBY ORDERED, ADJUDGED and DECREED that the decision of the prior panel Majority is VACATED, the judgment of the district court denying habeas relief to Farhane is VACATED, and the case is REMANDED for further proceedings consistent with this Court's opinion.. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit. Issued As Mandate: 1/2/2025. (Attachments: # 1 Opinion, # 2 Concurring Opinion by Judge Perez, # 3 Concurring Opinion by Judge Walker, # 4 Concurring Opinion by Judge Wesley, # 5 Dissenting Opinion by Judge Nardini, # 6 Dissenting Opinion by Judge Park) *[This document also entered in case: 18-cv-11973].* (nd) (Entered: 01/03/2025) |
| 01/03/2025 | | Transmission of USCA Mandate/Order to the District Judge re: 283 USCA Mandate. (nd) (Entered: 01/03/2025) |
| 01/06/2025 | 284 | ORDER as to (05-Cr-673-4) Abdulrahman Farhane. The parties shall confer and inform the Court by letter no later than January 13 on how they propose to proceed. SO ORDERED. ( Responses due by 1/13/2025. ) (Signed by Judge Loretta A. Preska on 1/6/2025); Refer to civil case 18 Civ. 11973 (LAP) also. (bw) (Entered: 01/06/2025) |
| 01/13/2025 | 285 | JOINT LETTER by USA as to Abdulrahman Farhane addressed to Judge Loretta A. Preska from AUSA Jun Xiang dated January 13, 2025 re: Status Update Document filed by USA. (Xiang, Jun) (Entered: 01/13/2025) |
| 01/14/2025 | 286 | MEMO ENDORSEMENT as to Abdulrahman Farhane re: 285 Letter Status Update... ENDORSEMENT: The parties' request to file a letter no later than January 27, 2025 advising the Court of how they propose to proceed is GRANTED. SO ORDERED. (Status Report due by 1/27/2025.) (Signed by Judge Loretta A. Preska on 1/14/25)(jbo) (Entered: 01/14/2025) |
| 01/27/2025 | 287 | JOINT LETTER MOTION addressed to Judge Loretta A. Preska from AUSA Jun Xiang dated January 27, 2025 re: Proposed Schedule . Document filed by USA as to Abdulrahman Farhane. (Xiang, Jun) (Entered: 01/27/2025) |
| 01/28/2025 | 288 | MEMO ENDORSEMENT as to Abdulrahman Farhane (4) terminating 287 JOINT LETTER MOTION addressed to Judge Loretta A. Preska from AUSA Jun Xiang dated January 27, 2025 re: Proposed Schedule. ENDORSEMENT: The Court hereby adopts the parties' proposed schedule regarding briefing. The deadline for Petitioner to file his brief is March 14, 2025. The Government shall file its opposition brief by April 11, 2025. Petitioner shall file any reply by April 25, 2025. The Court also hereby adopts the parties' proposed Compliance schedule. SO ORDERED. (Signed by Judge Loretta A. Preska on 1/28/2025) (lnl) (Entered: 01/28/2025) |
| 03/14/2025 | 289 | MOTION for Order Concerning Scope of Waiver of Attorney-Client Privilege . Document filed by Abdulrahman Farhane as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane. (Attachments: # 1 Proposed Order |

**A17**

| | | |
|---|---|---|
| | | Concerning Scope of Waiver of Attorney-Client Privilege)(Schoenfeld, Alan) (Entered: 03/14/2025) |
| 03/14/2025 | 290 | MEMORANDUM in Support by Abdulrahman Farhane as to Tarik Ibn Osman Shah, Rafiq Sabir, Mahmud Faruq Brent, Abdulrahman Farhane re 289 MOTION for Order Concerning Scope of Waiver of Attorney-Client Privilege .. (Schoenfeld, Alan) (Entered: 03/14/2025) |
| 04/09/2025 | 291 | CONSENT LETTER MOTION addressed to Judge Loretta A. Preska from AUSA Jun Xiang dated April 9, 2025 re: Extension Filing Deadlines . Document filed by USA as to Abdulrahman Farhane. (Xiang, Jun) (Entered: 04/09/2025) |
| 04/10/2025 | 292 | ENDORSED LETTER as to (05-Cr-673-4) Abdulrahman Farhane addressed to Judge Loretta A. Preska from AUSA Jun Xiang dated April 9, 2025 re: Due to the press of business in another matter involving serious risk to the safety of the public, the Government respectfully requests an extension of its opposition deadline and of the defense's reply deadline, as follows: May 9, 2025 Government's opposition; May 30, 2025 Defense's reply. ENDORSEMENT: SO ORDERED. ( Responses due by 5/9/2025. Replies due by 5/30/2025. )(Signed by Judge Loretta A. Preska on 4/10/2025); Refer to civil case 18 Civ. 11973 (LAP) also. (bw) (Entered: 04/10/2025) |
| 05/02/2025 | 293 | RESPONSE in Opposition by USA as to Abdulrahman Farhane re: 289 MOTION for Order Concerning Scope of Waiver of Attorney-Client Privilege .. (Attachments: # 1 Exhibit A - Proposed Order)(Xiang, Jun) (Entered: 05/02/2025) |
| 05/30/2025 | 294 | REPLY TO RESPONSE to Motion by Abdulrahman Farhane re 289 MOTION for Order Concerning Scope of Waiver of Attorney-Client Privilege .. (Schoenfeld, Alan) (Entered: 05/30/2025) |
| 10/23/2025 | 295 | MEMORANDUM & ORDER as to (05-Cr-673-4) Abdulrahman Farhane. Before the Court is Petitioner Abderrahmane Farhane's ("Petitioner") motion for an order concerning the scope of the waiver of attorney-client privilege in the above-captioned action. (Dkt. no. 289 [the "Waiver Motion" or "Pet. Waiver Mot."].)(See Footnote 1 on this Order). Petitioner asks that the scope of waiver extend only to "communications with trial counsel (or lack thereof) concerning the potential denaturalization or deportation consequences of his plea[.]" (Pet. Waiver Mot. at 1.)(See Footnote 2 on this Order). Petitioner also requests a protective order limiting the waiver of privilege in various ways. (Id.) The Government opposes the Waiver Motion and requests the Court broaden the scope of attorney-client privilege waiver. (Gov. Opp'n, dated May 2, 2025 [dkt. no. 293] at 7.) The Government also opposes Petitioner's request for a protective order. (Id. at 9-11.) For the reasons set forth below, Petitioner's Motion is GRANTED in part and DENIED in part....[*** See this Memorandum & Order ***]... IV. Conclusion. For the reasons set forth above, Petitioner's Motion is GRANTED in part and DENIED in part. It is hereby ordered that: 1. Petitioner has waived attorney-client privilege as to communications between him and trial counsel concerning: a. the potential denaturalization or deportation consequences of his guilty plea; b. Petitioner's naturalization, including whether the naturalization overlapped in time with the offense conduct; c. Petitioner's desire to live in the United States, d. the nature and strength of Petitioner's ties to Morocco or another foreign country; e. Petitioner's attitudes toward United States citizenship for himself or his family; f. the perceived strength of the Government's evidence, including potential trial defenses, and g. Petitioner's goals and instructions to Mr. Hueston with respect to plea negotiations. 2. Trial counsel shall give testimony about suchcommunications (or lack thereof) and produce written communications between trial counsel and Petitioner concerning the above-mentioned topics; 3. Testimony given and written communications disclosed by trial counsel shall be filed under seal; 4. The attorney-client privilege shall not be deemed automatically waived in any other Federal or State proceeding by virtue of |

| | | |
|---|---|---|
| | | the Court-ordered disclosure in this § 2255 proceeding; and 5. The Government is prohibited from using the information disclosed by Petitioner's trial counsel without further order of a court of competent jurisdiction or a written waiver by Petitioner. The parties shall submit a joint letter no later than October 31, 2025 advising the Court of how they propose to proceed. The Clerk of the Court shall close docket number 289 on 05-CR-673 and docket number 44 on 18-CV-11973. SO ORDERED. (Signed by Judge Loretta A. Preska on 10/23/2025) (bw) (Entered: 10/23/2025) |
| 10/23/2025 | | Set/Reset Deadlines/Hearings as to (05-Cr-673-4) Abdulrahman Farhane: Joint Letter due by 10/31/2025. [*** Note: See Memorandum & Order, Doc.# 295 . ***] (bw) (Entered: 10/23/2025) |
| 10/30/2025 | 296 | LETTER MOTION addressed to Judge Loretta A. Preska from AUSA Jun Xiang dated October 30, 2025 re: Sharing of Government Discovery . Document filed by USA as to Abdulrahman Farhane. (Attachments: # 1 Exhibit A - Cover Letter to Naz Ahmad)(Xiang, Jun) (Entered: 10/30/2025) |
| 10/31/2025 | 297 | LETTER RESPONSE to Motion by Abdulrahman Farhane addressed to Judge Loretta A. Preska from Alan E. Schoenfeld dated October 31, 2025 re: 296 LETTER MOTION addressed to Judge Loretta A. Preska from AUSA Jun Xiang dated October 30, 2025 re: Sharing of Government Discovery .. (Schoenfeld, Alan) (Entered: 10/31/2025) |
| 10/31/2025 | 298 | JOINT LETTER MOTION addressed to Judge Loretta A. Preska from AUSA Jun Xiang dated October 31, 2025 re: Scheduling . Document filed by USA as to Abdulrahman Farhane. (Xiang, Jun) (Entered: 10/31/2025) |
| 11/03/2025 | 299 | ORDER as to Abdulrahman Farhane (4) Before the Court is the Government's motion to proceed according to the January 28, 2025 schedule, (dkt. no. 288), and the Defendant's request to stay proceedings for four weeks in order to permit him to file a petition for mandamus, (dkt. no. 2 98). The Government's motion to move forward with the January 28, 2025 scheduling order is granted, and Defendant's motion to stay proceedings for four weeks is denied. Proceedings shall, however, be stayed until November 17 in order to permit Defendant to seek a stay from the Court of Appeals. Dates on the January 28 order shall be adjusted accordingly. SO ORDERED. (Signed by Judge Loretta A. Preska on 11/3/2025) (lnl) (Entered: 11/03/2025) |
| 11/14/2025 | 300 | LETTER by Abdulrahman Farhane addressed to Judge Loretta A. Preska from Alan E. Schoenfeld dated November 14, 2025 re: Opposition to Respondent's Letter Motion (Attachments: # 1 Exhibit A - Declaration of David Patton, # 2 Exhibit B - Declaration of Ellen Yaroshefsky)(Schoenfeld, Alan) (Entered: 11/14/2025) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/16/2025 21:01:23 | | |
| **PACER Login:** | asmajaber | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:05-cr-00673-LAP |
| **Billable Pages:** | 17 | **Cost:** | 1.70 |

**Query    Reports    Utilities    Help    Log Out**

STAYED,2255,ECF,REOPEN

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:18-cv-11973-LAP

Farhane v. USA            Date Filed: 12/19/2018
Assigned to: Judge Loretta A. Preska        Jury Demand: None
Related Case: 1:05-cr-00673-LAP-4      Nature of Suit: 510 Prisoner: Vacate
Cause: 28:2255 Motion to Vacate / Correct Illegal Sentenc    Sentence
                                            Jurisdiction: U.S. Government Defendant

**Petitioner**

**Abdulrahman Farhane**         represented by    **Ramzi Kassem**
                                           Main Street Legal Services, Inc.
                                           2 Court Square West
                                           Ste 5th Floor
                                           Long Island City, NY 11101
                                           718-340-4558
                                           Fax: 718-340-4478
                                           Email: ramzi.kassem@law.cuny.edu
                                           *LEAD ATTORNEY*
                                           *ATTORNEY TO BE NOTICED*

                                           **Alan Schoenfeld**
                                           Wilmer Cutler Pickering Hale & Dorr LLP (NYC)
                                           7 World Trade Center
                                           New York, NY 10007
                                           (212) 937-7294
                                           Fax: (212) 230-8888
                                           Email: alan.schoenfeld@wilmerhale.com
                                           *ATTORNEY TO BE NOTICED*

                                           **David Alan Berman**
                                           7 World Trade Center
                                           250 Greenwich Street
                                           New York, NY 10007
                                           212-295-6288
                                           Email: David.Berman@wilmerhale.com
                                           *TERMINATED: 12/20/2019*

                                           **Naz Ahmad**
                                           Main Street Legal Services, Inc
                                           Cuny School of Law 2 Court Square
                                           Long Island City, NY 10026
                                           (718)-340-4630
                                           Email: naz.ahmad@law.cuny.edu
                                           *ATTORNEY TO BE NOTICED*

A20

V.

## Respondent

USA                                          represented by **Jun Xiang**
                                                            DOJ-USAO
                                                            1 St. Andrew's Plaza
                                                            New York, NY 10007
                                                            212-637-2289
                                                            Email: jun.xiang@usdoj.gov
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/19/2018 | 1 | MOTION to Vacate, Set Aside or Correct Sentence (28 U.S.C. 2255). NO FURTHER ENTRIES. PLEASE SEE CRIMINAL CASE: 05-cr-673 (LAP).Document filed by Abdulrahman Farhane.(gp) Modified on 12/19/2018 (gp). (Entered: 12/19/2018) |
| 12/19/2018 |  | Magistrate Judge Katharine H. Parker is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: http://nysd.uscourts.gov/forms.php. (gp) (Entered: 12/19/2018) |
| 12/19/2018 |  | Case Designated ECF. (gp) (Entered: 12/19/2018) |
| 12/19/2018 | 2 | MOTION to Vacate 1 Motion to Vacate/Set Aside/Correct Sentence (2255) . Document filed by Abdulrahman Farhane. (Attachments: # 1 Civil Cover Sheet)(Kassem, Ramzi) (Entered: 12/19/2018) |
| 12/19/2018 | 3 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** FIRST MOTION for Extension of Time to File *a Memorandum of Law in Support of Motion to Vacate*. Document filed by Abdulrahman Farhane. (Attachments: # 1 Text of Proposed Order, # 2 Declaration in Support of Motion to Request an Extension of Time)(Kassem, Ramzi) Modified on 12/20/2018 (db). (Entered: 12/19/2018) |
| 12/20/2018 |  | **\*\*\*NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Notice to Attorney Ramzi Kassem to RE-FILE Document 3 FIRST MOTION for Extension of Time to File *a Memorandum of Law in Support of Motion to Vacate*. ERROR(S): Supporting Documents are filed separately, each receiving their own document #'s. (db)** (Entered: 12/20/2018) |
| 12/20/2018 | 4 | FIRST MOTION for Extension of Time to File *a Memorandum of Law in Support of Motion to Vacate*. Document filed by Abdulrahman Farhane. (Attachments: # 1 Text of Proposed Order)(Kassem, Ramzi) (Entered: 12/20/2018) |
| 12/20/2018 | 5 | DECLARATION of Ramzi Kassem, Esq. in Support re: 4 FIRST MOTION for Extension of Time to File *a Memorandum of Law in Support of Motion to Vacate*.. Document filed by Abdulrahman Farhane. (Kassem, Ramzi) (Entered: 12/20/2018) |
| 01/02/2019 | 6 | ORDER granting 4 Letter Motion for Extension of Time to File. GOOD CAUSE appearing, the Movant's application to file a memorandum of law in support of his motion pursuant to 28 U.S.C. § 2255 by Febuary 1, 2019 is hereby granted. (Signed by Judge Loretta A. Preska on 12/21/2018) (mro) (Entered: 01/02/2019) |

## A21

| 01/29/2019 | 7 | NOTICE OF APPEARANCE by Naz Ahmad on behalf of Abdulrahman Farhane. (Ahmad, Naz) (Entered: 01/29/2019) |
|---|---|---|
| 01/30/2019 | 8 | ENDORSED LETTER addressed to Judge Loretta A. Preska from Naz Ahmad and Ramzi Kassem dated January 28, 2019 re: letter requesting to leave to file a memorandum of law up to 25 pages. ENDORSEMENT: SO ORDERED. (Signed by Judge Loretta A. Preska on 1/29/2019) (ks) (Entered: 01/30/2019) |
| 01/30/2019 | 9 | NOTICE OF APPEARANCE by Alan Schoenfeld on behalf of Abdulrahman Farhane. (Schoenfeld, Alan) (Entered: 01/30/2019) |
| 01/30/2019 | 10 | NOTICE OF APPEARANCE by David Alan Berman on behalf of Abdulrahman Farhane. (Berman, David) (Entered: 01/30/2019) |
| 02/01/2019 | 11 | MEMORANDUM OF LAW in Support re: 2 MOTION to Vacate 1 Motion to Vacate/Set Aside/Correct Sentence (2255) . . Document filed by Abdulrahman Farhane. (Ahmad, Naz) (Entered: 02/01/2019) |
| 02/01/2019 | 12 | DECLARATION of Abderrahmane Farhane in Support re: 2 MOTION to Vacate 1 Motion to Vacate/Set Aside/Correct Sentence (2255) .. Document filed by Abdulrahman Farhane. (Ahmad, Naz) (Entered: 02/01/2019) |
| 02/01/2019 | 13 | DECLARATION of Naz Ahmad in Support re: 2 MOTION to Vacate 1 Motion to Vacate/Set Aside/Correct Sentence (2255) .. Document filed by Abdulrahman Farhane. (Attachments: # 1 Exhibit A - Signed Plea Agreement Nov 9 2006)(Ahmad, Naz) (Entered: 02/01/2019) |
| 02/05/2019 | 14 | AFFIDAVIT of Abderrahmane Farhane in Support re: 2 MOTION to Vacate 1 Motion to Vacate/Set Aside/Correct Sentence (2255) .. Document filed by Abdulrahman Farhane. (Ahmad, Naz) (Entered: 02/05/2019) |
| 05/06/2019 | 15 | AFFIDAVIT OF SERVICE of CIVIL COVER SHEET; MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY; PETITIONER'S MOTION TO REQUEST AN EXTENSION OF TIME TO FILE A MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VA CATE; DECLARATION OF RAMZI KASSEM, ESQ., IN SUPPORT OF MOTION TO REQUEST AN EXTENSION OF TIME; PROPOSED ORDER REGARDING MOTION FOR EXTENSION OF TIME TO FILE; ORDER GRANTING LETTER MOTION FOR EXTENSION OF TIME TO FILE; LETTER REQUESTING LEA VE TO FILE A MEMORANDUM OF LAW UP TO 25 PAGES; ORDER GRANTING LEA VE TO FILE A MEMORANDUM OF LAW UP TO 25 PAGES; PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE PLEA AND SENTENCE PURSUANT TO 28 U.S.C. § 2255; AFFIDAVIT IN SUPPORT OF MOTION TO VACATE PLEA AND SENTENCE PURSUANT TO 28 U.S.C. § 2255; and DECLARATION OF NAZ AHMAD IN SUPPORT OF PETITIONER ABDERRAHMANE FARHANE'S MOTION TO VACATE PLEA AND SENTENCE PURSUANT TO 28 U.S.C. § 2255 served on Civil Division - United States Attorney's Office on May 3rd, 2019. Service was accepted by G. Gray. Service was made by MAIL. Document filed by Abdulrahman Farhane. (Schoenfeld, Alan) (Entered: 05/06/2019) |
| 05/09/2019 | 16 | NOTICE OF APPEARANCE by Jun Xiang on behalf of USA. (Xiang, Jun) (Entered: 05/09/2019) |
| 05/13/2019 | 17 | LETTER MOTION for Leave to File Opposition addressed to Judge Loretta A. Preska from Jun Xiang dated May 13, 2019. Document filed by USA.(Xiang, Jun) (Entered: 05/13/2019) |

| | | |
|---|---|---|
| 05/14/2019 | 18 | ORDER granting 17 Letter Motion for Leave to File Document: SO ORDERED. (Signed by Judge Loretta A. Preska on 5/14/2019) (jwh) (Entered: 05/14/2019) |
| 05/14/2019 | | Set/Reset Deadlines: Responses due by 6/14/2019 (jwh) (Entered: 05/14/2019) |
| 05/28/2019 | 19 | LETTER MOTION for Leave to File Reply addressed to Judge Loretta A. Preska from Alan E. Schoenfeld dated May 28, 2019. Document filed by Abdulrahman Farhane. (Schoenfeld, Alan) (Entered: 05/28/2019) |
| 05/31/2019 | 20 | ORDER granting 19 Letter Motion for Leave to File Document. SO ORDERED. (Signed by Judge Loretta A. Preska on 5/31/2019) (mro) (Entered: 05/31/2019) |
| 05/31/2019 | 21 | ENDORSED LETTER addressed to Judge Loretta A. Preska from Jun Xiang dated 5/30/19 re: The Government requests that the Court issue an order permitting the U.S. Probation Office to provide the Government with a copy of the Presentence Report prepared for Mr. Farhane's April 16, 2007 sentencing. ENDORSEMENT: SO ORDERED. (Signed by Judge Loretta A. Preska on 5/31/2019) (mro) (Entered: 05/31/2019) |
| 06/14/2019 | 22 | MEMORANDUM OF LAW in Opposition re: 2 MOTION to Vacate 1 Motion to Vacate/Set Aside/Correct Sentence (2255) . . Document filed by USA. (Xiang, Jun) (Entered: 06/14/2019) |
| 07/09/2019 | 23 | LETTER MOTION for Extension of Time to File Response/Reply as to 2 MOTION to Vacate 1 Motion to Vacate/Set Aside/Correct Sentence (2255) . addressed to Judge Loretta A. Preska from Alan E. Schoenfeld dated July 9, 2019., LETTER MOTION for Leave to File Excess Pages addressed to Judge Loretta A. Preska from Alan E. Schoenfeld dated July 9, 2019. Document filed by Abdulrahman Farhane.(Schoenfeld, Alan) (Entered: 07/09/2019) |
| 07/10/2019 | 24 | ORDER granting 23 Letter Motion for Extension of Time to File Response/Reply re 2 MOTION to Vacate 1 Motion to Vacate/Set Aside/Correct Sentence (2255). ; granting 23 Letter Motion for Leave to File Excess Pages. The government may file a sur-reply addressing any new arguments in the petitioner's reply. SO ORDERED. (Replies due by 7/29/2019.) (Signed by Judge Loretta A. Preska on 7/10/2019) (ne) (Entered: 07/10/2019) |
| 07/24/2019 | 25 | LETTER MOTION for Extension of Time to File Response/Reply as to 2 MOTION to Vacate 1 Motion to Vacate/Set Aside/Correct Sentence (2255) . addressed to Judge Loretta A. Preska from Alan E. Schoenfeld dated July 24, 2019. Document filed by Abdulrahman Farhane.(Schoenfeld, Alan) (Entered: 07/24/2019) |
| 07/25/2019 | 26 | ORDER granting 25 Letter Motion for Extension of Time to File Response/Reply. SO ORDERED. Replies due by 9/9/2019. (Signed by Judge Loretta A. Preska on 7/25/2019) (mml) (Entered: 08/07/2019) |
| 09/03/2019 | 27 | LETTER MOTION for Extension of Time to File Response/Reply as to 1 Motion to Vacate/Set Aside/Correct Sentence (2255) addressed to Judge Loretta A. Preska from Alan E. Schoenfeld dated September 3, 2019. Document filed by Abdulrahman Farhane. (Schoenfeld, Alan) (Entered: 09/03/2019) |
| 09/05/2019 | 28 | ORDER granting 27 Letter Motion for Extension of Time to File Response/Reply. Mr. Farhane's time to reply is extended to October 9. SO ORDERED. Replies due by 10/9/2019. (Signed by Judge Loretta A. Preska on 9/5/2019) (mml) (Entered: 09/05/2019) |
| 10/09/2019 | 29 | REPLY MEMORANDUM OF LAW in Support re: 2 MOTION to Vacate 1 Motion to Vacate/Set Aside/Correct Sentence (2255) . . Document filed by Abdulrahman Farhane. (Schoenfeld, Alan) (Entered: 10/09/2019) |

| | | |
|---|---|---|
| 12/17/2019 | 30 | PROPOSED ORDER FOR WITHDRAWAL OF ATTORNEY. Document filed by Abdulrahman Farhane. (Berman, David) (Entered: 12/17/2019) |
| 12/20/2019 | 31 | NOTICE OF WITHDRAWAL OF DAVID BERMAN AS COUNSEL OF RECORD AND ORDER: PLEASE TAKE NOTICE that, I, David A. Berman, of the law firm Wilmer Cutler Pickering Hale and Dorr LLP, hereby withdraw as counsel of record for Defendant/Petitioner Abderrahmane Farhane. I am withdrawing as counsel of record for Defendant/Petitioner because I am separating from Wilmer Cutler Pickering Hale and Dorr LLP. Defendant/Petitioner continues to be represented in this matter by the other counsel of record at Wilmer Cutler Pickering Hale and Dorr LLP. I respectfully request that my name and email address be removed from the official docket. SO ORDERED. Attorney David Alan Berman terminated. (Signed by Judge Loretta A. Preska on 12/20/2019) (mml) (Entered: 12/20/2019) |
| 03/31/2020 | | ***DELETED DOCUMENT. Deleted document number 32 ORDER. The document was incorrectly filed in this case. (va) (Entered: 04/01/2020) |
| 03/31/2020 | 32 | ORDER denying 2 Motion to Vacate. For the foregoing reasons, Mr. Farhane's motion is DENIED. The Clerk of the Court is directed to mail a copy of this order to Mr. Farhane and to mark this action closed and all pending motions denied as moot. SO ORDERED. (Signed by Judge Loretta A. Preska on 3/31/2020) (va) Transmission to Docket Assistant Clerk for processing. (Entered: 04/01/2020) |
| 03/31/2020 | 33 | CLERK'S JUDGMENT re: 32 Order on Motion to Vacate. in favor of USA against Abdulrahman Farhane. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Order dated March 31, 2020, Mr. Farhane's motion is denied; accordingly, this case is closed and all pending motions are denied as moot. (Signed by Clerk of Court Ruby Krajick on 03/31/2020) (Attachments: # 1 Notice of Right to Appeal) (dt) (Entered: 04/02/2020) |
| 04/16/2020 | 34 | LETTER addressed to Judge Loretta A. Preska from Alan E. Schoenfeld dated April 16, 2020 re: Pre-Motion Conference. Document filed by Abdulrahman Farhane..(Schoenfeld, Alan) (Entered: 04/16/2020) |
| 04/21/2020 | 35 | LETTER addressed to Judge Loretta A. Preska from AUSA Jun Xiang dated April 21, 2020 re: Opposition to Certificate of Appealability. Document filed by USA..(Xiang, Jun) (Entered: 04/21/2020) |
| 04/22/2020 | 36 | LETTER addressed to Judge Loretta A. Preska from Alan E. Schoenfeld dated April 22, 2020 re: Reply in Further Support for a Certificate of Appealability. Document filed by Abdulrahman Farhane..(Schoenfeld, Alan) (Entered: 04/22/2020) |
| 04/27/2020 | 37 | ORDER: For the reasons set out above, the Court finds that Defendant has not made a substantial showing of the denial of a constitutional right, and thus the request for a certificate of appealability is denied. SO ORDERED. (Signed by Judge Loretta A. Preska on 4/27/2020) (va) (Entered: 04/27/2020) |
| 05/22/2020 | 38 | NOTICE OF APPEAL from 33 Clerk's Judgment, 32 Order on Motion to Vacate,. Document filed by Abdulrahman Farhane. Filing fee $ 505.00, receipt number ANYSDC-19946268. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. *Copy also entered in Criminal Case #05-cr-0673-4, Doc. #259)* (Schoenfeld, Alan) Modified on 5/23/2020 (tp). (Entered: 05/22/2020) |
| 05/22/2020 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 38 Notice of Appeal. (tp) (Entered: 05/23/2020) |
| 05/22/2020 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 38 Notice of Appeal, filed by Abdulrahman Farhane were transmitted |

A24

| | | |
|---|---|---|
| | | to the U.S. Court of Appeals. (tp) (Entered: 05/23/2020) |
| 10/31/2024 | 39 | TRUE COPY OPINION of USCA as to 38 Notice of Appeal, filed by Abdulrahman Farhane USCA Case Number 20-1666. USCA Case Number 20-1666. For the foregoing reasons, we VACATE the decision of the prior panel Majority; VACATE the judgment of the District Court; and REMAND the case for further proceedings consistent with this opinion. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit. Certified: 10/31/2024. Documents also filed in case 05cr673-4. (Attachments: # 1 Exhibit Supporting Document, # 2 Exhibit Supporting Document, # 3 Exhibit Supporting Document, # 4 Exhibit Supporting Document, # 5 Exhibit Supporting Document).(km) (Entered: 10/31/2024) |
| 10/31/2024 | | Transmission of USCA Mandate/Order to the District Judge re: 39 USCA Opinion.(km) (Entered: 10/31/2024) |
| 01/02/2025 | 40 | MANDATE of USCA (Certified Copy) as to 38 Notice of Appeal, filed by Abdulrahman Farhane. USCA Case Number 20-1666. IT IS HEREBY ORDERED, ADJUDGED and DECREED that the decision of the priorpanel Majority is VACATED, the judgment of the district court denying habeas relief to Farhane is VACATED, and the case is REMANDED for further proceedings consistent with this Court's opinion.. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit. Issued As Mandate: 1/2/2025. (Attachments: # 1 Opinion, # 2 Concurring Opinion by Judge Perez, # 3 Concurring Opinion by Judge Walker, # 4 Concurring Opinion by Judge Wesley, # 5 Dissenting Opinion by Judge Nardini, # 6 Dissenting Opinion by Judge Park)*[This document also entered in case: 05-cr-0673-4]*. .(nd) (Entered: 01/03/2025) |
| 01/03/2025 | | Transmission of USCA Mandate to the District Judge re: 40 USCA Mandate..(nd) (Entered: 01/03/2025) |
| 01/06/2025 | 41 | ORDER The parties shall confer and inform the Court by letter no later than January 13 on how they propose to proceed. SO ORDERED. (Signed by Judge Loretta A. Preska on 01/06/2025) (ar) (Entered: 01/06/2025) |
| 01/14/2025 | 42 | ENDORSED LETTER addressed to Judge Loretta A. Preska from Jun Xiang dated 1/13/2025 re: The Government respectfully submits this joint letter responding to the Courts Order directing the parties to meet and confer and to propose a schedule. Last week and this week, the parties met and conferred telephonically to discuss potential next steps. Based on discussions thus far which have been frank and productive the parties have not reached agreement as to scheduling or the scope of further litigation in this case. ENDORSEMENT: The parties' request to file a letter no later than January 27, 2025 advising the Court of how they propose to proceed is GRANTED. SO ORDERED. (Signed by Judge Loretta A. Preska on 1/14/2025) (tg) (Entered: 01/14/2025) |
| 01/28/2025 | 43 | ORDER granting [287 in 5-cr-673] JOINT LETTER MOTION addressed to Judge Loretta A. Preska from AUSA Jun Xiang dated January 27, 2025 re: Proposed Schedule. The Court hereby adopts the parties' proposed schedule regarding briefing. The deadline for Petitioner to file his brief is March 14, 2025. The Government shall file its opposition brief by April 11, 2025. Petitioner shall file any reply by April 25, 2025. The Court also hereby adopts the parties' proposed Compliance schedule. SO ORDERED. ( Motions due by 3/14/2025., Replies due by 4/25/2025., Responses due by 4/11/2025) (Signed by Judge Loretta A. Preska on 1/28/2025) (tg) (Entered: 01/28/2025) |
| 03/14/2025 | 44 | MOTION for Order Concerning Scope of Waiver of Attorney-Client Privilege . Document filed by Abdulrahman Farhane. (Attachments: # 1 Proposed Order Concerning Scope of Waiver of Attorney-Client Privilege).(Schoenfeld, Alan) (Entered: 03/14/2025) |
| 03/14/2025 | 45 | MEMORANDUM OF LAW in Support re: 44 MOTION for Order Concerning Scope of Waiver of Attorney-Client Privilege . . Document filed by Abdulrahman Farhane.. |

A25

| | | |
|---|---|---|
| | | (Schoenfeld, Alan) (Entered: 03/14/2025) |
| 04/10/2025 | 46 | ENDORSED LETTER addressed to Judge Loretta A. Preska from Jun Xiang dated 4/9/2025 re: Due to the press of business in another matter involving serious risk to the safety of the public, the Government respectfully requests an extension of its opposition deadline and of the defense's reply deadline, as follows: May 9, 2025 Government's opposition. May 30, 2025 Defense's reply. ENDORSEMENT: SO ORDERED. ( Responses due by 5/9/2025, Replies due by 5/30/2025.) (Signed by Judge Loretta A. Preska on 4/10/2025) (tg) (Entered: 04/10/2025) |
| 05/02/2025 | 47 | RESPONSE in Opposition to Motion re: 44 MOTION for Order Concerning Scope of Waiver of Attorney-Client Privilege . . Document filed by USA. (Attachments: # 1 Exhibit A - Proposed Order).(Xiang, Jun) (Entered: 05/02/2025) |
| 05/30/2025 | 48 | REPLY to Response to Motion re: 44 MOTION for Order Concerning Scope of Waiver of Attorney-Client Privilege . . Document filed by Abdulrahman Farhane..(Schoenfeld, Alan) (Entered: 05/30/2025) |
| 10/23/2025 | 49 | MEMORANDUM AND ORDER granting in part and denying in part 44 Motion. For the reasons set forth above, Petitioner's Motion is GRANTED in part and DENIED in part. It is hereby ordered that: 1. Petitioner has waived attorney-client privilege as to communications between him and trial counsel concerning: a. the potential denaturalization or deportation consequences of his guilty plea; b. Petitioner's naturalization, including whether the naturalization overlapped in time with the offense conduct; c. Petitioner's desire to live in the United States, d. the nature and strength of Petitioner's ties to Morocco or another foreign country; e. Petitioner's attitudes toward United States citizenship for himself or his family; f. the perceived strength of the Government's evidence, including potential trial defenses, and 2.Trial counsel shall give testimony about such communications (or lack thereof) and produce written communications between trial counsel and Petitioner concerning the above-mentioned topics; 3.Testimony given and written communications disclosed by trial counsel shall be filed under seal; 4.The attorney-client privilege shall not be deemed automatically waived in any other Federal or State proceeding by virtue of the Court-ordered disclosure in this § 2255 proceeding; and 5.The Government is prohibited from using the information disclosed by Petitioner's trial counsel without further order of a court of competent jurisdiction or a written waiver by Petitioner. The parties shall submit a joint letter no later than October 31, 2025 advising the Court of how they propose to proceed. The Clerk of the Court shall close docket number 289 on 05-CR-673 and docket number 44 on 18-CV-11973. SO ORDERED. (Signed by Judge Loretta A. Preska on 10/23/2025) (tg) (Entered: 10/23/2025) |
| 10/31/2025 | 50 | RESPONSE re LETTER MOTION addressed to Judge Loretta A. Preska from AUSA Jun Xiang dated October 30, 2025 re: Sharing of Government Discovery in 05-CR-673. Document filed by Abdulrahman Farhane..(Schoenfeld, Alan) (Entered: 10/31/2025) |
| 11/03/2025 | 51 | ORDER: Before the Court is the Government's motion to proceed according to the January 28, 2025 schedule, (dkt. no. 288), and the Defendant's request to stay proceedings for four weeks in order to permit him to file a petition for mandamus, (dkt. no. 2 98). The Government's motion to move forward with the January 28, 2025 scheduling order is granted, and Defendant's motion to stay proceedings for four weeks is denied. Proceedings shall, however, be stayed until November 17 in order to permit Defendant to seek a stay from the Court of Appeals. Dates on the January 28 order shall be adjusted accordingly. SO ORDERED. (Signed by Judge Loretta A. Preska on 11/3/2025) (tg) (Entered: 11/03/2025) |

**A26**

| 11/03/2025 | 52 | MEMO ENDORSEMENT on re: 50 Response filed by Abdulrahman Farhane. ENDORSEMENT: SO ORDERED. (Signed by Judge Loretta A. Preska on 11/3/2025) (tg) (Entered: 11/03/2025) |
| 11/14/2025 | 53 | LETTER addressed to Judge Loretta A. Preska from Alan E. Schoenfeld dated November 14, 2025 re: Opposition to Respondent's Letter Motion. Document filed by Abdulrahman Farhane. (Attachments: # 1 Exhibit A - Declaration of David Patton, # 2 Exhibit B - Declaration of Ellen Yaroshefsky).(Schoenfeld, Alan) (Entered: 11/14/2025) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/16/2025 20:36:29 | | |
| **PACER Login:** | asmajaber | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:18-cv-11973-LAP |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

      -v.-                                :    <u>INDICTMENT</u>

TARIK IBN OSMAN SHAH,                       :    S2 05 Cr. 673 (LAP)
    a/k/a "Tarik Shah,"
    a/k/a "Tarik Jenkins,"             :
    a/k/a "Abu Musab,"
RAFIQ SABIR,                                :
    a/k/a "the Doctor,"
MAHMUD FARUQ BRENT,                         :
    a/k/a "Mahmud Al Mutazzim," and
ABDULRAHMAN FARHANE,                        :
    a/k/a "Abderr Farhan,"

                          :

          Defendants.            :

                          :

- - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: FEB 0 8 2006

<u>COUNT ONE</u>

The Grand Jury charges:

1.    From at least in or about October 2003, up to and including in or about May 2005, in the Southern District of New York and elsewhere, TARIK IBN OSMAN SHAH, a/k/a "Tarik Shah," a/k/a "Tarik Jenkins," a/k/a "Abu Musab," and RAFIQ SABIR, a/k/a "the Doctor," the defendants, and others known and unknown, unlawfully and knowingly combined, conspired, confederated and agreed together and with each other, to provide material support and resources, as that term is defined in Title 18, United States Code, Section 2339A, to a foreign terrorist organization, namely, al Qaeda, which was designated by the Secretary of State as a foreign terrorist organization on October 8, 1999, pursuant to

Section 219 of the Immigration and Nationality Act, and was redesignated as such on or about October 5, 2001, and October 2, 2003, to wit, TARIK IBN OSMAN SHAH, a/k/a "Tarik Shah," a/k/a "Tarik Jenkins," a/k/a "Abu Musab," agreed to provide, among other things, martial arts training for jihadists, and RAFIQ SABIR, a/k/a "the Doctor," agreed to provide, among other things, medical support to wounded jihadists.

(Title 18, United States Code, Section 2339B.)

<u>COUNT TWO</u>

The Grand Jury further charges:

2.    From at least in or about October 2003, up to and including in or about May 2005, in the Southern District of New York and elsewhere, TARIK IBN OSMAN SHAH, a/k/a "Tarik Shah," a/k/a "Tarik Jenkins," a/k/a "Abu Musab," and RAFIQ SABIR, a/k/a "the Doctor," the defendants, unlawfully and knowingly provided, and attempted to provide, material support and resources, as that term is defined in Title 18, United States Code, Section 2339A, to a foreign terrorist organization, namely, al Qaeda, which was designated by the Secretary of State as a foreign terrorist organization on October 8, 1999, pursuant to Section 219 of the Immigration and Nationality Act, and was redesignated as such on or about October 5, 2001, and October 2, 2003.

(Title 18, United States Code, Sections 2339B and 2.)

- 2 -

**A29**

<u>COUNT THREE</u>

The Grand Jury further charges:

3.    From at least in or about 2001, up to and including in or about May 2005, in the Southern District of New York and elsewhere, MAHMUD FARUQ BRENT, a/k/a "Mahmud Al Mutazzim," the defendant, and others known and unknown, unlawfully and knowingly combined, conspired, confederated and agreed together and with each other, to provide material support and resources, as that term is defined in Title 18, United States Code, Section 2339A, to a foreign terrorist organization, namely, Lashkar-e-Taiba, which was designated by the Secretary of State as a foreign terrorist organization on December 24, 2001, pursuant to Section 219 of the Immigration and Nationality Act, and was redesignated as such on or about December 23, 2003, to wit, MAHMUD FARUQ BRENT, a/k/a "Mahmud Al Mutazzim," with the assistance of others traveled to and attended a Lashkar-e-Taiba training camp in Pakistan.

(Title 18, United States Code, Section 2339B.)

<u>COUNT FOUR</u>

The Grand Jury further charges:

4.    From at least in or about 2001, up to and including in or about May 2005, in the Southern District of New York and elsewhere, MAHMUD FARUQ BRENT, a/k/a "Mahmud Al Mutazzim," the defendant, and others known and unknown,

- 3 -

**A30**

unlawfully and knowingly provided, and attempted to provide, material support and resources, as that term is defined in Title 18, United States Code, Section 2339A, to a foreign terrorist organization, namely, Lashkar-e-Taiba, which was designated by the Secretary of State as a foreign terrorist organization on December 24, 2001, pursuant to Section 219 of the Immigration and Nationality Act, and was redesignated as such on or about December 23, 2003.

(Title 18, United States Code, Sections 2339B and 2.)

### COUNT FIVE

The Grand Jury further charges:

5.    From at least in or about November 2001, up to and including in or about June 2005, in the Southern District of New York and elsewhere, TARIK IBN OSMAN SHAH, a/k/a "Tarik Shah," a/k/a "Tarik Jenkins," a/k/a "Abu Musab," and ABDULRAHMAN FARHANE, a/k/a "Abderr Farhan," the defendants, and others known and unknown, unlawfully and knowingly combined, conspired, confederated and agreed together and with each other, to violate Section 2339A of Title 18, United States Code.

6.    It was a part and an object of the conspiracy that TARIK IBN OSMAN SHAH, a/k/a "Tarik Shah," a/k/a "Tarik Jenkins," a/k/a "Abu Musab," and ABDULRAHMAN FARHANE, a/k/a "Abderr Farhan," the defendants, and others known and unknown, would provide material support and resources and conceal and disguise

- 4 -

**A31**

the nature, location, source, and ownership of material support and resources, knowing and intending that they would be used in preparation for, and in carrying out, a violation of Section 956 of Title 18, United States Code (conspiring to kill, kidnap, maim, and injure persons and to damage and destroy property in a foreign country), and in preparation for, and in carrying out, the concealment and an escape from the commission of such violation, to wit, TARIK IBN OSMAN SHAH, a/k/a "Tarik Shah," a/k/a "Tarik Jenkins," a/k/a "Abu Musab," and ABDULRAHMAN FARHANE, a/k/a "Abderr Farhan," agreed with each other to assist another individual to transfer money from the United States to locations overseas to purchase weapons and communications equipment for jihadists in Afghanistan and Chechnya, and attempted to hide the nature of that assistance from United States authorities.

(Title 18, United States Code, Section 2339A.)

<u>COUNT SIX</u>

The Grand Jury further charges:

7.    On or about June 9, 2005, in the Southern District of New York and elsewhere, ABDULRAHMAN FARHANE, a/k/a "Abderr Farhan," the defendant, in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit, an international and domestic terrorism investigation of, among other things, fundraising, financing, and recruitment,

- 5 -

**A32**

being conducted by the Federal Bureau of Investigation ("FBI"),
unlawfully, willfully, and knowingly falsified, concealed, and
covered up by trick, scheme, and device, material facts, and made
materially false, fictitious, and fraudulent statements and
representations, to wit, in response to questions from the FBI,
FARHANE falsely told a special agent of the FBI that (1) he had
never met in-person together with a confidential source of the
FBI acting in an undercover capacity ("CS-1") and Tarik Shah, a
target of a terrorism-related investigation; (2) he had given the
telephone number of Tarik Shah to CS-1 only because Shah ran a
"Western Union"-type business and could save CS-1 money on
overseas transfers; and (3) he had never had any conversations
with CS-1 and/or Tarik Shah regarding sending money or equipment
to jihadists overseas.

    (Title 18, United States Code, Section 1001(a)(2).)


_____
FOREPERSON

_____
MICHAEL J. GARCIA
United States Attorney

- 6 -

**A33**

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA**

– v –

TARIK IBN OSMAN SHAH,
    a/k/a "Tarik Shah,"
    a/k/a "Tarik Jenkins,"
    a/k/a "Abu Musab,"
RAFIQ SABIR,
    a/k/a "the Doctor,"
MAHMUD FARUQ BRENT,
    a/k/a "Mahmud Al Mutazzim," and
ABDULRAHMAN FARHANE,
    a/k/a "Abderr Farhan,"

**Defendants.**

## INDICTMENT

S2 05 Cr. 673 (LAP).

(Title 18, United States Code, Sections 2339A, 2339B, 1001, and 2.)

_____ MICHAEL J. GARCIA
        United States Attorney.

**A TRUE BILL**

_Betsy Bradley_ _____ Foreperson.

2/8/06
JD    Filed Indictment        Pitman
                                       U.S.M.J.

A34



23

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAR 16 2006

DISTRICT COURT

OF N.Y.

------------------------------x

UNITED STATES OF AMERICA

S2 05 CR 673 (LAP)

DOCKET NO.: ~~M-05-1797~~

-vs-

New York, New York
November 2, 2005

ABDULRAHMAN FARHANE,

Defendant

------------------------------x

TRANSCRIPT OF CRIMINAL CAUSE FOR DETENTION HEARING

BEFORE THE HONORABLE THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

A P P E A R A N C E S :

For the Government:            VICTOR HOU, ESQ.
                               U.S. Attorney's Office
                               One St. Andrew's Plaza
                               New York, NY  10007


For the Defendant:             MICHAEL O. HUESTON, ESQ.
                               350 Fifth Avenue, Suite 6110
                               New York, NY  10118


Audio Operator:                No Audio Operator

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Transcription Service
----------------------------------------------------------------
**KRISTIN M RUSIN**
5686 Sullivan Trail
Nazareth, PA 18064
kmrusin@earthlink.net

2

```
 1      (Tape on)
 2           THE CLERK:  -- versus Farhane.  Counsel, identify
 3  yourself for the record.
 4           MR. HOU:  Hi.  Victor Hou for the Government.
 5           THE COURT:  Hi, Mr. Hou.
 6           MR. HOU:  With me at counsel table is Special Agent
 7  Brian Murphy of the FBI.  Good afternoon, Your Honor.
 8           THE COURT:  Good afternoon.
 9           MR. HUESTON:  And Michael Hueston for the defendant,
10  Your Honor.
11           THE COURT:  Good afternoon, Mr. Hueston.
12           MR. HUESTON:  Good afternoon.
13           THE COURT:  This matter was sent down for a detention
14  hearing.
15           MR. HOU:  Yes, Your Honor.
16           THE COURT:  Okay.  Mr. Ho?
17           MR. HOU:  Just to give Your Honor some background to
18  the case, the defendant was arrested in connection with making
19  false statements in a domestic and international terrorism
20  investigation on October 26.  He was presented before
21  Magistrate Judge Maas.
22           At the time of the initial presentment, he was
23  represented by Henry Steinglass from the Criminal Justice Act
24  panel.  I have spoken with Mr. Steinglass.  My understanding is
25  that Mr. Hueston has been retained by the defendant, and I told
```

3

1   Mr. Steinglass that I would tell the Court that -- he would

2   have been here.  I told him it was probably okay that he not

3   be.  So I just wanted to make that clear on the record, that --

4           THE COURT:  So you have been retained, Mr. Hueston?

5           MR. HUESTON:  That's correct, Your Honor.

6           THE COURT:  Okay.  So let the record reflect that Mr.

7   Steinglass is relieved of representation.

8           MR. HOU:  Thank you, Your Honor.

9           At the time of the initial presentment, the

10  Government indicated that it would seek detention of the

11  defendant, and the matter was adjourned for -- until Monday for

12  bail hearing.  On Monday, the defendant was not able to be

13  produced due to a variety of issues that happened at the

14  facility where Mr. Farhane was held, and it was rescheduled for

15  today.

16          The Government seeks the detention of this defendant

17  on two grounds.  And I want to make clear at the outset that

18  while the Government has reviewed the pretrial services report,

19  obviously we're going to be giving more background than the

20  information that was directly in front of the pretrial services

21  officer that prepared that report, so we're going to differ in

22  our recommendation here.

23          We seek the defendant's detention on two grounds,

24  first, that he poses a risk of flight due to the unique

25  circumstances of his case, and secondly, that he poses a danger

A37

4

1  to the community. First off, Your Honor, we have to look at

2  the nature of this offense. The complaint details some of the

3  aspects of this offense in this case. Although it's charged as

4  a one thousand one case, at bottom there's something far more

5  serious happening here.

6        In December of 2001, as the complaint lays out in

7  fairly sufficient detail, an undercover or a confidential

8  source posing as someone from Yemen and interested in sending

9  money abroad to the mujahideen to help the fighters in

10  Afghanistan and elsewhere approached the defendant. And the

11  defendant, in a series of recordings that were made in December

12  2001 -- and recall the timing of this. This is while the World

13  Trade Centers are still smoldering.

14        The defendant agrees to help this confidential source

15  try to wire money to buy sophisticated weaponry as well as

16  communications information. For example, as set forth in the

17  complaint, on December 7th, 2001 the defendant agreed to help

18  send money overseas to support jihad -- holy war -- and to buy

19  wireless equipment and advanced weaponry.

20        On December 11th, 2001 the defendant was discussing

21  again with the confidential source about the freezing of assets

22  that happened after September 11th. In response to the

23  terrorist attacks, the Government had erected all these

24  different barriers to sending money abroad to terrorists

25  overseas. The defendant indicated how this was a war on Islam,

5

1   and he said that the Jews were responsible for it, and that he
2   would ask on behalf of this confidential source for help from
3   the brothers.
4           And that help came soon thereafter.  The very next
5   day, on December 12th, 2001, this defendant introduced someone
6   by the name of Tariq Shaw who has been subsequently indicted
7   along with his partner, Rafiq Sabir, for providing and
8   conspiring to provide material support to Al Qaida, introduces
9   Tariq Shaw back in December 2001 to the undercover -- or to the
10  confidential source.
11          During this conversation, the three of them are at
12  Mr. Farhane's store in Brooklyn, and they discuss jihad.  They
13  discuss how difficult the restrictions that have been imposed -
14  - and the different nations that are in Afghanistan -- how the
15  United Kingdom, France, and Spain have made it difficult to
16  transfer money overseas.
17          They also make a reference to a Spanish brother who
18  might be able to help, who had been overseas, had gone
19  presumably to a camp -- could help them transfer money, but Mr.
20  Farhane says, after Tariq Shaw raises the Spanish brother --
21  says you know what, that guy -- I don't know if I trust him,
22  let's not -- let's not use him for this sensitive topic.
23          On December 19th, 2001 Mr. Farhane explains to the
24  confidential source look, if you want to wire money overseas,
25  you've got to do it under ten thousand dollars, because there's

A39

6

1 too much scrutiny.  And he instructs him how to structure

2 payments overseas so that he'll reduce law enforcement

3 scrutiny.

4      Between December 20th, 2001 and March 2002 at least

5 five other conversations, either in person or over the

6 telephone, are taped between the defendant and the confidential

7 source discussing Tariq Shaw and the transfer of money

8 overseas.  In all, you have nine different recordings.  All of

9 these meetings and telephone calls are recorded, and you can

10 hear the defendant speaking on them.

11      As I alluded to earlier, Tariq Shaw and his partner,

12 Rafiq Sabir, who the defendant acknowledges in the tapes that

13 he knows, and later during his post-arrest he admits that he

14 knows, were arrested, as I indicated, for material support.

15 They're arrested for conspiring to provide material support on

16 May 28th, 2005.

17      After that arrest, the FBI approached Mr. Farhane on

18 June 9th, 2005 in connection with their investigation of

19 international terrorism.  They asked him questions.  They asked

20 very pointed questions about those prior events in 2001, about

21 the investigation.

22      And Mr. Farhane, after acknowledging that he

23 understood that lying to federal agents was a crime, that he

24 had every right not to speak with them -- he proceeded to make

25 a statement, and he falsely denied the substance of a lot of

7

1 those conversations, denied ever having discussions about the
2 transfer of money overseas to the mujahideen, to the fighters.
3 He said he never had those discussions.
4       He said I may have made the introduction from Shaw to
5 this guy from Yemen, but I think it was because he had a
6 Western Union business, and he wanted to transfer money, and I
7 knew Tariq Shaw to be someone who had a Western Union-type
8 business who could reduce the fees.
9       He doesn't admit anything about what we know happened
10 for sure, that they discussed very specifically how to wire
11 money overseas in order to buy equipment that was banned for a
12 variety of reasons to the mujahideen abroad in Afghanistan and
13 elsewhere.  He repeated those lies again in a conversation when
14 the agents returned back to their offices at 26 Federal Plaza
15 at the FBI office.
16       They called Mr. Farhane up and said listen, we want
17 to make sure we get it right, because we're preparing a report.
18 He repeated those lies.  That discussion is recorded.  So as an
19 initial matter, we have a very, very strong case.  In the
20 typical one thousand one context, you might have a he said/she
21 said situation, where it's the testimony of one agent versus
22 the testimony of a defendant, or what they said he said at the
23 time of the investigation.
24       That's not present here.  Of course, we will have the
25 testimony of the agents who were present during these

8

1    interviews.  But you also have the tapes.  All we have to do is

2    press play, and we have nine recordings of the defendant making

3    the statements he did about helping someone from Yemen to send

4    money overseas to help the jihad; introducing Tariq Shaw, now a

5    charged terrorist, to send money overseas.

6            We have it on tape, and we have his denials, his

7    false statements -- materially false statements, to the FBI

8    recorded.  So you just have to press play for what he said

9    then, what he says now, and we have more.  We have his post-

10   arrest admissions.

11           After waiving his constitution rights -- he executed

12   a written waiver of those constitution rights -- he admitted --

13   that's my voice on those tapes.  He heard certain of those

14   tapes and said that's my voice on that tape, yes, I was there

15   at that meeting, I guess I did meet with Tariq Shaw, I guess I

16   did meet with this -- and he still clings to the fantasy,

17   however, that, you know, I heard what he was saying but I

18   didn't necessarily agree to it, although I agreed to help him.

19           During the same post-arrest admissions that he made

20   after he was Mirandized, he admits that he supports jihad, and

21   he explains that he understands jihad to mean holy war, that

22   anywhere Muslims are being oppressed overseas, they should

23   fight back, including in Afghanistan, including in Iraq.

24   That's where American soldiers are.

25           It is unquestionably a strong case.  And the reason

A42

9

1  why the fact that it's a strong case makes Mr. Farhane a flight
2  risk here is because of the sentence.  Now, typically, one
3  thousand one carries with it a statutory maximum of five years.
4  But the Intelligence Reform and Terrorism Prevention Act
5  increased the statutory maximum to eight.
6         The guidelines themselves -- the commission recently,
7  as recently as October 19th, 2005, in recognition of how
8  serious false statements in a domestic and international
9  terrorism case are, recently revised the guidelines as of
10  October 24th, 2005 to reflect a twelve-point enhancement for
11  making false statements in connection with a terrorism
12  investigation.  And one only has to look to the amendment,
13  section 3A1.4.
14         What that means is there's very high guidelines now
15  for making false statements in connection with a terrorism
16  case, as much as a level thirty-two, if we are to just take the
17  guidelines -- of course, they're just advisory at this stage,
18  but there's an eight-year statutory maximum.
19         And without the mandatory nature of the guidelines,
20  the Government is liberated from seeking something within the
21  range.  Of course, he could go for eight years.  So in the face
22  of a very strong case, the defendant faces a very stiff
23  sentence, eight years.  It is a very strong case.
24         In addition, to the defendant's own admissions about
25  supporting jihad abroad wherever Muslims are being oppressed,

A43

1   in addition to making admissions about his voice being on the

2   tape and admitting that he was attending at those meetings,

3   there has been other evidence that's been uncovered.

4          In the course of the investigation, the defendant's

5   telephone records have been analyzed by the FBI, and I'm going

6   to proffer to the Court the variety of calls, the different

7   types of calls and the countries that he contacted using

8   different techniques and calling cards.

9       (Sound of crying baby)

10      (Pause in proceeding)

11         MR. HOU:  The FBI has analyzed his telephone, and he

12  has made numerous calls which show his significant connections

13  to foreign countries and individuals in foreign countries,

14  calls to Sudan, to Yemen, to Morocco, to Uzbekistan, Russia,

15  Spain, and elsewhere, where certain terrorist activities have

16  happened.

17         He has strong ties to Morocco, as evidenced even by

18  the pretrial services report.  He reported to the Pretrial

19  Services Agency that he has seven siblings in Morocco.  In

20  addition, the pretrial services report indicates that he has

21  extensive foreign travel.

22         Now, in the interview, it appears that the defendant

23  has claimed that since 1989 he's only had three or four trips

24  abroad, and he mentions that he went to Spain, possibly Saudi

25  Arabia, possibly Morocco.  A very quick search of different

11

1   records with the Bureau of Immigration and Customs Enforcement
2   reveals, in fact, he's taken numerous trips.  Possibly up to
3   eleven different trips internationally he's returned from
4   foreign countries back in the United States via JFK alone
5   between 1990 and 2001.
6           For example, there are flights coming in from -- a
7   KLM flight that came in presumably from Amsterdam on two
8   nineteen ninety-six.  He had flights on December 2nd from 1997.
9   It's unclear whether it was Bangladeshi Airlines or Royal Air
10  Maroc, but it is clear it was an international departure
11  arriving in New York.
12          He came back from Casablanca, from Morocco, on nine
13  fifteen ninety-eight, seven twenty-seven ninety-nine.  He got
14  back from the U.K. on three twenty-five 2000.  He came back
15  again from Morocco on May 1st, 2001.  This shows extensive
16  travel.
17          I'm not sure if it was just misreported or he
18  misrepresented the extent of his foreign travel, but this
19  evidence shows clearly that he travels extensively to many
20  different countries, that he has contacts telephonically with
21  people all over the world.
22          In addition, the Government would proffer at this
23  time that the defendant may have access to immigration
24  documentation or may himself be involved in immigration fraud.
25  For example, between 1995 and 2001, the defendant's address --

12

1  his residence -- his former residence -- and his bookstore --

2  he lived, I believe, above his bookstore -- was used by ten

3  different Moroccans who won entrance into this country under

4  the Diversity Visa Lottery program, which is a random system

5  whereby people apply for literally the right to apply for visas

6  to enter the United States.  It's all done randomly.

7        Ten different participants between 1995 and 2001 list

8  his address, and some of them even mention his name as their

9  contact person here in the United States.  Officials with the

10  immigration service as well as the State Department think it's

11  highly unusual, and they suspect fraud involved, with the idea

12  that ten people that win from Morocco all happen to know the

13  defendant.

14        What makes this connection so chilling is the fact

15  that the defendant also was listed as a contact address for an

16  individual by the name of Karim, K A R I M, Mejjati, who was an

17  Al Qaida operative, trained bomb-maker from Morocco, where Mr.

18  Farhane is from, who is suspected of having involvement -- this

19  is in publicly available documents -- for the Saudi Arabia

20  bombings that killed thirty people on May 2003, and, four days

21  later, for the Casablanca bombings, the worst terrorist attack

22  in the history of Morocco, which killed forty-five people, as

23  well as some connection to the bomb-makers who destroyed four

24  commuter trains in Spain as recently as March 11th, 2004.

25        Mejjati was killed, according to news sources, in the

13

1    Arabian peninsula.  He was killed during a police action by
2    Saudi Arabian authorities outside of Riyadh in approximately
3    April of 2005, this year.  It is chilling that the defendant's
4    address, again coincidentally, appears as the contact address
5    for when Mejjati entered this country.
6            But there's more.  He has connections to terrorists
7    in addition to al-Mejjati, in addition to Tariq Shaw.  That
8    connection, in addition to the meetings that we have recorded
9    has been solidified by other evidence, corroborated by other
10   evidence.  We searched Tariq Shaw's house incident to his
11   arrest on May 28th, 2005.  In his phone book on his cellular
12   phone we had all the numbers for Farhane.
13           Coincidentally, when we searched Mr. Farhane's house
14   pursuant to three separate search warrants -- we searched his
15   business as well.  All those search warrants were authorized by
16   Magistrate Judge Maas.  We found, in Arabic, Tariq Shaw's
17   numbers written there as well.  He also indicated that he knew
18   Rafiq Sabir, who's also been charged in the same indictment.
19           In addition, as the tapes themselves reveal, the
20   December 2001 tapes -- they talk about Spanish brothers and
21   other people who can help them move money abroad.
22           In addition, the search --
23           THE COURT:  Let me just stop you a minute.  I mean,
24   the complaint in this case is for making false statements to
25   the FBI.

A47

14

1           MR. HOU:  Correct, Judge.

2           THE COURT:  What does -- what's the relevance of all

3 this?

4           MR. HOU:  Well, this -- all of this -- relevance -- I

5 believe, Judge, shows that he has access -- and he poses a

6 danger to the community because of his connections to other

7 organizations.  The investigation is continuing.  We expect

8 that other charges may be filed in this case -- but shows the

9 danger that he poses to the community.  It's understated by the

10 complaint when we just say a one thousand one.

11           To get behind the nature of the offense and why he's

12 being charged with this, you have to, I think, look at the

13 whole picture.  And this whole picture, I think, shows that he

14 has access to immigration documents, help all over the world

15 from people that would help him flee from a certain conviction

16 in this case.  This is a fairly straightforward case with

17 recordings -- what he said then, what he says now, and his

18 post-arrest confessions.

19           I think all this makes a very compelling case that

20 he's not only a danger to the community but he poses a risk of

21 flight.

22           THE COURT:  But I -- this -- this offense doesn't

23 qualify as a danger to the community, does it, under the

24 statute?

25           MR. HOU:  Well, Judge, I think you can -- it's -- if

**A48**

15

1  --

2          MR. HUESTON:  Your Honor, it does not.  I mean, what

3  the Government's trying to do is basically the tail's going to

4  wag the dog.  They're going to mention Al Qaida, terrorism.

5  He's not charged with being involved with any of these

6  organizations.  It's simply a one thousand and one charge.  If

7  there's a change in circumstance, if they bring new complaints,

8  then obviously we'll look at that issue.

9          The key issue here --

10          THE COURT:  Well, let Mr. Ho finish, and then I'll

11  hear from you, Mr. Hueston.

12          MR. HOU:  Judge, I think that you can't evaluate his

13  -- the appropriateness of detention in this case without

14  considering all the facts.  These are the facts that we believe

15  also go to whether or not he will stand trial, whether he will

16  flee, use his numerous connections around the world to evade

17  justice, when it's very clear that the evidence is compelling

18  against him.

19          I'll sum up, Judge.  With respect to -- and again,

20  this all goes to -- a lot of this evidence goes to his intent

21  and his knowledge of this crime.  When he talks about oh, I

22  never would have talked about jihad, I never talked about

23  sending money overseas, it puts a lie to those claims when we

24  have videotapes that are seized from the defendant, from his

25  store and from his private office space, where he talks about

**A49**

16

1  the war that Islam and those associated with that religion must
2  fight against the Jews and against the Christians, that we
3  cannot co-exist and there must be jihad, there must be holy
4  war.
5         There are different tapes found in his possession
6  where he talks directly about the need to expel the invaders
7  from Iraq, talks about the different atrocities that are
8  happening there, and that it's the obligation of every Muslim
9  to go there to fight, and it even exhorts the listener -- what
10 are you doing sitting there, you have an obligation to do
11 something.
12        I think all of that puts a lie to the claims that he
13 made to the FBI agent at the time of his arrest that he never
14 would have supported jihad here, that he wouldn't have
15 encouraged anyone to do anything illegal, and I think it goes
16 all to the strength of the case as well as the risk of flight
17 that he poses.
18        For all those reasons, the Government believes that
19 he should be detained.
20        THE COURT:  All right.
21        Mr. Hueston?
22        MR. HUESTON:  Your Honor, let me first start by
23 saying that the Government acknowledges that pretrial services
24 has recommended bond be allowed for Mr. Farhane.  They had the
25 Government's complaint.  They have the charge.  And this is

**A50**

1  their recommendation.  And it's really -- you know, why?  The
2  two prongs here are dangerousness and flight.
3          Now, the Government has basically -- I mean, I hear
4  this from the Government, and they say terrorism, Al Qaida.
5  And these -- in this complaint, these actions supposedly
6  happened -- we have a confidential informant who's trying to
7  entrap or trying to do his best to get Mr. Farhane involved in
8  something in 2001, Your Honor, okay, and then a little bit in
9  2002.
10          That's it.  They're not claiming that Mr. Farhane
11  sent money to jihad, that he sent weapons to jihad.  It's a
12  conversation of someone who's trying desperately -- desperately
13  -- to get him to commit some act or join him in some conspiracy
14  so that they can come in and arrest him.  It never happens,
15  Your Honor.
16          In the interim, do you know what happens?  Mr.
17  Farhane has two children born in this country.  The little girl
18  you just saw left -- or she's back right now.  He has another
19  child.  Okay?  He has six children here.  He sends one to
20  Brooklyn Tech.  She's now, I think, at the top of her class.
21  Other two children -- to college.  And I would like to go
22  through all of them, because this is a family man.  And really,
23  that's the issue about his ties to this community.
24          He's an immigrant.  Yes.  He's a naturalized United
25  States citizen.  He came here first in 1989.  He had his family

18

1  come over in 1995.  Yes, he travels frequently back and forth
2  throughout his time, but that's what immigrants do.  But he's a
3  family man, first and foremost.
4        And, Your Honor, I think you have to look at the
5  assessment in terms of his ties.  His wife's here, Malika
6  [phonetic].  They've been married for twenty-five years, Your
7  Honor.  The Government says he's going to flee and abandon his
8  wife.  That's, in essence, what they're saying.
9        He's a United States citizen.  He's a taxpayer.  He
10 votes.  His youngest son is Ibrahim [phonetic].  He's almost
11 four years old, a naturalized U.S. citizen, Your Honor.  He has
12 Assiyah [phonetic], a six-year old girl who attends an Islamic
13 school on 53rd Street in Brooklyn.  His very arrest has
14 actually threatened that education.  He gives -- he sends his
15 kids to private school.
16        His fourteen-year-old daughter, who went to that very
17 same school, ends up going to Brooklyn Technical School.  And I
18 think any New Yorker knows that's one of the elite schools in
19 this area for public education.  And she's at the top of her
20 class.
21        You know, when the Government came in -- and they
22 took everything from his house.  They took her application to
23 the STEP program for NYU, took her laptop that she needs for
24 class, completely disrupted their family's life over, you know,
25 what this confidential informant's trying to do in 2001.

19

1   Your Honor, he has a son, Yusef, who's eighteen years
2   old who graduated from the High School of Telecommunications in
3   Brooklyn and attended -- he's attended college at City
4   Technical College.

5   He has a son who's twenty-two years old. You know,
6   being part of an Islamic community, where does he go to school?
7   He goes to St. Francis in Brooklyn, Your Honor. You know, this
8   is this, you know, creator of jihad and terrorism. His son is
9   going to a Catholic school -- who hates America.

10   I mean, these -- it's almost -- it's shocking that
11   these terms can be used so loosely without any proof of any
12   real action on the part of anyone, except someone trying to
13   entrap or ensnare someone in 2001. He stays here. Two
14   thousand and two, he stays here. Two thousand and three, 2004,
15   2005, and there's no action of him doing any acts to assist or
16   materially aid any terrorists.

17   Your Honor, also, he has a twenty-two-year-old
18   daughter who graduated from high school. And she's married and
19   has a three-year-old daughter, so he's a grandfather as well.
20   And that's Aspah [phonetic], who I'm talking about right now.

21   Your Honor, I want you to understand also about this
22   man -- at one point he was asked to be a surety for another
23   individual, and another court said you know what, he's such a
24   reliable person, we'll permit him to be a surety. He came
25   forward for an individual in his family.

1    Yes, he is from Morocco.  He does have ties.  But he

2  gave up his citizenship.  And it's not as if Morocco is a

3  country that's somehow like Iran or -- United States has

4  hostile relationships with.  They're a country that directly

5  cooperates, and -- you know, basically, extraditing individuals

6  if the United States requests or has a basis for doing so.

7    He has family ties there.  At seventeen years old, he

8  left school to work for his father's business.  He's the eldest

9  of all the children in his family.  He worked.  He helped set

10  up that business.  And then he came here with his wife to live

11  a better life with his family.

12    Now, he owns a bookstore that's next to the al-Farooq

13  Mosque.  That mosque has been under surveillance for, I don't

14  know, ten, twenty years, okay?  And no one's claimed that he's

15  done anything -- this is the first time.  He has no arrest

16  record, no history.

17    Now, the Government comes now with the statement

18  saying that he made statements about jihad.  I mean, I'm not

19  Muslim, Your Honor, but even I have a rudimentary understanding

20  of that religion.  I doesn't necessarily mean war against the

21  United States.  It -- you know, there's -- one term -- it means

22  improvement of self.  You know, it has a lot of different

23  meanings.

24    But the Government wants you just to interpret their

25  meaning of it.  It would have been different -- you know, it

1  would be great maybe if they could -- if they actually had the

2  agents -- he said to the agents I'm going to -- I hate America,

3  I want this country to blow up, I want to destroy this place,

4  which actually -- you know, obviously, that's incredible,

5  considering he has two children born after 9/11.  You know,

6  they're American citizens.  They're not Moroccans.

7          Your Honor, in terms of -- you know, the Government

8  is so far-reaching -- he has a bookstore.  And I say in these

9  bookstores you can find statements that people -- that Muslims

10  must take this action, Muslims must take that action.  I think

11  if we went down to Barnes & Noble -- if we went to any

12  bookstore -- Shakespeare Company over there by NYU -- we could

13  find a lot of books with subversive statements.

14          You know, we don't live in a place where there's

15  thought crime, at least I don't think so.  But that's, in

16  essence, what they're putting in front of this court, you know,

17  to intimidate people, to say you know what, you can't even

18  think about these things; if you run a bookstore, and we come

19  in, that -- we can prove that you're materially aiding someone.

20          Now, the Government brings up the fact that over the

21  time he's lived in the United States, twenty years, that maybe

22  ten people have used his residence, you know, as a contact.  I

23  mean, typically, that's my understanding of how things work.

24  As people come -- you know, they're all coming from Morocco.

25  You know, they say hey, you know, will you sponsor me.  You

22

1   know, INS does what they're supposed to do.  He's there as a
2   person sponsoring them.
3           And twenty years, ten people -- is that so irregular,
4   one every two years?  Well, the Government wants to make that
5   into a statement of his -- you know, Your Honor, look, he just
6   let them all through, let all those people come through, he's
7   a danger.  That is ridiculous.  He's a stable member of the
8   community.  And so people, of course, are going to go to him
9   because of that very fact.
10          Your Honor, also, they say they -- there's telephone
11  calls from his store to various parts of the world.  I mean, I
12  don't really know what to make of that.  They're not saying
13  that any of the phone calls are actually to Al Qaida, or Osama
14  bin Laden, or anyone of any importance.  But yet they're going
15  to say that that's a reason that he must be detained, that you
16  must not set bond for any reason.
17          And he never made -- he never made any of these
18  statements he's never made a long-distance phone call.  Last I
19  understood, that wasn't illegal either.
20          Your Honor, in terms of his -- his travels outside
21  the United States, I'd have to look at these documents.  My
22  understanding is that he's had limited, travel, you know, but
23  even what the Government is saying -- I mean, he has traveled,
24  but I have to look at exactly what they're putting forward.
25  But then again, the issue is is he going to flee this

1  community.  Is there no set of circumstances under a one

2  thousand one complaint that he's -- he's going to abandon all

3  those people back there -- abandon them, Your Honor, you know,

4  on this charge.  And that's ludicrous under any analysis.

5          And that's why the law says you have to have certain

6  -- presumptions come into play when Congress says they're

7  supposed to come into play.  Presumption does not exist in this

8  case.  A presumption of danger does not exist in this case.

9  But the Government wants you to put one in --

10         THE COURT:  What are you proposing as a bail package?

11         MR. HUESTON:  Your Honor, we have -- at this point,

12 he has two -- excuse me -- adult children and his wife who are

13 willing to be signatures.  We have two members from -- we have

14 two individuals -- the names are Rafiq Shahid, who's a retired

15 New York City Fire Department -- he's retired FDNY.  He's a

16 United States native.  He's willing to come forward and act as

17 a guarantor.

18         Nashid Mohammed, who's a plumber -- he's also willing

19 to come forward as well.  Your Honor, I may have misspoke.  I

20 think Mr. Shahid is -- he's a naturalized U.S. citizen.  I

21 think he may be from the Caribbean originally.  So these are

22 individuals -- we have five at the present.  We're willing to -

23 - obviously more to come forward and sign whatever's required.

24 He's willing to do home detention.  You name it, Your Honor.

25         But to remove him from his family based on these

24

1  charges -- we don't even -- it's like we don't care about
2  families anymore.  And so, Your Honor, look at his history.
3  There's nothing there showing any dangerousness.  He's going to
4  face these charges, Your Honor.  He's not going to leave his
5  family and abandon them.
6          THE COURT:  Thank you.
7          MR. HUESTON:  Thank you.
8          THE COURT:  Do you have anything else you want to
9  respond to?
10         MR. HOU:  Judge, just to be clear, I just wanted to
11 correct two things, very briefly.  Mr. Hueston was -- made much
12 about jihad and how -- although he's not familiar -- that
13 familiar with Islam, that jihad can have different -- different
14 meanings.  That's why I was very clear in my proffer that he
15 understood jihad to mean holy war in this instance.
16         We understand that jihad means -- can mean struggle,
17 but that's not what -- or inner struggle, but that's not what
18 he meant when he admitted to the FBI -- when he said that he
19 supported jihad overseas, the violent war that he envisions
20 between Islam and the western religions.
21         With respect to the phone calls, of course it's not
22 illegal, or the books that have subversive things to say.
23 We're not suggesting that that itself is evidence of guilt.  Of
24 course, that's nonsense.  Not in this country.  What we're
25 saying is that the phone calls abroad are just one more

1  indication for you, in addition to the travel, in addition to

2  the travel he failed to disclose to the pretrial services

3  report -- the report reads -- to be clear, he said that he's

4  only traveled three to four times to Morocco, maybe went to

5  Spain once, and once to Saudi Arabia.

6         The records that I'm proffering -- and defense

7  counsel is free to look at it -- show eleven trips.  And that's

8  the ones we know about using his I.D. to all these different

9  countries.  He's severely understated that.  He's got strong

10  ties.  And the telephone calls are evidence of these ties to

11  people around the world, which suggests a dangerous -- a flight

12  risk.

13         The Bail Reform Act asks you to consider, when you

14  consider releasing a defendant, the possible impact that his

15  release would have.  Even if we were to put the defendant on

16  home detention, the Government submits, respectfully, that he

17  still would pose a danger.  He still can help to incite others

18  to commit certain crimes.  There's strong evidence of that.

19         I understand that he has a family, and I understand

20  that he -- that his kids want to do well here.  Like every

21  parent, I'm sure he hopes for his kids to do well here.  But

22  the fact remains, and what I did not hear Mr. Hueston address,

23  is that this isn't the word of one confidential informant who,

24  quote, unquote, is trying to entrap another person.  This isn't

25  one of those one thousand one cases.

1    This is his words, his words alone, and his lies, his

2  repeated lies, to the FBI, again, recorded.  It's a very strong

3  case.  And nothing's been said about the fact that he's facing

4  a significant time -- eight years is serious.  When we talk

5  about one thousand one -- that's why I wanted to make sure we

6  understood the nature of the offense.  It's not just one lie to

7  a labor inspector about -- you know, about a technical

8  violation or something.

9    This is about terrorism.  It's about domestic

10 terrorism.  It's about people that have been charged with

11 material support.  And it's about his lies that are recorded

12 for all posterity.  And of course, we think we have a strong

13 case.

14    But in light of the terrorism enhancement that's been

15 approved by the sentencing commission, in light of the sentence

16 that's been permitted by the Terrorism Prevention Act, I think

17 that this is a case for detention, Your Honor.

18    THE COURT:  Look.  I've considered what you have to

19 say as well as the pretrial services report.  The points that

20 you make, Mr. Ho, certainly give one concern.  And they

21 strongly suggest that maybe there eventually will be other

22 charges against this defendant.

23    But right now, the charge that he's facing here is

24 making false statements to the FBI, albeit in the context of a

25 terrorist-related investigation.  That offense does not qualify

1  as a dangerous offense for purposes of the bail statute, so he

2  could not be detained based on danger under the statute.  The

3  issue is risk of flight.

4          It sounds like there is strong evidence on the making

5  of false statements.  On the other hand, I mean, we're dealing

6  with an individual who's U.S. citizen, who's been here for

7  twenty-five years.  His whole family's here.  He has no prior

8  criminal history.  It would be a very unusual case to detain

9  somebody on a charge like this.

10         You know, if there's a more serious charge coming

11  down the road, that's a very different story.  I don't mean to

12  minimize this charge, but it's clearly not one that can be

13  viewed as one of danger under the statute, in any event.

14         So I'm going to set the following conditions for the

15  defendant's release.  [Pause]  The defendant's going to be

16  released on a hundred fifty thousand dollar personal

17  recognizance bond.  It's to be co-signed by five financially

18  responsible people.  It's to be secured by five thousand

19  dollars in cash.

20         Your travel is restricted to the Southern and Eastern

21  Districts of New York.  You're to surrender any travel

22  documents that you have.  You're not to apply for any

23  additional travel documents while these charges are pending.

24  And you're going to be placed on strict pretrial supervision.

25         You obviously have an obligation to come back to

1  court when you're required to be here.  If you fail to do that,

2  people are going to be responsible for the bond, and you're

3  going to face additional charges.

4         Are there any questions about the bail conditions?

5         MR. HUESTON:  Not from the defendant, Your Honor.

6         MR. HOU:  Your Honor, I -- obviously we're going to

7  have different views on the appropriateness of bail, and we

8  respect that.  But, Your Honor, the defendant has already

9  indicated that he'd be willing to accept home detention with

10  electronic monitoring.

11        At a minimum, Your Honor, to protect the community,

12  the Government would urge Your Honor to impose that as a

13  condition in addition to the strict pretrial services reporting

14  requirement.

15        He's already consented to that, Judge, and it's -- I

16  think it's vital that we be able to keep, you know, tabs on the

17  defendant and that he's not out there committing what we

18  believe might be additional crimes.

19        MR. HUESTON:  Your Honor, there's one issue with

20  respect to that.  He's a -- as far as the minors and his wife,

21  he's the sole breadwinner.  I'd like this to have a condition

22  that he can work.

23        THE COURT:  Where does he live in relationship to his

24  store?

25      (Off the record discussion between Defendant and Counsel)

1    MR. HUESTON:  Twenty blocks, Your Honor.  So that

2  would be the condition, that he be permitted to work during

3  normal hours.

4    MR. HOU:  I just want to raise this issue, Judge.

5  Obviously, I'm sympathetic to the fact that he's working and

6  supports his family.  I do want to make the point that the

7  conduct which happened in this case and is charged in the

8  indictment -- excuse me, in the complaint is -- all that

9  occurred at the store.

10    THE COURT:  Is what?

11    MR. HOU:  Occurred at his store, his prior bookstore.

12  This is a meeting place, so to speak, for a lot of different

13  individuals that come in.  These are the types of contacts

14  which --

15    THE COURT:  I -- I --

16    MR. HOU:  -- are really what --

17    THE COURT:  -- I understand, Mr. Ho, but --

18    MR. HOU:  -- what concerns --

19    THE COURT:  -- he's not charged with providing

20  material support to terrorists.  If he were, your arguments

21  would have a much greater force.

22    MR. HOU:  I understand what you're saying, Your

23  Honor.  In addition, I just want to put on the record and have

24  a representation from counsel that in response to Your Honor's

25  requirement that he turn over his passport and any travel

1   documents, we are not -- despite our various search warrants,

2   are not in possession of his passport, to my understanding, and

3   I would like a representation --

4           THE COURT:  Oh, he's going --

5           MR. HOU:  -- from counsel --

6           THE COURT:  -- to have to turn it over.

7           MR. HOU:  -- that I'm going to -- yeah, have it

8   turned over prior to his release, obviously.

9           THE COURT:  Absolutely.

10          MR. HUESTON:  Your Honor, we'll turn that over.

11          THE COURT:  What hours is the bookstore open?

12          THE DEFENDANT:  I open nine and I close nine.

13          THE COURT:  Nine to nine, okay.

14     (Pause in proceeding)

15          THE COURT:  Could I see a pretrial representative a

16   minute?

17     (Tape off/tape on)

18          THE COURT:  Does Mr. Farhane's store have a

19   telephone?

20     (Off the record discussion between Defendant and Counsel)

21          MR. HUESTON:  Yes, it does, Your Honor.

22          THE COURT:  Okay.  So what I'm going to require is --

23   Mr. Farhane is going to be permitted to work at his bookstore

24   between nine a.m. and nine p.m.  He's going to be subject to

25   electronic monitoring, so when he is not at the bookstore --

1  you're to be at home.  And when you're not at home, you're to

2  be at the bookstore.  And the monitoring is going to be in

3  place at both locations.

4          MR. HUESTON:  That's fine, Your Honor.

5          THE COURT:  Any other questions?  Okay.

6          MR. HOU:  Ahh --

7          THE COURT:  Mr. Ho?

8          MR. HOU:  Your Honor, I would just ask that these

9  conditions be satisfied before the defendant is released.  And

10  second, --

11          THE COURT:  No question.

12          MR. HOU:  -- that the -- just for the record, my

13  understanding with conferring with Mr. Hueston is that the

14  defendant has waived to the thirtieth day.

15          THE COURT:  Oh.

16          MR. HUESTON:  That's correct, Your Honor.

17          THE COURT:  So when was --

18          MR. HOU:  Just to put it on the record, because

19  originally it was just set down as a control date.

20          THE COURT:  When was he originally arrested?

21          MR. HOU:  The arrest was on the 26th, Your Honor, so

22  --

23          THE COURT:  It's probably going to be the 28th of

24  November.

25      (Off the record discussion between Court and Clerk)

32

```
1        THE COURT:  That will be November 28th.  Okay.

2        MR. HOU:  Thank you, Your Honor.

3        MR. HUESTON:  Thank you, Your Honor.

4        THE COURT:  You're welcome.

5                    *    *    *    *    *

6        I, KRISTIN M. RUSIN, court approved transcriptionist, certify that the
7   foregoing is a correct transcript from the official electronic sound recording of the proceedings
8   in the above-entitled matter.
9        Transcript is certified original only if signed in green ink.

10         2/4/06
```

**A66**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA        :

      -v.-        :    <u>INFORMATION</u>

ABDULRAHMAN FARHANE,        :    S3 05 Cr. 673 (LAP)
    a/k/a "Abderr Farhan,"
                              :

          Defendant.        :

- - - - - - - - - - - - - - - - - - - x

USDC SONY
DOCUMENT
ELECTRONICALLY FILED
NOV 0 9 2006

<u>COUNT ONE</u>

The United States Attorney charges:

      1.   From at least in or about November 2001, up to and
including in or about June 2005, in the Southern District of New
York and elsewhere, ABDULRAHMAN FARHANE, a/k/a "Abderr Farhan," the
defendant, and others known and unknown, unlawfully and knowingly
combined, conspired, confederated and agreed together and with each
other, to violate Section 1956(a)(2)(A) of Title 18, United States
Code.

      2.   It was a part and an object of the conspiracy that
ABDULRAHMAN FARHANE, a/k/a "Abderr Farhan," the defendant, and
others known and unknown, would transport, transmit and transfer,
and attempt to transport, transmit and transfer, a monetary
instrument and funds from a place in the United States to and
through a place outside the United States with the intent to
promote the carrying on of specified unlawful activity, to wit,
ABDULRAHMAN FARHANE, a/k/a "Abderr Farhan," agreed with others to

assist another individual to transfer money from the United States to locations overseas to purchase weapons and communications equipment for jihadists in Afghanistan and Chechnya.

(Title 18, United States Code, Section 371.)

COUNT TWO

The United States Attorney further charges:

3.    On or about June 9, 2005, in the Southern District of New York and elsewhere, ABDULRAHMAN FARHANE, a/k/a "Abderr Farhan," the defendant, in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit, an international and domestic terrorism investigation of, among other things, fundraising, financing, and recruitment, being conducted by the Federal Bureau of Investigation ("FBI"), unlawfully, willfully, and knowingly falsified, concealed, and covered up by trick, scheme, and device, material facts, and made materially false, fictitious, and fraudulent statements and representations, to wit, in response to questions from the FBI, FARHANE falsely told a special agent of the FBI that (1) he had never met in-person with a confidential source of the FBI acting in an undercover capacity ("CS-1"), and one of FARHANE's co-conspirators ("CC-1"), a target of a terrorism-related investigation; (2) he had given the telephone number of CC-1 to CS-1 only because CC-1 ran a "Western

- 2 -

A68

Union"-type business and could save CS-1 money on overseas transfers; and (3) he had never had any conversations with CS-1 and/or CC-1 regarding sending money or equipment to jihadists overseas.

(Title 18, United States Code, Section 1001(a)(2).)


MICHAEL J. GARCIA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA**

- v -

**ABDULRAHMAN FARHANE,**

**Defendant.**

## INFORMATION

S3 02 Cr. 673 (LAP)

18 U.S.C. § 371, 18 U.S.C. § 1001

MICHAEL J. GARCIA
United States Attorney.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA          :

v.                                :

ABDELRAHMAN FARHANE,              :          S3 05 Cr. 673 (LAP)
    a/k/a "Abderr Farhan,"
                           :

         Defendant.

                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

        The above-named defendant, who is accused of violating Title 18, United States

Code, Sections 371 and 1001, being advised of the nature of the charge and of his rights, hereby

waives, in open Court, prosecution by indictment and consents that the proceeding may be by

information instead of by indictment.



                                  Defendant

                                  Witness

                                  Counsel for Defendant

Date:  New York, New York
       November 9, 2006

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: NOV 1 4 2006

0202

**A71**

JUDGE PRESKA

18 CV 11973

MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District | Southern District of New York |
|---|---|---|
| Name (under which you were convicted): Abderrahmane Farhane | | Docket or Case No.: 05-cr-673 |
| Place of Confinement: Supervised release | | Prisoner No.: |
| UNITED STATES OF AMERICA | | Movant (include name under which you were convicted) |
| v. | | Abderrahmane Farhane |

## MOTION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   Southern District of New York
   500 Pearl Street
   New York, NY 10007

   (b) Criminal docket or case number (if you know): 05-cr-673

2. (a) Date of the judgment of conviction (if you know): 4/23/2007

   (b) Date of sentencing: 4/23/2007

3. Length of sentence: 156 months followed by 2 years supervised release

4. Nature of crime (all counts):

   Mr Farhane plead guilty on November 9, 2006 to one count of 18 U.S.C. § 1001(a)(2) and one count of 18 U.S.C. § 371.

5. (a) What was your plea? (Check one)

   (1)  Not guilty ❑      (2)  Guilty ✓      (3)  Nolo contendere (no contest) ❑

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?

6. If you went to trial, what kind of trial did you have? (Check one)      Jury ❑      Judge only ❑

**A72**

Page 3

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?        Yes ☐    No ☐

8.  Did you appeal from the judgment of conviction?        Yes ☑    No ☐

9.  If you did appeal, answer the following:

    (a) Name of court:   Second Circuit Court of Appeals

    (b) Docket or case number (if you know):   07-1968-cr

    (c) Result:   Judgment affirmed

    (d) Date of result (if you know):   2/4/2011

    (e) Citation to the case (if you know):   643 F. 3d 127, 132 n.2 (2d Cir. 2011)

    (f) Grounds raised:

    Appellate counsel filed a brief pursuant to Anders v. California.

    (g) Did you file a petition for certiorari in the United States Supreme Court?        Yes ☐    No ☑

        If "Yes," answer the following:

        (1) Docket or case number (if you know):

        (2) Result:

        (3) Date of result (if you know):

        (4) Citation to the case (if you know):

        (5) Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

        Yes ☐    No ☑

11. If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court:

        (2) Docket or case number (if you know):

        (3) Date of filing (if you know):

Page 4

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?     Yes ❏   No ❏

(7) Result:

(8) Date of result (if you know):

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?     Yes ❏   No ❏

(7) Result:

(8) Date of result (if you know):

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:     Yes ❏   No ❏

(2) Second petition:     Yes ❏   No ❏

Page 5

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

**GROUND ONE:**

Ineffective assistance of counsel - denaturalization

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Mr. Farhane is a naturalized U.S. citizen. He applied for citizenship in 2001, and became a citizen in April 2002. After he was arrested in 2005, he informed his defense counsel, Michael Hueston, Esq., that he was a naturalized citizen. Mr. Hueston advised Mr. Farhane to accept a guilty plea in which he admitted to conduct occurring before becoming a U.S. citizen in 2002. Mr. Hueston never advised Mr. Farhane that, as a result of his guilty plea, he could face denaturalization (loss of citizenship). Mr. Hueston never discussed with Mr. Farhane the possibility of negotiating any alternative plea which would avoid the denaturalization consequence. Mr. Farhane had told Mr. Hueston that it was important for him to remain with his wife and their six children, five of whom are U.S. citizens, here in the United States. If Mr. Hueston had advised Mr. Farhane that he could lose his citizenship as a result of the guilty plea, Mr. Farhane would have rejected the plea deal and he would have insisted on going to trial.
In July 2018, shortly after serving over ten years in federal facilities and securing early release based on his flawless conduct in custody, Mr. Farhane received notice that the government was seeking to denaturalize him. This was the first time he became aware that the guilty plea exposed him to the consequence of losing his citizenship. The government has filed the transcript of his guilty plea colloquy as an exhibit in the denaturalization case that it has now initiated in the EDNY.

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐    No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

Mr. Farhane did not become aware of this issue until July 2018. Appellate counsel filed an Anders brief in February 2008.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐    No ☑

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Page 6

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


(3) Did you receive a hearing on your motion, petition, or application?

 Yes ❑    No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

 Yes ❑    No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

 Yes ❑    No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or
raise this issue:




**GROUND TWO:**

 Ineffective assistance of counsel - immigration consequences.

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

 Prior to Mr. Farhane's naturalization as a U.S. citizen in 2002, he was a lawful permanent resident and
a citizen of Morocco. In 2006, his defense counsel, Mr. Hueston, advised Mr. Farhane, a U.S. citizen,
to take a guilty plea wherein he admitted to conduct occurring while he was still a lawful permanent
resident. Mr. Hueston did not advise Mr. Farhane that he could lose his citizenship and be deported
from the United States as a result of his guilty plea. Mr. Hueston did not discuss any possible
immigration consequences with Mr. Farhane. Mr. Hueston failed to negotiate an alternate plea which
would have avoided these severe immigration consequences. Mr. Hueston did not discuss with Mr.
Farhane the possibility of negotiating a plea which would avoid deportation once he lost his citizenship.
If Mr. Hueston had advised Mr. Farhane that he could be deported as a result of the guilty plea, Mr.
Farhane would have rejected the plea deal and he would have insisted on going to trial.
In July 2018, Mr. Farhane became aware for the first time that the government was seeking his
denaturalization and deportation, when the government mailed him notice of its intent to file a
denaturalization complaint. If Mr. Farhane loses his citizenship and reverts to his lawful permanent
resident status, the government will place him in removal proceedings based on the guilty plea at issue
here and he will most likely be deported.

**A76**

(b) **Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑   No ☑

    (2) If you did not raise this issue in your direct appeal, explain why:

        Mr. Farhane did not become aware of this issue until July 2018. Appellate counsel filed an Anders brief in February 2008.

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑   No ☑

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ❑   No ❑

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ❑   No ❑

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ❑   No ❑

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

Page 8

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND THREE:**

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground Three:**

  (1) If you appealed from the judgment of conviction, did you raise this issue?

  Yes ❑    No ❑

  (2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

  (1) Did you raise this issue in any post-conviction motion, petition, or application?

  Yes ❑    No ❑

  (2) If your answer to Question (c)(1) is "Yes," state:

  Type of motion or petition:

  Name and location of the court where the motion or petition was filed:

  Docket or case number (if you know):

  Date of the court's decision:

**A78**

Page 9

Result (attach a copy of the court's opinion or order, if available):


(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❑   No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑   No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑   No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:




**GROUND FOUR**:

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

**A79**

Page 10

(b) **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❏  No ❏

    (2) If you did not raise this issue in your direct appeal, explain why:


(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❏  No ❏

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:


    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):


    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ❏  No ❏

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ❏  No ❏

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ❏  No ❏

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:


    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

**A80**

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

Mr. Farhane has not presented these ineffective assistance of counsel claims previously. He did not become aware until July 2018 of the denaturalization and immigration consequences of his guilty plea.

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?     Yes ☐   No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:

Michael Hueston - 350 Fifth Avenue, Suite 4810 New York, NY 10118 (212) 643-2900

(b) At arraignment and plea:

Michael Hueston - 350 Fifth Avenue, Suite 4810 New York, NY 10118 (212) 643-2900

(c) At trial:

(d) At sentencing:

Michael Hueston - 350 Fifth Avenue, Suite 4810 New York, NY 10118 (212) 643-2900

**A81**

Page 12

(e) On appeal:

  Peter Langrock; Wanda Otero-Ziegler - 111 S. Pleasant Street PO Drawer 351 Middlebury, VT

(f) In any post-conviction proceeding:


(g) On appeal from any ruling against you in a post-conviction proceeding:


16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?       Yes ☑ No ☐

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?       Yes ☐ No ☑

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future:


(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?    Yes ☐   No ☐

**A82**

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you

    must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not

    bar your motion.*

    28 U.S.C. § 2255(f)(4) applies.

    During plea negotiations, Mr. Hueston never advised Mr. Farhane that he could lose his
    citizenship and be deported from the United States if he agreed to plead guilty. Mr. Farhane was
    completely unaware of these consequences. Mr. Farhane relied on Mr. Hueston, his defense
    attorney, for complete and accurate advice so that Mr. Farhane could make a fully informed
    decision about taking the plea deal on offer instead of going to trial or exploring other plea
    arrangements. Appellate counsel similarly never advised Mr. Farhane of these severe
    consequences.

    July 2018 is when Mr. Farhane first discovered that the government intended to seek his
    denaturalization and deportation. The government's letter to Mr. Farhane is dated July 23, 2018.
    This was the first time Mr. Farhane discovered that there were any such consequences to his
    guilty plea, entered in 2006. None of Mr. Farhane's prior attorneys, including Mr. Hueston, ever
    discussed these consequences with Mr. Farhane. Indeed, no such denaturalization or
    deportation consequences were discussed at Mr. Farhane's plea colloquy or at his sentencing.

    Mr. Farhane's motion to vacate is timely within the meaning of 28 U.S.C. § 2255(f)(4) as it is
    brought within one year of July 23, 2018, "the date on which the facts supporting the claim or
    claims presented could have been discovered through the exercise of due diligence." See Wims
    v. United States, 225 F. 3d 186, 190 (2d Cir. 2000) ("Section 2255(4) is not a tolling provision ….
    Rather, it resets the limitations period's beginning date, moving it from the time when the
    conviction became final, see § 2255(1), to the later date on which the particular claim accrued.").

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C.
§ 2255, paragraph 6, provides in part that:
    A one-year period of limitation shall apply to a motion under this section. The limitation period
    shall run from the latest of —
        (1) the date on which the judgment of conviction became final;
        (2) the date on which the impediment to making a motion created by governmental action in
        violation of the Constitution or laws of the United States is removed, if the movant was
        prevented from making such a motion by such governmental action;
        (3) the date on which the right asserted was initially recognized by the Supreme Court, if
        that right has been newly recognized by the Supreme Court and made retroactively
        applicable to cases on collateral review; or
        (4) the date on which the facts supporting the claim or claims presented could have been
        discovered through the exercise of due diligence.

Page 14

Therefore, movant asks that the Court grant the following relief:

  Vacate the guilty plea and conviction, order a hearing,

or any other relief to which movant may be entitled.

12/10/2018        _____
                  Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _____ (month, date, year).

Executed (signed) on _____ (date).

                  _____
                  Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

  My office represents Mr. Farhane with respect to this 28 U.S.C. § 2255 motion.

A84

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> ABDERRAHMANE FARHANE, <br> *Defendant*. | Case No. 05-CR-673-4 (LAP) |
| ABDERRAHMANE FARHANE, <br> *Petitioner*, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br> *Respondent*. | Case No. 18-CV-11973 (LAP) |

### AFFIDAVIT IN SUPPORT OF MOTION TO VACATE
### PLEA AND SENTENCE PURSUANT TO 28 U.S.C. § 2255

Abderrahmane Farhane, being duly sworn, deposes and says:

1.    I am the defendant in the above-captioned criminal case.

2.    I submit this affidavit in support of my motion to vacate my plea and sentence pursuant to 28 U.S.C. § 2255.

3.    I was born in Morocco.

4.    I first came to the United States in 1989 on a tourist visa. I visited again in 1990 and in 1992. During those visits, I became interested in immigrating legally to the United States with my family.

5.    I wanted my children to grow up in this country so that they could benefit from the highest standards of education. I never attended university, and I wanted my children to receive

**A85**

more educational opportunities than I had. On my visits to the United States, I spent time with other Moroccans who were university students here. Based on their experiences, I believed that my children would have very good educational and life opportunities in the United States.

6.     In 1995, my wife, my four children, and I received immigrant visas from the U.S. Consulate in Morocco as part of the diversity immigrant visa lottery.

7.     We lawfully entered the United States in 1995 and settled in Brooklyn, New York. My two youngest children were born in the United States following our arrival.

8.     While living in Brooklyn, I owned and operated businesses on Atlantic Avenue at different times from 1995 until my arrest in 2006. These were stores that sold books, oils, soaps, clothing, and other assorted items.

9.     For several years, my family and I lived in an apartment directly above one of my stores. Our lives were very integrated into our neighborhood and community.

10.    While my children were growing up, I supported them in their education. My goal was for all of them to attend college.

11.    My two oldest children, Asmaa and Salah, graduated from New York City public high school. Salah attended St. Francis College on a scholarship. I paid for his books and for extra classes that the scholarship did not cover. After graduating, he applied to join the New York City Police Department.

12.    My younger children attended private Islamic school before high school. I paid tuition for them to attend.

13.    In 2001, I applied for United States citizenship. I received assistance in filling out the application form from Amana Printing. This was a printing shop in Brooklyn and an individual there who was not a lawyer helped me.

2

**A86**

14.     I applied for citizenship because I felt a genuine connection with the United States and wanted to build the rest of my life here with my family. I wanted to have the rights of a U.S. citizen. I wanted to stay here securely, with my wife and children.

15.     In April 2002, I was granted U.S. citizenship. I became a naturalized United States citizen in a formal ceremony on April 19, 2002.

16.     On the date of my naturalization, two of my children, Youseff and Elkhansaa, also became U.S. citizens. This was possible because they were not yet eighteen years old and I, their parent, became a naturalized U.S. citizen.

17.     After I became a U.S. citizen, I voted in elections. Because I made my life here with my family, I knew it was important for me to vote.

18.     I also applied for a U.S. passport. I used my U.S. passport to make multiple visits back to Morocco. I also traveled to Spain, to Portugal, to Holland, and to Saudi Arabia for Hajj, a religious pilgrimage. Every time I traveled out of the country, I used my U.S. passport. With it, I was free to travel wherever I wished. Everywhere I went, including Morocco, I felt that I was treated with decency and respect because I was a U.S. citizen.

19.     Prior to October 2005, I had never been arrested, and I had never spent time in a prison or jail.

20.     In October 2005, I was arrested and charged with making false statements to federal law enforcement agents. I was detained at the Metropolitan Detention Center (MDC) in Brooklyn. I was later released on bail in November 2005.

21.     With my family's help, I hired attorney Michael Hueston in October 2005 and he represented me through my plea and sentencing.

**A87**

22.    Every week or two, I went to Mr. Hueston's office to meet with him. My son accompanied me and would sometimes serve as an interpreter during these meetings.

23.    In February 2006, I was arrested for a second time. I was again held at MDC in Brooklyn, and then I was transferred to the Metropolitan Correctional Center (MCC) in Manhattan. From that time until I entered my guilty plea in November 2006, I was detained mostly at MCC, in solitary confinement.

24.    Mr. Hueston visited to meet with me approximately every two weeks.

25.    To communicate with Mr. Hueston, I waited for him to make arrangements to visit or call me because I was in a restricted unit. I was allowed to make outgoing, monitored calls for a total of one hour each month, and I used that time to communicate with my family. Sometimes my family would ask Mr. Hueston to visit or call me, and I would hear from him that way.

26.    My understanding is that Mr. Hueston applied to the Court for an Arabic-language interpreter. I believe that application was approved. Sometimes Mr. Hueston visited me in jail at MCC with the interpreter. Other times he visited by himself.

27.    Mr. Hueston told me that I had three options in response to the criminal charges: I could cooperate with the government; I could plead guilty; or I could go to trial.

28.    I told Mr. Hueston that I wanted to go to trial and that I did not want to plead guilty. Mr. Hueston told me that it was not a good idea to go to trial. He told me that a jury might be more likely to convict me because I was Muslim and did not speak English like a native speaker.

29.    I told Mr. Hueston that my priority was to have the shortest separation from my family. My wife and all six of my children were financially dependent on me at that time. I wanted to return to them as soon as possible to resume my life with them in Brooklyn.

4

**A88**

30.    Mr. Hueston told me that he would negotiate the best possible deal in order to minimize my sentence. He advised me that refusing to plead guilty could result in a sentence as long as thirty years.

31.    Despite my wish to go to trial and my reluctance to take a plea bargain, I decided to follow Mr. Hueston's advice. As a businessman, I thought about the plea deal in business terms: I had to take a smaller loss to avoid the risk of a bigger loss, with far more years spent in prison.

32.    Mr. Hueston never advised me that I could lose my U.S. citizenship as a consequence of pleading guilty, or face other consequences for my immigration status.

33.    Mr. Hueston never advised me that I could be deported from this country as a consequence of pleading guilty.

34.    Mr. Hueston never advised me that my children, Youseff and Elkhansaa, could lose their U.S. citizenship as a consequence of my guilty plea.

35.    Nobody—including Mr. Hueston, the Court, or the lawyers for the government— explained to me that pleading guilty could result in the loss of my U.S. citizenship and other immigration consequences at any time between my arrest and my guilty plea.

36.    At no time did Mr. Hueston and I discuss the risk that the proceedings against me could affect my citizenship status or my immigration status, or the citizenship status of any member of my family.

37.    I was not aware of any effort by Mr. Hueston, in negotiating a plea agreement on my behalf, to reach an agreement with the government that would have protected me—or my children—against the loss of U.S. citizenship and my deportation.

38.    At all times during Mr. Hueston's representation of me, my priority was to minimize the length of my separation from my family and the harmful impact on the lives of my

5

**A89**

wife and children.  A plea deal that opened the door to loss of citizenship and deportation, and that exposed two of my children to a similar risk, was contrary to my priorities.

39.     I would not have entered a guilty plea if Mr. Hueston had told me that I could lose my U.S. citizenship as a result.

40.     I would not have entered a guilty plea if Mr. Hueston had told me that I could face deportation as a result.

41.     I would not have entered a guilty plea if Mr. Hueston had told me that my children could lose their U.S. citizenship as a result.

42.     If I had been aware of these consequences of my plea, I would have asked Mr. Hueston to negotiate a different agreement that protected me and my family from these consequences.  If that was not an option, I would have refused to plead guilty and insisted on proceeding to trial.  I would have chosen to go to trial even if I faced more years in prison as a result.

43.     In November 2006, acting on Mr. Hueston's advice, I pled guilty to both counts with which I had been charged.

44.     In April 2007, I was sentenced to thirteen years in prison and two years of supervised release.  I served my sentence until May 2017, when I was released.  I became eligible for early release because I had a record of good behavior while I served my sentence.

45.     I finally returned home to my family in Brooklyn and began to serve my period of supervised release.

46.     In 2017, my sons Youseff and Mohamed Salah opened a new store, on Fulton Street in Brooklyn, which sells health and beauty products.  After my release in May 2017, I began to help my sons with this store.

6

**A90**

47.    I again exercised my right to vote, consistent with the rules of supervised release.

48.    In July 2018, I received a letter from the government notifying me of a denaturalization action against me. Until that time, I was not aware that I could face the loss of citizenship and deportation as a result of the guilty plea I entered in 2006.

49.    On the basis of the above facts, I respectfully submit that I am entitled to the relief requested in this petition.

50.    The contents of this affidavit were translated for me from the English language to the Arabic language by a competent person prior to my execution of this affidavit, and its contents are true and accurate.

Dated:    February 1, 2019

Brooklyn, NY

ABDERRAHMANE FARHANE

State of New York    County of _Kings_

Before me, the undersigned notary public, this day, personally, appeared ABDERRAHMANE FARHANE to me known, who being duly sworn according to law, deposed the above.

_____ (Signature of Affiant)

Subscribed and sworn to before me this ____1____ day of February, 2019.

_____ Notary Public

My Commission Expires: _____
Galina Feldman
Notary Public, State of New York
No. 01FE6051186
Qualified in Kings County
Commission Expires November 20, 2022

7

**A91**

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, New York 10278*

January 27, 2025

**BY ECF**
The Honorable Loretta A. Preska
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

> Re:    **United States v. Farhane, 05 Cr. 673 (LAP)**
>        **United States v. Farhane, 18 Civ. 11973 (LAP)**

Dear Judge Preska:

The Government respectfully submits this joint letter from the parties proposing a schedule in this matter.

The parties will continue to seek to narrow the issues prior to motion practice. The parties do not, however, anticipate reaching complete agreement regarding the extent to which the Petitioner has waived the attorney-client privilege through his ineffective assistance claim. Because the scope of waiver will affect the information that predecessor counsel will be compelled to disclose to the parties—and, consequently, the parties' positions with respect to the need to develop evidence, seek any discovery, and engage in any further litigation—the parties propose that this issue be litigated first, on the following briefing schedule:

| | |
|---|---|
| **March 14, 2025** | Petitioner's brief |
| **April 11, 2025** | Government's opposition |
| **April 25, 2025** | Petitioner's reply |

The parties anticipate the briefs will address the scope of the subject matter that predecessor counsel will be required to disclose by affidavit and whether otherwise privileged documents relevant to the § 2255 petition must also be produced to the parties. The parties propose that, once the Court has ruled and issued an order to predecessor counsel consistent with its ruling, predecessor counsel be given 60 days to comply ("Compliance"). Thereafter, the parties propose the following schedule:

| | |
|---|---|
| **30 Days from Compliance** | Mutual disclosure of affirmative fact evidence (including witness statements and documents) that either party intends |

A92

|                          | to offer under Rule 7 of the Rules Governing 2255 Proceedings for the United States District Courts |
|--------------------------|-----|
| **60 Days from Compliance** | Mutual disclosure of rebuttal fact evidence (including witness statements and documents) under Rule 7 |
| **90 Days from Compliance** | If rebuttal fact evidence includes new witnesses, mutual disclosure of any further witness statements |
| **120 Days from Compliance** | Mutual expert disclosures |
| **150 Days from Compliance** | Mutual rebuttal expert disclosures |
| **180 Days from Compliance** | Joint letter proposing a schedule for any additional motions and/or an evidentiary hearing. To the extent that either party wishes to move for discovery under Rule 6, that request must be made in time for resolution before this date. |

\*   \*   \*

The parties thank the Court for its consideration.


Respectfully submitted,

DANIELLE R. SASSOON
United States Attorney for the
Southern District of New York

by:    /s/ Jun Xiang
       Jun Xiang
       Assistant United States Attorney
       (212) 637-2289

**CC:**
Counsel for Abderrahmane Farhane

The Court hereby adopts the parties' proposed schedule regarding briefing. The deadline for Petitioner to file his brief is March 14, 2025. The Government shall file its opposition brief by April 11, 2025. Petitioner shall file any reply by April 25, 2025. The Court also hereby adopts the parties' proposed Compliance schedule.

**SO ORDERED.**

Dated: January 28, 2025

_Loretta A. Preska_
_____
LORETTA A. PRESKA, U.S.D.J.

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                    Plaintiff,<br><br>    -against-<br><br>ABDERRAHMANE FARHANE,<br><br>                    Defendant. | No. 05-CR-673(LAP) |
| ABDERRAHMANE FARHANE,<br><br>                    Petitioner<br>-against-<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | No. 18-CV-11973 (LAP)<br><br><br><br>MEMORANDUM & ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

     Before the Court is Petitioner Abderrahmane Farhane's ("Petitioner") motion for an order concerning the scope of the waiver of attorney-client privilege in the above-captioned action. (Dkt. no. 289 [the "Waiver Motion" or "Pet. Waiver Mot."].)[1] Petitioner asks that the scope of waiver extend only to "communications with trial counsel (or lack thereof) concerning the potential denaturalization or deportation consequences of his plea[.]" (Pet. Waiver Mot. at 1.)[2] Petitioner also requests a protective order limiting the waiver of privilege in various ways.

_____

[1] (See also Pet. Waiver Mem., dated Mar 14, 2025 [dkt. no. 290]; Pet. Waiver Reply, dated May 30, 2025 [dkt. no. 294].) Unless otherwise stated, citations are to docket numbers in 05-CR-673.
[2] All citations to page numbers cited herein are to ECF pages.

(Id.)  The Government opposes the Waiver Motion and requests the Court broaden the scope of attorney-client privilege waiver. (Gov. Opp'n, dated May 2, 2025 [dkt. no. 293] at 7.)  The Government also opposes Petitioner's request for a protective order. (Id. at 9-11.)  For the reasons set forth below, Petitioner's Motion is GRANTED in part and DENIED in part.

### I.  **Procedural History**

Petitioner is a naturalized citizen of the United States and was granted citizenship in April 2002. (See dkt. no. 232 [the "Affidavit" OR "Farhane Aff."] ¶¶ 7, 15.)  In 2005 and 2006, he was arrested and indicted on multiple charges including conspiracy to provide material support for terrorism. (Dkt. nos. 1, 21.)  The conduct underlying this charge occurred, at least in part, before Petitioner's naturalization. (Dkt. no. 21 at 4.)

Michael Hueston acted as trial counsel for Petitioner in the criminal proceedings in connection with these charges and was aware that Petitioner was a naturalized citizen. (See Tr. of Detention Hr'g at 17:24-25 (Nov. 2, 2005).)  Mr. Hueston negotiated a plea on behalf of Petitioner, and Petitioner accepted this plea based on counsel's advice. (See Farhane Aff. ¶¶ 30-31; see also dkt. nos. 85, 86.)  According to Petitioner, Mr. Hueston did not discuss with Petitioner that denaturalization and deportation were possible consequences of his plea or otherwise advise him as to those risks. (Farhane Aff. ¶¶ 32-33, 35-36.)

Petitioner served eleven years in prison and was released in 2017. (Farhane Aff. ¶ 44.) In 2018, the Government filed a civil complaint to revoke Petitioner's naturalization on grounds that he procured his naturalization by fraud and concealment. See United States v. Farhane, No. 18-CV-4347 (E.D.N.Y. Aug. 13, 2013), dkt. no. 1.

In response, Petitioner moved pursuant to 28 U.S.C. § 2255 to vacate his guilty plea, conviction, and sentence (the "Motion to Vacate"), arguing that his counsel provided constitutionally ineffective assistance by failing to warn him of the risks of denaturalization and deportation which could follow from his plea. (See dkt. no. 220 at 4-5.)

In support of his Motion to Vacate, Petitioner submitted an Affidavit which describes certain privileged communications between himself and Hueston. (See Farhane Aff.) For example, Petitioner stated that he told Mr. Hueston he wanted to go to trial and explained the priority he placed on a short separation from his family. (See id. ¶¶ 28-29.) Petitioner added that Mr. Hueston advised he might not receive a fair trial "because [he] was Muslim and did not speak English like a native speaker." (Id. ¶ 28.)

On March 31, 2020, the Court denied Petitioner's Motion to Vacate, concluding Petitioner had failed to demonstrate that his attorney's actions were objectively unreasonable and that his denaturalization risk stemmed from his misrepresentations

regarding his criminal conduct rather than from his conviction. (Dkt. no. 254.) The Court of Appeals initially affirmed the Court's decision, holding that denaturalization is not a direct consequence of pleading guilty and that the Sixth Amendment therefore imposes no obligation on attorneys to warn of that risk. See Farhane v. United States, 77 F.4th 123, 133 (2d Cir. 2023).

However, the Court of Appeals agreed to rehear the case en banc, and on October 31, 2024, a divided Court of Appeals reversed the panel decision. The en banc decision held that defense attorneys are obligated to inquire about, and advise on, denaturalization and deportation consequences that naturalized citizen clients may face. See Farhane v. United States, 121 F.4th 353, 363 (2d Cir. 2024) (en banc). Accordingly, the Court of Appeals vacated and remanded the case for the Court to address the merits of Petitioner's claim under § 2255. Id. at 376–77. The Court of Appeals directed this Court to evaluate "whether Farhane's counsel's failure to advise was objectively reasonable" under the "prevailing professional norms in 2006." Id. at 375. To do so, the Court of Appeals instructed this Court to analyze ABA standards and similar materials and to provide Mr. Hueston an opportunity to be heard. Id. The Court is also required to address whether Petitioner was prejudiced by counsel's omission, allowing him a "robust opportunity to develop a relevant record" as well as the Government a chance to rebut. Id. at 374–76.

**A97**

On remand, the parties failed to reach an agreement as to the extent to which Petitioner waived attorney-client privilege by bringing his ineffective assistance claim, as the scope of this waiver affects the information that Petitioner's trial counsel will be compelled to disclose to the Government and the Court. Petitioner's Waiver Motion followed.  In connection with the Waiver Motion, the Court directed the parties to address (a) the subject matter that trial counsel will be required to disclose and (b) whether otherwise privileged documents related to Petitioner's petition must also be produced.  (Dkt. no. 288.)

## II.  __Legal Standard__

### A. 28 U.S.C. § 2255

In order to succeed on his § 2255 claim, Petitioner must show that his former "counsel's representation fell below an objective standard of reasonableness" and that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-688, 694 (1984).

In the context of pleas, Strickland's prejudice prong does not interrogate the ultimate outcome of proceedings, but whether there was a "denial of the entire judicial proceeding . . . to which [Petitioner] had a right." Roe v. Flores-Ortega, 528 U.S. 470, 483 (2000). The prejudice prong is fulfilled if the defendant "would not have pleaded guilty and would have insisted on going to

trial" in the absence of his attorney's objectively unreasonable conduct. <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

### B. Waiver of Attorney-Client Privilege

Attorney client privilege is "one of the oldest recognized privileges for confidential communications" and is critical in supporting "full and frank communication between attorneys and their clients." <u>Swidler & Berlin v. United States</u>, 524 U.S. 399, 403 (1998). This privilege is generally waived, however, when a "party <u>relies</u> on the privileged communication as a claim or defense or as an element of a claim or defense." <u>In re Cnty. of Erie</u>, 546 F.3d 222, 228 (2d Cir. 2008). In <u>Erie</u>, the Court of Appeals determined that mere relevance of privileged material to a claim or defense is insufficient to waive privilege. <u>Erie</u>, 546 F.3d at 229 ("[P]rivileged information may be in some sense relevant in any lawsuit. A mere indication of a claim or defense certainly is insufficient to place legal advice at issue."). Instead, "a party must <u>rely</u> on privileged advice from his counsel to make his claim or defense." <u>Id.</u>

District courts in this Circuit have applied <u>Erie</u> in criminal and habeas cases considering privilege waivers. <u>See</u> <u>United States v. Schulte</u>, 2020 WL 133620, at *5 (S.D.N.Y. Jan. 13, 2020) ("There can be no dispute that [defendant]'s letters rely on advice of counsel for his defense."); <u>United States v. Green</u>, 2020 WL 6822986, at *4 (S.D.N.Y. Nov. 19, 2020) (holding petitioner waived

privilege as to his ineffective assistance of counsel claims "to the extent that his arguments rely on advice from" trial counsel); Aladino v. United States, 2011 WL 6131175, at *2 (E.D.N.Y. Dec. 8, 2011) (applying reliance standard under Erie to find implicit waiver in habeas case).

Importantly, the scope of waiver must be "formulated with caution" and be "no broader than needed to ensure fairness of the proceedings." Erie, 546 F.3d at 228; United States v. Concepcion, 2020 WL 5646339, at *3 (S.D.N.Y. Sept. 21, 2020). Fairness considerations arise when a party attempts to use the privilege as both "a shield and a sword." In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000) (citing United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991).) "[A] party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." Id. at 182. Put differently, the privilege-holder may not selectively waive privilege to assert a fact to influence a decisionmaker "while denying its adversary access to privileged material potentially capable of rebutting [that] assertion." John Doe Co. v. United States, 350 F.3d 299, 306 (2d Cir. 2003). Fairness is decided "on a case-by-case basis, and depends primarily on the specific context in which privilege is asserted." In re Grand Jury, 219 F.3d at 183.

### III. <u>Discussion</u>

#### A. **Petitioner Has Relied on Privileged Communications to Establish Both Prongs of <u>Strickland</u>**

Petitioner argues that he has waived attorney-client privilege only as to "communications (or lack thereof) between him and trial counsel concerning the potential denaturalization or deportation consequences of his guilty plea." (Pet. Waiver Mem. at 5.) Following the Court of Appeals' remand to this Court to consider the merits of Petitioner's claim under § 2255, Petitioner intends to rely on such communications in an attempt to demonstrate that his former counsel's performance was deficient, the first prong required to establish ineffective assistance of counsel under <u>Strickland</u>. There is no dispute that Petitioner has waived attorney-client privilege as to these communications.

But Petitioner ignores that his Affidavit also described privileged communications to establish the prejudice prong of <u>Strickland</u>. For example, Petitioner states:

> I told Mr. Hueston I wanted to go to trial and I did not want to plead guilty. Mr. Hueston told me that it was not a good idea to go to trial. He told me that a jury might be more likely to convict me because I was Muslim and did not speak English like a native speaker.

(Farhane Aff. ¶ 28.) Petitioner also avers that he "told Mr. Hueston that [his] priority was to have the shortest separation from [his] family." (<u>Id.</u> ¶ 29.) These representations support Petitioner's prejudice argument—that he would not have pled guilty

and would have insisted on going to trial but for Mr. Hueston's failure to advise him of the deportation and denaturalization consequences of his plea.    Based on Petitioner's reliance on privileged communications to demonstrate he was prejudiced by his counsel's deficient performance, Petitioner has waived "privileged material potentially capable of rebutting" the assertion that Petitioner would not have pleaded guilty but for counsel's omission.  John Doe Co., 350 F.3d at 306.

### A. The Government Is Entitled to Waiver Over the Requested Subjects in Fairness

The Government argues that the scope of Petitioner's waiver should extend more broadly to six subjects that it claims either are directly relevant to the Strickland inquiry (Gov. Opp'n at 7) or are topics upon which Defendant relied in his Affidavit in support of his habeas petition.  (Id. at 8).  Specifically, the Government seeks to discover communications between Petitioner and his former counsel involving:

> (1) the defendant's naturalization, including whether the naturalization overlapped in time with the offense conduct, (2) the defendant's desire to live in the United States, (3) the nature and strength of the defendant's ties to Morocco or another foreign country, (4) the defendant's attitudes toward United States citizenship for himself or his family, (5) the perceived strength of the Government's evidence, including potential trial defenses, and (6) the defendant's goals and instructions to Mr. Hueston with respect to plea negotiations.

(Id. at 6-7.)  The Government argues that the first subject bears on the performance prong of Strickland and the other five subjects bear on the prejudice prong.  (Id. at 7.)

Information within each of these subjects may be "capable of rebutting" the assertion that either i) counsel's performance was deficient or ii) that Petitioner would have not pleaded guilty but for counsel's omission, John Doe Co., 350 F.3d at 306, and it would be unfair to deny Mr. Hueston the opportunity to address these topics given Petitioner's reliance on them.  For example, given Petitioner's claim that Mr. Hueston never advised him of the denaturalization consequences of his plea, Mr. Hueston must be afforded the opportunity to disclose what information Petitioner provided counsel regarding his naturalization, including whether the naturalization overlapped in time with the offense conduct.  As another illustration, in the Affidavit Petitioner states that he "told Mr. Hueston that [he] wanted to go to trial and that [he] did not want to plead guilty," (Farhane Aff. ¶ 28), and "would have chosen to go to trial even if [he] faced more years in prison as a result" (id. ¶ 42).  Fairness demands that Mr. Hueston be permitted an opportunity to disclose communications regarding

Petitioner's goals and instructions to him with respect to plea negotiations.[3]

### B. Petitioner's Request for a Protective Order

Petitioner requests a protective order that limits the waiver of privilege to this proceeding, limits the use of communications disclosed by trial counsel to this proceeding, constrains the Government's access to such information, requires those communications to be filed under seal, and restricts who in the Government may participate in any re-prosecution of Petitioner or future immigration proceedings. (Pet. Waiver Mem. at 24.)

Federal courts may, for good cause, enter protective orders limiting the extent to which discovery may be disclosed and used. Fed. R. Civ. P. 26(c). In <u>Bittaker v. Woodford</u>, 331 F.3d 715, 717 (9th Cir. 2003), the Court of Appeals for the Ninth Circuit affirmed a district court's entry of a protective order barring the use of privileged material for "any purpose other than litigating the federal habeas claim" at hand. In the Ninth Circuit's view, fairness compels district courts to "enter appropriate orders clearly delineating the contours of" the privilege waiver such that "the party given such access does not

---

[3] Given Petitioner "readily avers that by filing his petition he has impliedly waived the privilege as to certain communications" (Pet. Waiver Reply at 8 n.6), Petitioner need not provide a consent form as to waiver.

disclose these materials, except to the extent necessary in the habeas proceeding." Id. 727-28.  The Ninth Circuit reasoned that:

> [i]f a prisoner is successful in persuading a federal court to grant the writ, the court should aim to restore him to the position he would have occupied, had the first trial been constitutionally error-free.  Giving the prosecution the advantage of obtaining the defense casefile—and possibly even forcing the first lawyer to testify against the client during the second trial—would assuredly not put the parties back at the same starting gate.

Id. at 722-23.

Other federal courts have found similar protective orders appropriate in these circumstances.  See Harris v. United States, No. 3:14-cr-00042-01, 2016 WL 236988, at *3 (S.D. W. Va. Jan. 19, 2016); United States v. Straker, 258 F.Supp.3d 151, 158-159 (D.D.C. 2017); Courtade v. United States, 243 F.Supp.3d 699, 705 (E.D. Va. 2017); see also Waters v. United States, 302 A.3d 522, 534 (D.C. 2023) (recognizing that "every court to have considered this issue seems to agree" with the Ninth Circuit's approach and precluding the Government from using the privileged information even for purposes of impeachment).

Here, Petitioner has waived privilege over a number of subjects, including his naturalization and whether it overlapped in time with the offense conduct (Farhane Aff. ¶ 15), his ties to Morocco or another foreign country (id. ¶ 18), and his attitudes toward U.S. citizenship (id. ¶¶ 14-18).  Because it is difficult to predict how such information may ultimately prove useful to the

Government or detrimental to Petitioner in a subsequent re-trial or immigration proceeding, the Court concludes that Petitioner is entitled to a protective order requiring the waived material to be filed under seal and limiting the use of the waived material to this proceeding.  Otherwise, to allow the prosecution to use the communications disclosed by counsel in this habeas proceeding in a subsequent proceeding would "give the prosecution a wholly gratuitous advantage."  Bittaker, 331 F.3d at 724.

Accordingly, communications disclosed by trial counsel shall be filed under seal, and the attorney-client privilege shall not be deemed automatically waived in any other Federal or State proceeding by virtue of the Court-ordered disclosure in this § 2255 proceeding.  The Government is prohibited from using the information disclosed by Petitioner's trial counsel without further order of a court of competent jurisdiction or a written waiver by Petitioner.

However, Petitioner's request to i) prohibit the Government from accessing or consulting any such materials in any other proceeding and ii) prohibit individuals participating for the Government in this proceeding from participating in or communicating about this matter with any individuals participating for the Government in any future proceedings is denied.  The Court sees no need to constrain the Government's ability to communicate amongst itself or restrict its ability to allocate and staff

**A106**

Government attorneys, given the Government's inability to use the waived material in any future proceedings.

**IV.** __Conclusion__

For the reasons set forth above, Petitioner's Motion is GRANTED in part and DENIED in part. It is hereby ordered that:

1. Petitioner has waived attorney-client privilege as to communications between him and trial counsel concerning:

   a. the potential denaturalization or deportation consequences of his guilty plea;

   b. Petitioner's naturalization, including whether the naturalization overlapped in time with the offense conduct;

   c. Petitioner's desire to live in the United States,

   d. the nature and strength of Petitioner's ties to Morocco or another foreign country;

   e. Petitioner's attitudes toward United States citizenship for himself or his family;

   f. the perceived strength of the Government's evidence, including potential trial defenses, and

   g. Petitioner's goals and instructions to Mr. Hueston with respect to plea negotiations.

**A107**

2. Trial counsel shall give testimony about such communications (or lack thereof) and produce written communications between trial counsel and Petitioner concerning the above-mentioned topics;

3. Testimony given and written communications disclosed by trial counsel shall be filed under seal;

4. The attorney-client privilege shall not be deemed automatically waived in any other Federal or State proceeding by virtue of the Court-ordered disclosure in this § 2255 proceeding; and

5. The Government is prohibited from using the information disclosed by Petitioner's trial counsel without further order of a court of competent jurisdiction or a written waiver by Petitioner.

The parties shall submit a joint letter no later than October 31, 2025 advising the Court of how they propose to proceed.

The Clerk of the Court shall close docket number 289 on 05-CR-673 and docket number 44 on 18-CV-11973.

**SO ORDERED.**

Dated:     October 23, 2025
           New York, New York

_Loretta A. Preska_

LORETTA A. PRESKA
Senior United States District Judge

**A108**

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, New York 10278*

October 31, 2025

**BY ECF**
The Honorable Loretta A. Preska
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

> Re:    **United States v. Farhane**, 05 Cr. 673 (LAP)
>        **United States v. Farhane**, 18 Civ. 11973 (LAP)

Dear Judge Preska:

The parties respectfully submit this joint letter pursuant to the Court's October 23, 2025 Memorandum and Order. After meeting and conferring, the parties were unable to reach agreement on the appropriate next steps. The parties' positions are separately set forth below.

**The Government's Position**

The Government respectfully submits that the Court's January 28, 2025 Order controls the next steps in this case. In that Order, the Court memo-endorsed a schedule jointly proposed by the parties after several meet-and-confers. (Doc. No. 288.) The parties' joint schedule provided that the Court's order on the scope of attorney-client waiver would be served upon predecessor counsel, that predecessor counsel would be given 60 days to comply ("Compliance"), and that further deadlines would be tied to the date of Compliance. (Doc. No. 287.) The Court's October 23, 2025 decision addressed the scope of attorney-client waiver. Thus, the next step is for the Court to serve that order on predecessor counsel so that he may have 60 days to comply.

On October 29, 2025, the Government participated at a telephonic meet-and-confer with counsel for defendant Abderrahmane Farhane and proposed the above. On that call, defense counsel advised that it was assessing whether to appeal the Court's October 23, 2025 decision. On October 30, 2025, defense counsel advised the Government that the defense would be filing a petition for a writ of mandamus against the Court. The defense requested four weeks to file the petition and asked the Government consent to a stay of the proceedings before this Court until disposition of such petition. The Government declined.

Needless to say, the Government believes that any petition for mandamus by the defense would be completely meritless. Mandamus relief is a "drastic and extraordinary remedy reserved

for really extraordinary causes." <u>Cheney v. U.S. Dist. Ct. for D.C.</u>, 542 U.S. 367, 380 (2004) (citations omitted). The "touchstones" of a case warranting mandamus relief are "usurpation of power, clear abuse of discretion and the presence of an issue of first impression." <u>In re U. S.</u>, 680 F.2d 9, 12 (2d Cir. 1982) (citations omitted). Here, the Court's October 23, 2025 decision involved application of well-established law that a "privilege-holder may not selectively waive privilege to assert a fact to influence a decisionmaker 'while denying its adversary access to privileged material potentially capable of rebutting [that] assertion.'" (Doc. No. 295 at 7 (quoting <u>John Doe Co. v. United States</u>, 350 F.3d 299, 306 (2d Cir. 2003)). Judges in the Southern District of New York have routinely relied on this legal principle to find that criminal defendants who assert ineffective-assistance-of-counsel claims waive all attorney-client communications relevant to their claims. (Doc. No. 293 at 6 (citing cases).)

The possibility that the Court might agree with the Government was well within the contemplation of defense counsel at the time they agreed to a joint schedule tied to the Court's eventual ruling. There is no reason why defense counsel should now be permitted to renege on the joint proposal and ignore the Court's January 28, 2025 memo-endorsement. The Government notes that further delay in this matter would harm the interests of justice and prejudice the Government. The communications with the defendant about which predecessor counsel will need to testify occurred approximately twenty years ago. And, in the event the Section 2255 motion is granted, the Government will need to assess whether to proceed to trial against the defendant. The unnecessary delay sought by the defendant would only further erode the availability of evidence at such proceedings.

The Government thus respectfully requests that the Court cause the October 23, 2025 Memorandum and Order to be served on predecessor counsel and order him to comply within 60 days of service.

**The Defense's Position**

Mr. Farhane intends to file a petition for a writ of mandamus requesting the Second Circuit review this Court's decision regarding the extent to which Mr. Farhane waived attorney-client privilege and denying Mr. Farhane's request for additional protective measures preventing the Government from accessing or communicating about information or documents disclosed by counsel. *See* Order, Dkt. 295, at 13-14. Mr. Farhane intends to file that petition within four weeks from the date of the Court's decision—on or before November 20, 2025. Because the Second Circuit may limit the extent to which Mr. Farhane waived attorney-client privilege, or may otherwise limit the disclosure of information or documents to be produced by predecessor counsel, Mr. Farhane respectfully submits that further proceedings in this Court, which would start with the production of information and documents by predecessor counsel, should be stayed pending resolution of Mr. Farhane's petition for a writ of mandamus.

Far from being "meritless," Mr. Farhane's mandamus petition would be in keeping with regular practice of using mandamus petitions to review discovery orders implicating privilege concerns. *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-111 (2009) (explaining mandamus can "serve as [a] useful safety valve[] for promptly correcting serious errors," including a "particularly injurious or novel privilege ruling"). Mandamus review of a privilege ruling is

appropriate where (1) the case presents an issue of importance and first impression; (2) that privilege will be lost if review must await final judgment; and (3) immediate resolution will avoid the development of discovery practices or doctrine undermining the privilege. *In re Sims*, 534 F.3d 117, 128-129 (2d Cir. 2008).

This Court's October 23, 2025 decision presents an issue of first impression for the Second Circuit: the extent to which a habeas petitioner alleging ineffective assistance of counsel impliedly waives privilege by prosecuting their claim. *See Giordano v. United States*, 2011 WL 1831578, at *2 (D. Conn. Mar. 17, 2011) (noting "the Second Circuit has never had occasion to consider the issue");[1] *see also Sims*, 534 F.3d at 129 (case presents an issue of importance and first impression when it involves "the extension of an established principle to an entirely new context"). That issue is particularly important because finding too broad of a waiver "would undermine the privilege at other stages of the proceedings where the party asserts innocence as a defense," such as at a retrial if a petitioner is granted relief. *In re Lott*, 424 F.3d 446, 456 (6th Cir. 2005). The privilege protecting communications between Mr. Farhane and predecessor counsel will indisputably be lost if review must await a final judgment, before which those communications will be disclosed. *See Sims*, 534 F.3d at 129. And the immediate resolution of the petition would avoid the development of discovery practices undermining the attorney-client privilege given the "potentially broad applicability and influence of [this Court's] privilege ruling," *id.*, including in habeas proceedings in which petitioners assert claims of ineffective assistance of counsel.

The Government is also incorrect in its assertion that Mr. Farhane is somehow "reneg[ing]" on the scheduling proposal by seeking review of the Court's decision. *First*, there is nothing uncommon about parties seeking appellate review during the pendency of a district court case in which there is an existing case schedule, even where that schedule does not set deadlines for intermediary appellate review. *Second*, Mr. Farhane is prepared to move forward under the schedule proposed by the parties and later entered by the Court after resolution of his petition for a writ of mandamus.

As the Government notes, trial counsel's interactions with Mr. Farhane occurred roughly twenty years ago. Mr. Farhane respectfully submits that staying these proceedings—likely for a matter of months, at most—to allow for timely appellate review of this important threshold issue would have a negligible effect, if any, in "erod[ing] the availability of evidence." In contrast, should this Court permit the disclosure of privileged materials that the Second Circuit later determines remain protected by privilege, Mr. Farhane would suffer far greater prejudice because the "damage to the attorney-client relationship will have already been done by the disclosure itself," *In re Lott*, 424 F.3d at 451, and attorneys for the Government could potentially use what

---

[1] The *Giordano* court's observation in 2011 that the Second Circuit has not yet addressed this issue remains true to this day.

they learn from materials disclosed by counsel in this case to help inform their strategy in the denaturalization case, potential removal proceedings, or any potential retrial.

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

by:     /s/ Jun Xiang
Jun Xiang
Assistant United States Attorney
(212) 637-2289

**CC (BY ECF)**
Naz Ahmad, Esq.
Michael Craft, Esq.
Ramzi Kassem, Esq.
Alan Schoenfeld, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-against-

ABDULRAHMAN FARHANE,

Defendant.

---

05 cr. 673 (LAP)

18 CIV. 11973 (LAP)

ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is the Government's motion to proceed according to the January 28, 2025 schedule, (dkt. no. 288), and the Defendant's request to stay proceedings for four weeks in order to permit him to file a petition for mandamus, (dkt. no. 298).

The Government's motion to move forward with the January 28, 2025 scheduling order is granted, and Defendant's motion to stay proceedings for four weeks is denied. Proceedings shall, however, be stayed until November 17 in order to permit Defendant to seek a stay from the Court of Appeals. Dates on the January 28 order shall be adjusted accordingly.

SO ORDERED.

Dated:    New York, New York
          November 3, 2025

LORETTA A. PRESKA
Senior United States District Judge

1

**A113**

**Query    Reports    Utilities    Help    Log Out**

# U.S. District Court
## Eastern District of New York (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:18-cv-04347-RPK

| | |
|---|---|
| United States of America v. Farhane | Date Filed: 08/13/2018 |
| Assigned to: Judge Rachel P. Kovner | Jury Demand: None |
| Cause: 08:145 | Nature of Suit: 465 Other Immigration Actions |
| | Jurisdiction: U.S. Government Plaintiff |

**Plaintiff**

**United States of America**       represented by     **Anthony Daniel Bianco**
United States Department of Justice, Civil Division
Office Of Immigration Litigation, District Court S
Po Box 868, Ben Franklin Station
Washington, DC 20044
202-305-8014
Fax: 202-305-7000
Email: anthony.d.bianco@usdoj.gov
*TERMINATED: 02/23/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher W Hollis**
United States Department of Justice, Civil Division, Office
Us Dept Of Justice (civ), Oil--dcs
Po Box 878
Ben Franklin Station
Washington, DC 20044
202-305-0899
Fax: 202-616-8962
Email: christopher.hollis@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph Anthony Marutollo**
U. S. Attorney's Office
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-6288
Fax: 718-254-7489
Email: joseph.marutollo@usdoj.gov
*TERMINATED: 08/28/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**A114**

**Brandon Foster Smith**
DOJ-Civ
450 E Street N.W.
P.O. Box 868
Washington, DC 20044
202-451-7329
Email: brandon.smith5@usdoj.gov
*TERMINATED: 11/14/2025*
*ATTORNEY TO BE NOTICED*

**Layaliza K. Soloveichik**
United States Attorneys Office
Eastern District Of New York, Civil
Division
271 Cadman Plaza East, 7th Floor
Brooklyn, NY 11201
718-254-6298
Fax: 718-254-7489
Email: layaliza.soloveichik@usdoj.gov
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Abderrahmane Farhane**
*also known as*
Abdulrahman Farhane
*also known as*
Abderr Farhane
*also known as*
Abdar Farhane

represented by **Ramzi Kassem**
Main Street Legal Services, Inc.
2 Court Square West
Ste 5th Floor
Long Island City, NY 11101
718-340-4558
Fax: 718-340-4478
Email: ramzi.kassem@law.cuny.edu
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan E. Schoenfeld**
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
New York, NY 10007
212-937-7294
Fax: 212-230-8888
Email: alan.schoenfeld@wilmerhale.com
*ATTORNEY TO BE NOTICED*

**Naz Ahmad**
Main Street Legal Services, Inc.
Cuny School Of Law
2 Court Square
Long Island City, NY 11101
718-340-4630
Fax: 718-340-4478
Email: naz.ahmad@law.cuny.edu
*ATTORNEY TO BE NOTICED*

**A115**

**Tarek Ziad Ismail**
CUNY SCHOOL OF LAW
2 Court Square
Long Island City, NY 11101
(718)340-4141
Fax: (718)340-4470
Email: tarek.ismail@law.cuny.edu
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/13/2018 | 1 | COMPLAINT *To Revoke Naturalization* against Abderrahmane Farhane, filed by United States of America. (Attachments: # 1 Civil Cover Sheet) (Davis, Kimberly) (Entered: 08/13/2018) |
| 08/13/2018 | 2 | Summons Issued as to Abderrahmane Farhane. (Davis, Kimberly) (Entered: 08/13/2018) |
| 08/13/2018 | 3 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if all** parties wish to consent. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences**. **Do NOT return or file the consent <u>unless</u> all parties have signed the consent.** (Davis, Kimberly) (Entered: 08/13/2018) |
| 08/13/2018 | 4 | NOTICE of Appearance by Anthony Daniel Bianco on behalf of United States of America (aty to be noticed) (Bianco, Anthony) (Entered: 08/13/2018) |
| 08/13/2018 | 5 | SUMMONS Returned Executed by United States of America. Abderrahmane Farhane served on 8/13/2018. (Marutollo, Joseph) (Entered: 08/13/2018) |
| 10/09/2018 | 6 | NOTICE of Appearance by Ramzi Kassem on behalf of All Defendants (aty to be noticed) (Kassem, Ramzi) (Entered: 10/09/2018) |
| 10/09/2018 | 7 | First MOTION for Extension of Time to File Answer re 1 Complaint by Abderrahmane Farhane. (Kassem, Ramzi) (Entered: 10/09/2018) |
| 10/10/2018 | | ORDER granting 7 Motion for Extension of Time to Answer. Defendant shall file his answer on or before January 10, 2019. Ordered by Judge Margo K. Brodie on 10/10/2018. (Belsher, Amy) (Entered: 10/10/2018) |
| 12/21/2018 | 8 | NOTICE of Appearance by Naz Ahmad on behalf of Abderrahmane Farhane (aty to be noticed) (Ahmad, Naz) (Entered: 12/21/2018) |
| 12/21/2018 | 9 | NOTICE of Appearance by Alan E. Schoenfeld on behalf of Abderrahmane Farhane (aty to be noticed) (Schoenfeld, Alan) (Entered: 12/21/2018) |
| 12/21/2018 | 10 | Letter MOTION for Extension of Time to File Answer *and Approval of Briefing Schedule for Defendant's Motion to Stay Proceedings* by Abderrahmane Farhane. (Schoenfeld, Alan) (Entered: 12/21/2018) |

| 12/21/2018 | 11 | Letter *regarding Service of Notice of Motion to Stay the Proceedings and Memorandum of Law in Support of Defendant's Motion to Stay the Proceedings* by Abderrahmane Farhane (Schoenfeld, Alan) (Entered: 12/21/2018) |
| --- | --- | --- |
| 01/02/2019 | | ORDER granting 10 Motion for Extension of Time to Answer. Plaintiff shall serve its response to defendant's motion on or before February 5, 2019. Defendant shall serve his reply, if any, on or before February 26, 2019. Defendant shall serve his response to the complaint fourteen days after the Court's order with respect to defendant's motion. Ordered by Judge Margo K. Brodie on 1/2/2019. (Beeney, Eliza) (Entered: 01/02/2019) |
| 01/07/2019 | 12 | NOTICE of Appearance by Tarek Ziad Ismail on behalf of Abderrahmane Farhane (aty to be noticed) (Ismail, Tarek) (Entered: 01/07/2019) |
| 01/17/2019 | 13 | Consent MOTION for Extension of Time to File *Response to Defendant's Motion* by United States of America. (Marutollo, Joseph) (Entered: 01/17/2019) |
| 01/17/2019 | | ORDER granting 13 Motion for Extension of Time to File. Plaintiff shall serve its opposition to Defendant's motion within thirty (30) days after the date on which the President signs into law a budget appropriation restoring Department of Justice funding. Defendant's reply shall be served within thirty (30) days thereafter. Ordered by Judge Margo K. Brodie on 1/17/2019. (Beeney, Eliza) (Entered: 01/17/2019) |
| 02/14/2019 | 14 | STIPULATION *for the Court's endorsement* by United States of America (Bianco, Anthony) (Entered: 02/14/2019) |
| 02/20/2019 | 15 | **STIPULATION AND ORDER:** This action shall be stayed pending the resolution of the Southern District of New York Action. The parties shall file joint status reports regarding the status of the Southern District of New York Action ninety (90) days after the date in which the Court endorses the instant Order, with subsequent joint status reports to be filed (if necessary) on subsequent ninety-day intervals. The parties shall notify the Court immediately upon a resolution of the Southern District of New York Action. The United States reserves its right to request at a later date that the case be returned to active litigation for any good cause shown. Mr. Farhane reserves the right to reinstate, renew, or amend his motion for a stay in that event. Ordered by Judge Margo K. Brodie on 2/20/2019. (Brucella, Michelle) (Entered: 02/20/2019) |
| 05/17/2019 | 16 | STATUS REPORT *pursuant to the Court's February 20, 2019 Order* by United States of America (Marutollo, Joseph) (Entered: 05/17/2019) |
| 08/06/2019 | 17 | STATUS REPORT *pursuant to the Court's February 20, 2019 Order* by United States of America (Marutollo, Joseph) (Entered: 08/06/2019) |
| 08/08/2019 | | ORDER re 17 Status Report. The Court grants the parties' request to continue the stay in this action pending resolution of the Southern District of New York action. Ordered by Judge Margo K. Brodie on 8/8/2019. (Beeney, Eliza) (Entered: 08/08/2019) |
| 11/04/2019 | 18 | STATUS REPORT *pursuant to the Court's February 20, 2019 Order* by Abderrahmane Farhane (Ahmad, Naz) (Entered: 11/04/2019) |
| 11/04/2019 | | ORDER re 18 Status Report. The Court grants the parties' request to continue the stay in this action pending resolution of the Southern District of New York action. The parties shall file a status report on or before February 3, 2020. Ordered by Judge Margo K. Brodie on 11/4/2019. (Beeney, Eliza) (Entered: 11/04/2019) |
| 02/03/2020 | 19 | STATUS REPORT *(Joint)* by Abderrahmane Farhane (Schoenfeld, Alan) (Entered: 02/03/2020) |
| 02/03/2020 | | ORDER re 19 Status Report. The Court grants the parties' request to continue the stay in this action pending resolution of the Southern District of New York action. Ordered by |

|  |  | Judge Margo K. Brodie on 2/3/2020. (Williams, Tenisha) (Entered: 02/03/2020) |
|---|---|---|
| 02/06/2020 |  | Case Reassigned to Judge Rachel P. Kovner. Judge Margo K. Brodie no longer assigned to the case. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (Mahoney, Brenna) (Entered: 02/06/2020) |
| 02/14/2020 | 20 | Notice of Related Case: **The Civil Cover Sheet filed in this civil action indicates a related case.** (Bowens, Priscilla) (Entered: 02/14/2020) |
| 03/31/2020 | 21 | Letter *respectfully requesting that the Court lift the stay in this action, in light of today's ruling in the Southern District of New York denying Defendant's petition* by United States of America (Attachments: # 1 Exhibit Decision) (Marutollo, Joseph) (Entered: 03/31/2020) |
| 04/03/2020 | 22 | Letter *in Opposition to the Government's March 31, 2020 Letter* by Abderrahmane Farhane (Schoenfeld, Alan) (Entered: 04/03/2020) |
| 04/17/2020 | 23 | MOTION to Stay *Renewed* by Abderrahmane Farhane. (Schoenfeld, Alan) (Entered: 04/17/2020) |
| 04/17/2020 | 24 | MEMORANDUM in Support re 23 MOTION to Stay *Renewed* filed by Abderrahmane Farhane. (Schoenfeld, Alan) (Entered: 04/17/2020) |
| 04/21/2020 |  | ORDER: Plaintiff shall file a response to defendant's motion to renew the stay by May 8, 2020. Plaintiff's response shall not exceed 15 pages. Ordered by Judge Rachel P. Kovner on 4/21/2020. (Hershey, Kenneth) (Entered: 04/21/2020) |
| 04/21/2020 | 25 | RESPONSE to Motion re 23 MOTION to Stay *Renewed* filed by United States of America. (Marutollo, Joseph) (Entered: 04/21/2020) |
| 04/22/2020 |  | ORDER: Defendant's 23 motion to renew the stay in this case is granted as unopposed. The parties shall submit an update to the Court when the Second Circuit decides defendant's appeal of the district court's decision denying his petition for a writ of habeas corpus. Ordered by Judge Rachel P. Kovner on 4/22/2020. (Hershey, Kenneth) (Entered: 04/22/2020) |
| 05/05/2020 | 26 | STATUS REPORT *(Joint)* by Abderrahmane Farhane (Schoenfeld, Alan) (Entered: 05/05/2020) |
| 08/03/2020 | 27 | STATUS REPORT *(Joint)* by Abderrahmane Farhane (Schoenfeld, Alan) (Entered: 08/03/2020) |
| 11/02/2020 | 28 | STATUS REPORT *(Joint)* by Abderrahmane Farhane (Schoenfeld, Alan) (Entered: 11/02/2020) |
| 11/04/2020 |  | ORDER granting 28 letter request. The parties shall file a joint status report within 30 days of the disposition of the defendant's appeal now pending before the Second Circuit. Ordered by Judge Rachel P. Kovner on 11/04/2020. (Lewis, Benjamin) (Entered: 11/04/2020) |
| 06/26/2022 | 29 | MOTION to Withdraw as Attorney *for Defendant* by Abderrahmane Farhane. (Kassem, Ramzi) (Entered: 06/26/2022) |
| 06/28/2022 |  | ORDER: The Motion to Withdraw as Attorney 29 is granted. Attorney Ramzi Kassem is hereby terminated. Ordered by Judge Rachel P. Kovner on 6/28/2022. (Daus, Benjamin) (Entered: 06/28/2022) |
| 08/25/2023 | 30 | MOTION to Withdraw as Attorney by United States of America. (Attachments: # 1 Affidavit) (Marutollo, Joseph) (Entered: 08/25/2023) |

| 08/28/2023 | | ORDER: The 30 motion to withdraw as attorney by Joseph Marutollo is granted. Ordered by Judge Rachel P. Kovner on 8/28/2023. (Miyamoto, Matthew) (Entered: 08/28/2023) |
|---|---|---|
| 09/12/2023 | | ORDER: The parties are directed to file a status report by 9/22/2023. Ordered by Judge Rachel P. Kovner on 9/12/2023. (Miyamoto, Matthew) (Entered: 09/12/2023) |
| 09/20/2023 | 31 | NOTICE of Appearance by Layaliza K. Soloveichik on behalf of United States of America (aty to be noticed) (Soloveichik, Layaliza) (Entered: 09/20/2023) |
| 09/20/2023 | 32 | STATUS REPORT *Joint* by Abderrahmane Farhane (Ahmad, Naz) (Entered: 09/20/2023) |
| 09/21/2023 | | ORDER: The Court has received the parties' 32 status report. The parties shall file another status report within 30 days of the Second Circuit's disposition of Mr. Farhane's petition for rehearing en banc. Ordered by Judge Rachel P. Kovner on 9/21/2023. (Miyamoto, Matthew) (Entered: 09/21/2023) |
| 02/21/2024 | 33 | NOTICE of Appearance by Christopher W Hollis on behalf of All Plaintiffs (aty to be noticed) (Hollis, Christopher) (Entered: 02/21/2024) |
| 02/22/2024 | 34 | MOTION to Withdraw as Attorney by United States of America. (Attachments: # 1 Affidavit of Anthony D. Bianco) (Bianco, Anthony) (Entered: 02/22/2024) |
| 02/23/2024 | | ORDER: The 34 motion to withdraw is granted. Ordered by Judge Rachel P. Kovner on 2/23/2024. (NNW) (Entered: 02/23/2024) |
| 02/27/2024 | 35 | STATUS REPORT *Joint* by Abderrahmane Farhane (Ahmad, Naz) (Entered: 02/27/2024) |
| 02/28/2024 | | ORDER: The Court has received the parties' 35 status report. The parties shall file another status report within 30 days of the Second Circuit's *en banc* decision in *Farhane v. United States*, No. 20-1666. Ordered by Judge Rachel P. Kovner on 2/28/2024. (NNW) (Entered: 02/28/2024) |
| 04/02/2024 | 36 | NOTICE of Appearance by Brandon Foster Smith on behalf of All Plaintiffs (aty to be noticed) (Smith, Brandon) (Entered: 04/02/2024) |
| 12/03/2024 | | ORDER: No status report was filed within 30 days of the Second Circuit's en banc decision in *Farhane v. United States*, No. 20-1666. *See* Feb. 28, 2024 Order. The parties shall file their status report by 12/10/2024. Ordered by Judge Rachel P. Kovner on 12/3/2024. (BL)<br><br>(Entered: 12/03/2024) |
| 12/04/2024 | 37 | STATUS REPORT *Joint* by United States of America (Hollis, Christopher) (Entered: 12/04/2024) |
| 12/05/2024 | 38 | NOTICE of Appearance by Ramzi Kassem on behalf of Abderrahmane Farhane (notification declined or already on case) (Kassem, Ramzi) (Entered: 12/05/2024) |
| 12/06/2024 | | ORDER: The Court is in receipt of the parties' 37 status report. The parties shall file another joint status report within 60 days of a final decision on remand in *Farhane v. United States*, 18-cv-11973, in the Southern District of New York. Ordered by Judge Rachel P. Kovner on 12/6/2024. (BL) (Entered: 12/06/2024) |
| 11/13/2025 | 39 | MOTION to Withdraw as Attorney by United States of America. (Smith, Brandon) (Entered: 11/13/2025) |
| 11/14/2025 | | ORDER: The 39 motion to withdraw as counsel is granted. Ordered by Judge Rachel P. Kovner on 11/14/2025. (JC) (Entered: 11/14/2025) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 11/16/2025 20:57:11 | | | |
| **PACER Login:** | asmajaber | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:18-cv-04347-RPK |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

**A120**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   AUG 13 2018   ★

UNITED STATES DISTRICT COURT                          BROOKLYN OFFICE
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
   UNITED STATES OF AMERICA,

               Plaintiff,

             v.                                    CV 18 - 4347
                                                 18-cv-_____
   Abderrahmane FARHANE,
   a.k.a. Abdulrahman FARHANE,                          BRODIE, J.
   a.k.a. Abderr FARHAN,
   a.k.a. Abdar FERHAN

              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### COMPLAINT TO REVOKE NATURALIZATION

     The United States of America, in this Complaint to Revoke Naturalization against

Defendant Abderrahmane Farhane, a.k.a. Abdulrahman Farhane, a.k.a. Abderr Farhan, a.k.a.

Abdar Ferhane ("Defendant"), states and alleges as follows:

**I.**    **NATURE OF THE ACTION**

1.     This is an action under 8 U.S.C. § 1451(a) to revoke and set aside the decision admitting

Defendant to U.S. citizenship and to cancel his Certificate of Naturalization, No. 26743037, issued

in the name of "Abderrahmane Farhane."

2.     The United States alleges that Defendant procured his naturalization unlawfully and that

he willfully misrepresented and concealed material facts in applying to naturalize. Specifically,

before he became a citizen of the United States, Defendant engaged in criminal activity that he

concealed throughout the naturalization process and that made him ineligible for U.S. citizenship.

From at least on or about November 2001 and continuing through his naturalization as a U.S.

citizen on April 19, 2002, Defendant conspired to launder money from the United States to

locations overseas to purchase weapons and communications equipment for mujahideen in

Afghanistan and Chechnya, in violation of 18 U.S.C. § 1956(e)(2)(A). During his naturalization proceedings, Defendant stated that he had never knowingly committed any crime for which he had not been arrested. In 2006, after Defendant naturalized, he admitted and pleaded guilty to the foregoing crime.

3.      Under 8 U.S.C. § 1451(a), a United States district court must revoke and set aside the order admitting a naturalized citizen to citizenship and cancel his certificate of naturalization upon a showing that such naturalization was illegally procured or procured by concealment of a material fact or by willful misrepresentation.

4.      The United States, therefore, brings this action for an order revoking Defendant's U.S. citizenship and canceling his certificate of naturalization pursuant to 8 U.S.C. § 1451(a).

**II.      JURISDICTION AND VENUE**

5.      This Court has jurisdiction pursuant to 8 U.S.C. § 1451(a) and 28 U.S.C. §§ 1331 and 1345.

6.      Venue is proper in this district pursuant to 8 U.S.C. § 1451(a) and 28 U.S.C. § 1391.

**III.      PARTIES**

7.      Plaintiff is the United States of America.

8.      Defendant was born in Morocco in 1954 and is a naturalized U.S. citizen. His last known address is in Brooklyn, New York, which is within the jurisdiction and venue of this Court.

**IV.      FACTUAL ALLEGATIONS**

9.      The affidavit of Joseph D. Cerciello, Special Agent, U.S. Immigration and Customs Enforcement, showing good cause for this action, as required by 8 U.S.C. § 1451(a), is attached as Exhibit A.

        A.      Defendant's Immigration to the United States

10.      Prior to becoming a U.S. citizen, Defendant was a Moroccan citizen.

2

**A122**

11.     On or about February 22, 1995, the U.S. Department of State, American Consulate at Casablanca, Morocco, issued Defendant an immigrant visa under the classification DV-1.

12.     DV-1 is the classification for an immigrant visa issued to a diversity immigrant.

13.     On or about March 28, 1995, Defendant presented the DV-1 immigrant visa issued to him on or about February 22, 1995, to U.S. immigration officials in New York, New York, to seek admission to the United States as an immigrant.

14.     On or about March 28, 1995, U.S. immigration officials in New York, New York admitted Defendant as a DV-1 immigrant.

15.     The Immigration and Naturalization Service ("INS")[1] issued Defendant alien number A-040-415-851.

    B.      Defendant's Unlawful Naturalization

16.     On or about March 22, 2001, Defendant filed a Form N-400, Application for Naturalization ("Form N-400"), with the INS. Ex. B, Defendant's Form N-400, Application for Naturalization.

17.     Defendant claimed his basis for eligibility to naturalize was that he had been a permanent resident of the United States for at least five years.

18.     On his Form N-400, Defendant answered "No" in response to Part 7, Question 15a, which asked: "Have you ever knowingly committed any crime for which you have not been arrested?"

19.     On or about March 20, 2001, Defendant signed his Form N-400 under penalty of perjury, thereby certifying that his answers to the questions therein were true and correct.

---

[1] On March 1, 2003, the INS ceased to exist and many of its relevant functions were transferred to the U.S. Department of Homeland Security ("DHS"). *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 110 Stat. 2135 (Nov. 25, 2002). However, because many of the events in this case took place prior to the transfer, "INS" will be referenced where factually appropriate.

3

**A123**

20.     On or about March 7, 2002, INS Adjudications Officer Richard Edwards orally interviewed Defendant in person regarding his Form N-400 to determine Defendant's eligibility for naturalization.

21.     At the beginning of the interview, Officer Edwards placed Defendant under oath.

22.     During the interview, Officer Edwards asked Defendant whether he had ever knowingly committed any crime for which he had not been arrested, consistent with Part 7, Question 15a of Defendant's Form N-400.

23.     Consistent with his written answer to Part 7, Question 15a, Defendant testified that he had never knowingly committed any crime for which he had not been arrested.

24.     At the end of his interview, Defendant signed his Form N-400 in the presence of Officer Edwards and swore that the contents of his application, corrections made at his request, and his amended application were true to the best of his knowledge and belief.

25.     Based upon the information supplied by Defendant on his Form N-400 and based on the sworn answers he gave during his naturalization interview, the INS approved Defendant's naturalization application on or about March 7, 2002.

26.     On or about March 7, 2002, and following the INS's approval of his Form N-400, the INS issued to Defendant Form N-445, Notice of Naturalization Oath Ceremony ("Form N-445"). Ex. C, Defendant's Form N-445, Notice of Naturalization Oath Ceremony.

27.     Defendant's Form N-445 notified Defendant he was to appear for a naturalization oath ceremony on April 19, 2002.

28.     Defendant's Form N-445 instructed Defendant to answer the questions on the form the day he was to appear for the naturalization oath ceremony.

4

**A124**

29.     On his Form N-445, Defendant answered "No" in response to Question 3, which asked:

"AFTER the date you were first interviewed on your Application for Naturalization, Form N-400

[on or about March 7, 2002] . . . Have you knowingly committed any crime or offense, for which

you have not been arrested; or have you been arrested, cited, charged, indicted, convicted, fined,

or imprisoned for breaking or violating any law or ordinance, including traffic violations?"

30.     On or about April 19, 2002, Defendant signed his Form N-445 certifying that his answers

to the questions therein were true and correct and submitted the form to INS officials at his

naturalization oath ceremony.

31.     Based upon his approved Form N-400 and his answers to the questions on his Form N-445,

Defendant was permitted to take the oath of allegiance and became a naturalized U.S. citizen on

April 19, 2002.

32. .   On April 19, 2002, the INS issued Certificate of Naturalization No. 26743037 to

Abderrahmane Farhane.  Ex. D, Defendant's Certificate of Naturalization.

          C.     Defendant's Relevant Criminal History

33.     On or about February 8, 2006, a six-count Indictment against Defendant and others was

filed in the U.S. District Court for the Southern District of New York.  Indictment, *United States

v. Abdulrahman Farhane*, No. 05-cr-673 (S.D.N.Y. Feb. 8, 2006).

34.     In the Indictment, the Grand Jury charged Defendant with two counts: (1) conspiracy to

provide material support to terrorists, in violation of 18 U.S.C. § 2339A; and (2) making false

statements involving international terrorism, in violation of 18 U.S.C. § 1001(a)(2).

35.     On or about November 9, 2006, the U.S. Attorney charged Defendant in a two-count

Superseding Information ("Information") filed in the U.S. District Court for the Southern District

5

**A125**

of New York. Ex. E, Superseding Information, *United States v. Abdulrahman Farhane*, No. 05-cr-673 (S.D.N.Y. Nov. 9, 2006).

36.     In the Information, Defendant was charged with two counts: (1) conspiracy to commit money laundering, in violation of 18 U.S.C. § 371; and (2) making false statements, in violation of 18 U.S.C. § 1001.

37.     Count one of the Information charged that Defendant participated in a conspiracy in violation of 18 U.S.C. § 1956(a)(2)(A), from at least in or about November 2001, up to and including in or about June 2005, to send money from the United States to a location outside of the United States intending the money be used to purchase weapons and equipment for jihadists fighting in Afghanistan and Chechnya.

38.     Count two of the Information charged that Defendant made materially false statements in response to questions from the Federal Bureau of Investigation ("FBI") on or about June 9, 2005, in connection with the FBI's investigation into possible attempts to transfer money overseas to support jihadists fighting in Afghanistan and Chechnya.

39.     On or about November 9, 2006, Defendant pleaded guilty to both counts of the Information. The U.S. District Court for the Southern District of New York accepted Defendant's guilty plea. *See* Ex. F, Judgment in a Criminal Case, *United States v. Abdulrahman Farhane*, No. 05-cr-673 (S.D.N.Y Apr. 23, 2007); Minute Entry, *United States v. Abdulrahman Farhane*, No. 05-cr-673 (S.D.N.Y. Nov. 9, 2006).

40.     During his plea of guilty on or about November 9, 2006, Defendant stated that prior to pleading guilty, he had reviewed the Information, gone over the Information with his attorney, and his attorney explained the charges against him. *See* Ex. G, Transcript of Nov. 6, 2006 Proceedings

6

**A126**

as to Abdulrahman Farhane, *United States v. Abdulrahman Farhane*, No. 05-cr-673 (S.D.N.Y. Dec. 13, 2006).[2]

41.     In support of his plea on count one of the Information, Defendant admitted that in November and December 2001, he agreed with others to transfer money for mujahideen fighters in Afghanistan and Chechnya. Defendant further admitted that he knew that he was engaging in unlawful behavior, that no one forced him to transfer money to mujahideen fighters, and that he transferred the money because he wanted to do so. *See id.*

42.     On April 23, 2007, the U.S. District Court for the Southern District of New York entered judgment and sentenced Defendant to 60 months imprisonment on court one and 96 months imprisonment on count two, to run consecutively for a total term of 156 months. Ex. F.

43.     On February 4, 2011, the Second Circuit affirmed the U.S. District Court for the Southern District of New York's judgment of conviction against Defendant. *United States v. Abdulrahman Farhane and Rafiq Sabir*, Nos. 07-1968, 07-5531 (2d Cir. Feb. 4, 2011).

V.     **GOVERNING LAW**

A.     Congressionally Imposed Prerequisites to the Acquisition of Citizenship

44.     No alien has a right to naturalization "unless all statutory requirements are complied with." *United States v. Ginsberg*, 243 U.S. 472, 474-75 (1917). Indeed, the Supreme Court has underscored that "[t]here must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." *Fedorenko v. United States*, 449 U.S. 490, 506 (1981); *see also id.* ("An alien who seeks political rights as a member of this Nation can rightfully

---

[2] While the docket entry and title page of the transcript identifies the proceedings as having occurred on November 6, 2006, the transcript refers to a date of November 9, 2006 as the date of the plea agreement. *See* Transcript of Nov. 6, 2006 Proceedings as to Abdulrahman Farhane at 7:7-10.

obtain them only upon the terms and conditions specified by Congress.") (quoting *Ginsberg*, 243 U.S. at 474)).

45.     Congress has mandated that an individual may not naturalize unless that person "during all periods referred to in this subsection has been and still is a person of good moral character . . . ." *See* 8 U.S.C. § 1427(a)(3). The required statutory period for good moral character typically begins five years before the date the applicant files the application for naturalization, and it continues until the applicant takes the oath of allegiance and becomes a U.S. citizen. *Id.*; 8 C.F.R. § 316.10(a)(1).

46.     Congress has explicitly precluded individuals who give false testimony for the purpose of obtaining immigration benefits from being able to establish the good moral character necessary to naturalize. 8 U.S.C. § 1101(f)(6).

47.     In addition to enumerating classes of persons precluded from establishing the good moral character necessary to naturalize, Congress also created a residual provision which states, "[t]he fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. § 1101(f).

48.     Individuals who, during the statutory period they are required to prove good moral character, commit unlawful acts adversely reflecting upon their moral character cannot meet the good moral character requirement, unless they prove extenuating circumstances exist. *See* 8 C.F.R. § 316.10(b)(3)(iii); 8 U.S.C. § 1101(f).

49.     "[A] conviction during the statutory period is not necessary for a finding that an applicant lacks good moral character. It is enough that the offense was 'committed' during that time." *United States v. Suarez*, 664 F.3d 655, 661 (7th Cir. 2011) (discussing 8 C.F.R. § 316.10(b)(3)(iii)).

8

**A128**

50.     Nevertheless, an individual who is convicted, whether by jury verdict or guilty plea, is collaterally estopped from contesting those matters determined by the judgment in the criminal case. *See Maietta v. Artuz*, 84 F.3d 100, 102 n.1 (2d Cir. 1996).

      B.    The Denaturalization Statute

51.     Recognizing that there are situations where an individual has naturalized despite failing to comply with all congressionally imposed prerequisites to the acquisition of citizenship or by concealing or misrepresenting facts that are material to the decision on whether to grant his or her naturalization application, Congress enacted 8 U.S.C. § 1451.

52.     Under 8 U.S.C. § 1451(a), this Court must revoke a defendant's naturalization and cancel his Certificate of Naturalization if his naturalization was either:

          a.  illegally procured, or

          b.  procured by concealment of a material fact or by willful misrepresentation.

53.     Failure to comply with any of the congressionally imposed prerequisites to the acquisition of citizenship renders the citizenship "illegally procured." *Fedorenko*, 449 U.S. at 506.

54.     Naturalization was procured by concealment of a material fact or by willful misrepresentation where: (1) the naturalized citizen misrepresented or concealed some fact during the naturalization process; (2) the misrepresentation or concealment was willful; (3) the fact was material; and (4) the naturalized citizen procured citizenship as a result of the misrepresentation or concealment. *Kungys v. United States*, 485 U.S. 759, 767 (1988).

55.     Where the government establishes that the defendant's citizenship was procured illegally or by willful misrepresentation of material facts, "district courts lack equitable discretion to refrain from entering a judgment of denaturalization." *Fedorenko*, 449 U.S. at 517.

9

**A129**

## VI.   CAUSES OF ACTION

### COUNT I

### ILLEGAL PROCUREMENT OF NATURALIZATION
### LACK OF GOOD MORAL CHARACTER
### (UNLAWFUL ACTS)

56.     The United States incorporates by reference the allegations set forth in paragraphs 1 through 55 of this Complaint.

57.     As discussed above, to be eligible for naturalization an applicant must show that he has been a person of good moral character for the five-year statutory period before he files a naturalization application, and until the time he becomes a naturalized U.S. citizen.  8 U.S.C. §§ 1427(a)(3); 8 C.F.R. § 316.10(a)(1).  Thus, Defendant was required to establish that he was a person of good moral character from March 22, 1996, until he naturalized on April 19, 2002 (the "statutory period").

58.     Defendant could not establish the requisite good moral character for naturalization because he committed unlawful acts during the statutory period that reflected adversely on his moral character and there were no extenuating circumstances that would lessen his guilt.  8 U.S.C. § 1101(f) (catch-all provision); 8 C.F.R. § 316.10(b)(3)(iii).

59.     Specifically, as set forth above, Defendant participated in a conspiracy to send money from the United States to a location outside of the United States intending the money be used to purchase weapons and equipment for mujahideen fighting in Afghanistan and Chechnya, in violation of 18 U.S.C. § 371, which adversely reflected on his moral character and for which there are no extenuating circumstances. *See* 8 U.S.C. § 1101(f); 8 C.F.R. § 316.10(b)(3)(iii).

60.     Defendant began committing that crime no later than November 2001, which is during the statutory period.

61.     The regulatory catch-all provision for unlawful acts at 8 C.F.R. § 316.10(b)(3)(iii) applies to Defendant because he committed the unlawful acts during the statutory period before he naturalized, even though he pleaded guilty to this crime after he was granted citizenship. *See United States v. Jean–Baptiste*, 395 F.3d 1190, 1194 (11th Cir. 2005).

62.     Because Defendant committed unlawful acts that adversely reflected on his moral character during the statutory period to which he later pleaded guilty, and he cannot demonstrate any extenuating circumstances, Defendant was barred under 8 U.S.C. § 1101(f) and 8 C.F.R. § 316.10(b)(3)(iii) from showing that he had the good moral character necessary to become a naturalized U.S. citizen.

63.     Because Defendant could not establish that he was a person of good moral character during the statutory period, he was ineligible for naturalization under 8 U.S.C. § 1427(a)(3).

64.     Because Defendant was ineligible to naturalize, he illegally procured his naturalization and this Court must revoke his citizenship under 8 U.S.C. § 1451(a).

## COUNT II

### ILLEGAL PROCUREMENT OF NATURALIZATION
### LACK OF GOOD MORAL CHARACTER
### (FALSE TESTIMONY)

65.     The United States incorporates by reference the allegations set forth in paragraphs 1 through 64 of this Complaint.

66.     As discussed above, to be eligible for naturalization, Defendant was required to establish that he was a person of good moral character from on or about March 22, 1996 until he naturalized on April 19, 2002. 8 U.S.C. § 1427(a)(3); 8 C.F.R. § 316.10(a)(1).

67.     Defendant was statutorily barred from showing that he was a person of good moral character because he gave false testimony, under oath during the statutory period, for the purpose

11

**A131**

of obtaining an immigration benefit, specifically naturalization.  8 U.S.C. § 1101(f)(6); 8 C.F.R. § 316.10(b)(2)(vi).

68.     As set forth above, during the statutory period, Defendant provided false testimony for the purpose of obtaining an immigration benefit when he testified, under oath, during his March 7, 2002 naturalization interview in response to Question 15(a) of Part 7 of his N-400 that he had never knowingly committed any crime for which he had not been arrested.

69.     Defendant's testimony in response to Question 15(a) of Part 7 of his N-400 that he had never knowingly committed any crime for which he had not been arrested was false because beginning no later than November 2001, Defendant had participated in a conspiracy to send money from the United States to a location outside of the United States intending the money be used to purchase weapons and equipment for mujahideen fighting in Afghanistan and Chechnya, in violation of 18 U.S.C. § 371, and he was not arrested for this crime until after his naturalization.

70.     Because Defendant provided false testimony under oath for the purpose of obtaining his naturalization, he was barred under 8 U.S.C. § 1101(f)(6) from showing that he had the good moral character necessary to become a naturalized U.S. citizen.

71.     Because Defendant was not a person of good moral character, he was ineligible for naturalization under 8 U.S.C. § 1427(a)(3).

72.     Because Defendant was ineligible to naturalize, he illegally procured his naturalization, and this Court must revoke his citizenship, as provided for by 8 U.S.C. § 1451(a).

12

**A132**

COUNT III

PROCUREMENT OF NATURALIZATION<br>BY CONCEALMENT OF A MATERIAL FACT<br>OR WILLFUL MISREPRESENTATION

73.     The United States incorporates by reference the allegations set forth in paragraphs 1 through 72 of this Complaint.

74.     Under 8 U.S.C. § 1451(a), this Court must revoke Defendant's citizenship and cancel his Certificate of Naturalization because he procured his naturalization by concealment of a material fact and by willful misrepresentation.

75.     As set forth above, Defendant misrepresented and concealed throughout the naturalization process—including during his naturalization interview on or about March 7, 2002, and his answers on his Form N-445—his participation, from at least in or about November 2001, in a conspiracy to send money from the United States to a location outside of the United States intending the money be used to purchase weapons and equipment for mujahideen fighting in Afghanistan and Chechnya, in violation of 18 U.S.C. § 371.

76.     At no point during the naturalization process did Defendant disclose his participation in the foregoing conspiracy for which he had not yet been arrested.

77.     Defendant made such misrepresentations and concealment voluntarily and deliberately, despite knowing that they were false and misleading.   Accordingly, Defendant made these misrepresentations willfully.

78.     Defendant's misrepresentation and concealment of his unlawful activity were material to determining his eligibility for naturalization because they had a natural tendency to influence the government's decision whether to approve his naturalization application.  Indeed, Defendant's conduct rendered him ineligible for naturalization.

13

**A133**

79.     Had Defendant disclosed his criminal conduct, the INS would have denied his application

for naturalization, removed him from any list of persons with approved naturalization applications

scheduled for the oath of allegiance, and prevented him from being administered the oath.

80.     Defendant therefore procured his naturalization by concealment of material facts and

willful misrepresentation, and this Court must revoke his citizenship under 8 U.S.C. § 1451(a).

## VII.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States of America, respectfully requests that the Court

enter:

(1)     A declaration that Defendant illegally procured his citizenship;

(2)     A declaration that Defendant procured his citizenship by concealment of material

facts and by willful misrepresentation;

(3)     Judgment revoking and setting aside the order admitting Defendant to citizenship

and canceling Certificate of Naturalization No. 26743037, effective as of the original date of the

order and certificate, April 19, 2002;

(4)     Judgment forever restraining and enjoining Defendant from claiming any rights,

privileges, benefits, or advantages related to U.S. citizenship that he obtained as a result of his

April 19, 2002 naturalization;

(5)     Judgment requiring Defendant to surrender and deliver, within ten days of the entry

of judgment against him, his Certificate of Naturalization No. 26743037 and any copies thereof in

his possession—and to make good faith efforts to recover and immediately surrender any copies

thereof that he knows are in the possession of others—to the Attorney General, or his designated

representative, including undersigned counsel;

14

**A134**

(6)   Judgment requiring Defendant to surrender and deliver, within ten days of the entry of judgment against him, any other indicia of U.S. citizenship (including, but not limited to, U.S. passports, voter registration cards, and other relevant documents, whether current or expired), and any copies thereof in his possession—and to make good faith efforts to recover and then surrender any copies thereof that he knows are in the possession of others—to the Attorney General, or his designated representative, including undersigned counsel; and

(7)   Judgment granting the United States such other relief that may be lawful and proper in this case.

**A135**

DATED: August 13, 2018

       Respectfully submitted,

    RICHARD P. DONOGHUE
    United States Attorney
    Eastern District of New York

       CHAD A. READLER
       Acting Assistant Attorney General
       Civil Division

By: */s/ Joseph A. Marutollo*
    JOSEPH A. MARUTOLLO
    Assistant United States Attorney
    Chief, Immigration Litigation
    United States Attorney's Office
    Eastern District of New York

       WILLIAM C. PEACHEY
       Director
       District Court Section
       Office of Immigration Litigation

       TIMOTHY M. BELSAN
       Deputy Chief
       National Security &
         Affirmative Litigation Unit
       District Court Section
       Office of Immigration Litigation

     By: */s/ Anthony D. Bianco*
       ANTHONY D. BIANCO
       Senior Litigation Counsel
       District Court Section
       Office of Immigration Litigation
       Civil Division
       U.S. Department of Justice
       P.O. Box 868, Ben Franklin Station
       Washington, DC 20044
       Telephone: (202) 305-8014
       E-mail: anthony.d.bianco@usdoj.gov

       *Counsel for the United States*

16

**A136**

# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

In the Matter of Revocation of the
    Naturalization of

Abderrahmane Farhane            **AFFIDAVIT OF GOOD CAUSE**
A040 415 851

       Pursuant to 28 U.S.C. § 1746, I, Joseph D. Cerciello, declare under penalty of perjury as follows:

I.     I am a Special Agent for Homeland Security Investigations ("HSI") for the U.S. Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE"). I have been assigned to the Federal Bureau of Investigation Joint Terrorism Task Force ("JTTF") since June 14, 2010. The JTTF is a multi-law enforcement agency that investigates, detects, prosecutes and removes terrorists and dismantles terrorist organizations. In this capacity, I have access to the official records of DHS, including the DHS alien file of Abderrahmane Farhane also known as Abdulrahman Farhane, also known as Abderr Farhan, also known as Abdar Ferhane ("Mr. Farhane") A040 415 851.

II.    I have examined Mr. Farhane's DHS alien file and documents filed with the court in Mr. Farhane's various criminal proceedings. Accordingly, I state, on information and belief, that the information set forth in this Affidavit of Good Cause is true and correct.

III.   On or about March 22, 2001, Mr. Farhane filed an Application for Naturalization ("N-400") pursuant to section 316(a) of the Immigration and Nationality Act ("Act"), 8 U.S.C. § 1427(a), with the Eastern Service Center of the former

1

**A138**

Immigration and Naturalization Services ("INS") [1]. Mr. Farhane was interviewed by Richard Edwards, an Adjudications Officer ("AO") of INS, on March 7, 2002 to determine his eligibility for naturalization.  Based on Mr. Farhane's written application and his testimony at the naturalization interview, AO Edwards approved his application for naturalization on March 7, 2002.  On April 19, 2002, and before he naturalized, Mr. Farhane completed and filed Form N-445, Notice of Naturalization Oath Ceremony, with the INS.  Consequently, Mr. Farhane was naturalized as a citizen of the United States on April 19, 2002, and was issued a Certificate of Naturalization, number 26743037.

IV.     Mr. Farhane illegally procured his naturalization because he could not have established that he was a person of good moral character during the five-year period immediately preceding the date he filed his application for naturalization. Mr. Farhane filed his application for naturalization on or about March 22, 2001. Accordingly, as an applicant for naturalization pursuant to section 316(a) of the Act, 8 U.S.C. § 1427(a), Mr. Farhane was required to prove that he was, and continued to be, a person of good moral character from on or about March 22, 1996, five years before he filed his application for naturalization, until the time he took the oath of allegiance on April 19, 2002 ("the statutory period").

---

[1] On November 25, 2002, the Homeland Security Act of 2002 was signed into law.  Pursuant to the provisions of that Act, the Department of Homeland Security (DHS) was formed on January 24, 2003.  The functions of the Immigration and Naturalization Service (INS) and all authorities with respect to those functions, transferred to DHS on March 1, 2003 and the INS was abolished on that date.   Investigative and enforcement functions formerly under the purview of INS and the United States Customs Service (USCS) were merged to form Immigration and Customs Enforcement (ICE) a component of DHS.  *See* Homeland Security Act of 2002, Pub. L. 107-296, §§ 451(b) & 471(a), 116 Stat. 2135, 2185, 2205 (Nov. 25, 2002); *see also* 68 Fed. Reg. 10922-01, 2003 WL 735330 (Mar. 6, 2003).

A.    Mr. Farhane could not have established that he was a person of good moral character because he committed unlawful acts that adversely reflected on his moral character.

1. Unless there are extenuating circumstances, an applicant for naturalization is precluded from establishing good moral character if, during the statutory period, he commits unlawful acts that adversely reflect upon his moral character.

2. Whether unlawful acts affect an applicant's moral character is a case-by-case determination, considering the standards of the average citizen in the applicant's community of residence.

3. From at least in or about November 2001 up to and including in or about June 2005, and during the statutory period, Mr. Farhane engaged in the crime of conspiracy to launder money from the United States to locations overseas to purchase weapons and communications equipment for jihadists in Afghanistan and Chechnya.

4. On November 6, 2006, Mr. Farhane appeared before the United States District Court for the Southern District of New York and entered a plea of guilty to two counts charged in *United States v. Farhane*, 05-cr-673, to include count one, which alleged from at least in or about November 2001, up to and including in or about June 2005, Mr. Farhane and others conspired to transfer money

3

**A140**

from the United States to locations overseas to purchase weapons and equipment for jihadists in Afghanistan and Chechnya.[2]  In his plea, Mr. Farhane admitted that he entered into an agreement with others in November and December 2001 to transfer money for mujahideen fighters in Afghanistan and Chechnya.  Mr. Farhane admitted he knew his behavior was unlawful.  Mr. Farhane also admitted to attending meetings with others involved in the agreement to discuss or otherwise take steps to transfer the money.

5. On April 23, 2007, the United States District Court for the Southern District of New York entered a judgment against Mr. Farhane, upon his plea of guilty, for in part committing the offense of conspiracy to commit money laundering, in violation of 18 U.S.C. § 371.[3]

6. Conspiracy to commit the crime of money laundering is an unlawful act that adversely reflects upon Mr. Farhane's good moral character as contemplated under 8 C.F.R. § 316.10(b)(3).

7. As evidenced by his post-naturalization conviction, there were no extenuating circumstances that could have mitigated the effect of

---

[2] Mr. Farhane also pleaded guilty to Making False Statements Involving International Terrorism, in connection with false statements Mr. Farhane made to the FBI on or about June 9, 2005, in connection with the FBI's investigation into Mr. Farhane's transferring of money outside of the United States to mujahideen in Afghanistan and Chechnya.

[3] Judgment was also entered with respect to Mr. Farhane having pleaded guilty to Making False Statements Involving International Terrorism, in connection with false statements Mr. Farhane made to the Federal Bureau of Investigation on or about June 9, 2005.

4

Mr. Farhane's actions on his ability to establish good moral character.

8. Since Mr. Farhane committed unlawful acts affecting his moral character within the period of time in which he was required to establish good moral character, he was precluded from establishing good moral character. Consequently, he was ineligible to naturalize and illegally procured his naturalization.

B.  Mr. Farhane could not have established that he was a person of good moral character because during his naturalization interview conducted under oath on March 7, 2002, he provided false testimony for the purpose of obtaining his naturalization.

1.  On March 7, 2002, Mr. Farhane appeared before AO Edwards for an interview regarding his application for naturalization.

2.  At the beginning of the naturalization interview, Mr. Farhane swore or affirmed that he would answer all questions truthfully.

3.  During the naturalization interview, and to adjudge his eligibility for naturalization, AO Edwards asked Mr. Farhane if he had ever knowingly committed any crime for which he had not been arrested.

4.  In response to this question, Mr. Farhane testified, under oath, that he had not knowingly committed any crime for which he had not been arrested.

5

5. At the end of the naturalization interview on March 7, 2002, Mr. Farhane signed his N-400 in the presence of AO Edwards, thereby swearing that everything in the application was true.

6. Mr. Farhane's testimony was false. From at least on or about November 2001 up to and including June 2005, and during the statutory period, Mr. Farhane conspired to commit the crime of money laundering. Mr. Farhane would later admit to committing this crime in criminal proceedings before the United States District Court for the Southern District of New York.

7. Because he provided false testimony to obtain naturalization, Mr. Farhane could not have established that he was a person of good moral character and, therefore, was ineligible to naturalize.

V. Mr. Farhane procured his naturalization by willful misrepresentation and concealment of material facts.

A. Mr. Farhane willfully misrepresented and concealed his criminal acts during the naturalization process.

1. In response to question 15 regarding his criminal history on the N-400, Mr. Farhane stated that he had never knowingly committed any crime for which he had not been arrested. Mr. Farhane certified under penalty of perjury that the content of his N-400 was true and correct.

6

**A143**

2.    During his naturalization interview on March 7, 2002, Mr. Farhane testified under oath that he had never knowingly committed any crime for which he had not been arrested.

3.    At the end of his interview under oath, Mr. Farhane swore or affirmed that the contents of his application were true.

4.    In response to question 3 on his N-445, regarding his criminal history after the date of his naturalization interview, Mr. Farhane stated that he had not knowingly committed any crime or offense for which he had not been arrested.  Mr. Farhane certified that his answers on his N-445 were true and correct.

5.    Mr. Farhane willfully misrepresented and concealed material facts throughout the naturalization process when he represented that he had never knowingly committed a crime for which he had not been arrested.

6.    In fact, Mr. Farhane's representations regarding his criminal activity were false because from at least on or about November 2001 up to and including June 2005, and during the statutory period, Mr. Farhane conspired to commit the crime of money laundering.  Mr. Farhane would later admit to committing this crime in criminal proceedings before the United States District Court for the Southern District of New York.

7

**A144**

      7.     He had committed these criminal acts prior to the time that he filed his N-400 and prior to his appearance for his naturalization interview.

    B.    Mr. Farhane's criminal acts were material to determining his eligibility to naturalize because they would have had the natural tendency to influence the INS decision whether to approve his application. In fact, Mr. Farhane's criminal activity precluded him from establishing good moral character.

    C.    Mr. Farhane procured his naturalization by concealing and misrepresenting his criminal activities.

VI.    Based on the facts outlined in paragraphs III through V, good cause exists to institute proceedings pursuant to section 340(a) of the Immigration and Nationality Act, 8 U.S.C. § 1451, to revoke Mr. Farhane's citizenship, and to cancel his certificate of naturalization.

VII.    Mr. Farhane's last known place of residence is 1834 W 13th St., Apt. 2 Brooklyn, N.Y. 11223.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 27 day of July, 2018.

                    Joseph D. Cerciello
                    Special Agent
                    Homeland Security Investigations
                    U.S. Immigration and Customs Enforcement
                    U.S. Department of Homeland Security

# Exhibit B

U.S. Department of Justice
Immigration and Naturalization Sen.

OMB #1115-0009
Application for Naturalization

## START HERE - Please Type or Print

**Part 1.   Information about you.**

| | |
|---|---|
| Family Name **ABDERRAHMANE** | Given Name **FARHANE**   Middle Initial **M** |

U.S. Mailing Address - Care of

| Street Number and Name | | Apt. # |
|---|---|---|
| City **Brooklyn** | County **kings** | |
| State **New York** | ZIP Code **11217** | |

| Date of Birth (month/day/year) ■/■/1954 | Country of Birth **Morroco** |
|---|---|
| Social Security # ■-■-7686 | A # 040415851 |

**Part 2.   Basis for Eligibility (check one)**    26 743037

a. ☒ I have been a permanent resident for at least five (5) years.
b. ☐ I have been a permanent resident for at least three (3) years and have been married to a United States Citizen for those three years.
c. ☐ I am a permanent resident child of United States citizen parent(s).
d. ☐ I am applying on the basis of qualifying military service in the Armed Forces of the U.S. and have attached completed forms N-426 and G-325B.
e. ☐ Other. (Please specify section of law)

**Part 3.   Additional information about you.**

| Date you became a permanent resident (month/day/year) **3/28/1995** | Port admitted with an immigrant visa or INS Office where granted adjustment of status. **JFK** |
|---|---|

Citizenship **Morroccan**

Name on alien registration card (if different than in Part 1)

Other names used since you became a permanent resident (including maiden name)

| Sex ☒ Male ☐ Female | Height **5'7"** | Marital Status ☐ Single ☒ Married ☐ Divorced ☐ Widowed |
|---|---|---|

Can you speak, read and write English ? ☐ No ☒ Yes

**Absences from the U.S.**

Have you been absent from the U.S. since becoming a permanent resident? ☐ No ☒ Yes

If you answered "Yes", complete the following. Begin with your most recent absence. If you need more room to explain the reason for an absence or to list more trips, continue on separate paper.

| Date left U.S. | Date returned | Did absence last 6 months or more? | Destination | Reason for trip |
|---|---|---|---|---|
| June,97 | July,97 | ☐ Yes ☒ No | Morroco | Family visit |
| June,99 | July,99 | ☐ Yes ☒ No | Morroco | Family visit |
| feb,00 | Mar, 00 | ☐ Yes ☒ No | Saudia | Piligrimage |
| | | ☐ Yes ☐ No | | |
| | | ☐ Yes ☐ No | | |
| | | ☐ Yes ☐ No | | |

Form N-400 (Rev. 07/17/91)N          **Continued on back.**

**FOR INS USE ONLY**

Returned

Resubmitted

Reloc Sent

Reloc Rec'd

☐ Applicant Interviewed

At Interview
☐ request naturalization ceremony at court

Remarks

**RECEIVED CENTER [...]**
**01 MAR 27 PM 4:09**

Action

**APPROVED**
MAR 07 2002
NYC 8871

To Be Completed by Attorney or Representative, if any
☐ Fill in box if G-28 is attached to represent the applicant
VOLAG#

ATTY State License #

**A147**

## Part 4. Information about your residences and employment.

A. List your addresses during the last five (5) years or since you became a permanent resident, whichever is less. Begin with your current address. If you need more space, continue on separate paper.

| Street Number and Name, City, State, Country, and Zip Code | Dates (month/day/year) | |
|---|---|---|
| | From | To |
| _____, Brooklyn, New York 11215 | Mar,99 | present |
| _____, Brooklyn, New York 11217 | Feb,96 | Mar,99 |
| 4107 New Utrecht Ave. Brooklyn, New York 11219 | Jan,95 | Feb,96 |

B. List your employers during the last five (5) years. List your present or most recent employer first. If none, write "None". If you need more space, continue on separate paper.

| Employer's Name | Employer's Address | Dates Employed (month/day/year) | | Occupation/position |
|---|---|---|---|---|
| | Street Name and Number - City, State and ZIP Code | From | To | |
| Alharamin inc. | 556 Atlantic Ave, Brooklyn new York, 11217 | july,96 | present | Manager |
| Al-qaraween Store | 554 Atlantic Ave, Brooklyn new york, 11217 | june,95 | july,96 | Manager |

## Part 5. Information about your marital history.

A. Total number of times you have been married ___1___. If you are now married, complete the following regarding your husband or wife.

| Family name | Ramzi | Given name | Malika | Middle initial | |
|---|---|---|---|---|---|

| Address | _____, Brooklyn, New York 11217 |
|---|---|

| Date of birth (month/day/year) | ██/██/1962 | Country of birth Morroco | Citizenship Moroccan |
|---|---|---|---|

| Social Security # | ██-██-0124 | A# (if applicable) 040415852 | Immigration status (if not a U.S. citizen) Resident Alien |
|---|---|---|---|

| Naturalization (if applicable) (month/day/year) | | Place (City, State) |
|---|---|---|

If you have ever previously been married or if your current spouse has been previously married, please provide the following on separate paper: Name of prior spouse, date of marriage, date marriage ended, how marriage ended and immigration status of prior spouse.

## Part 6. Information about your children.

B. Total Number of Children ___6___. Complete the following information for each of your children. If the child lives with you, state "with me" in the address column; otherwise give city/state/country of child's current residence. If deceased, write "Deceased" in the address column. If you need more space, continue on separate paper.

| Full name of child | Date of birth | Country of birth | Citizenship | A - Number | Address |
|---|---|---|---|---|---|
| Asmaa Farhane | █/81 | Morroco | Moroccan | 040415858 | With Me |
| Mohamed Farhane | █/83 | Morroco | Moroccan | 040415859 | With ME |
| Youssef Farhane | █/87 | Morroco | Moroccan | 040415860 | With ME |
| Elkhansaa Farhane | █/91 | Morroco | Moroccan | 040415861 | With Me |
| Asiyah Farhane | █/99 | U.S.A | U.S.A | NA | With Me |
| _____ FARHANE | ██ on | USA | USA | | With me |

Form N-400 (Rev 07/17/91)N            *Continued on next page*

A148

*Continued on back*

## Part 7.  Additional eligibility factors.

Please answer each of the following questions.  If your answer is "Yes", explain on a separate paper.

1.  Are you now, or have you ever been a member of, or in any way connected or associated with the Communist Party, or ever knowingly aided or supported the Communist Party directly, or indirectly through another organization, group or person, or ever advocated, taught, believed in, or knowingly supported or furthered the interests of communism?   ☐ Yes  ☒ No

2.  During the period March 23, 1933 to May 8, 1945, did you serve in, or were you in any way affiliated with, either directly or indirectly, any military unit, paramilitary unit, police unit, self-defense unit, vigilante unit, citizen unit of the Nazi party or SS, government agency or office, extermination camp, concentration camp, prisoner of war camp, prison, labor camp, detention camp or transit camp, under the control or affiliated with:

    a.  The Nazi Government of Germany?   ☐ Yes  ☒ No

    b.  Any government in any area occupied by, allied with, or established with the assistance or cooperation of, the Nazi Government of Germany?   ☐ Yes  ☒ No

3.  Have you at any time, anywhere, ever ordered, incited, assisted, or otherwise participated in the persecution of any person, because of race, religion, national origin, or political opinion?   ☐ Yes  ☒ No

4.  Have you ever left the United States to avoid being drafted into the U.S. Armed Forces?   ☐ Yes  ☒ No

5.  Have you ever failed to comply with Selective Service laws?   ☐ Yes  ☒ No

    If you have registered under the Selective Service laws, complete the following information:

    Selective Service Number:_____ Date Registered:_____

    If you registered before 1978, also provide the following:

    Local Board Number:_____ Classification:_____

6.  Did you ever apply for exemption from military service because of alienage, conscientious objections or other reasons?   ☐ Yes  ☒ No

7.  Have you ever deserted from the military, air or naval forces of the United States?   ☐ Yes  ☒ No

8.  Since becoming a permanent resident, have you ever failed to file a federal income tax return?   ☐ Yes  ☒ No

9.  Since becoming a permanent resident, have you filed a federal income tax return as a nonresident or failed to file a federal return because you considered yourself to be a nonresident?   ☐ Yes  ☒ No

10. Are deportation proceedings pending against you, or have you ever been deported, or ordered deported, or have you ever applied for suspension of deportation?   ☐ Yes  ☒ No

11. Have you ever claimed in writing, or in any way to be a United States citizen?   ☐ Yes  ☒ No

12. Have you ever:

    a.  been a habitual drunkard?   ☐ Yes  ☒ No

    b.  advocated or practiced polygamy?   ☐ Yes  ☒ No

    c.  been a prostitute or procured anyone for prostitution?   ☐ Yes  ☒ No

    d.  knowingly and for gain helped any alien to enter the U.S. illegally?   ☐ Yes  ☒ No

    e.  been an illicit trafficker in narcotic drugs or marijuana?   ☐ Yes  ☒ No

    f.  received income from illegal gambling?   ☐ Yes  ☒ No

    g.  given false testimony for the purpose of obtaining any immigration benefit?   ☐ Yes  ☒ No

13. Have you ever been declared legally incompetent or have you ever been confined as a patient in a mental institution?   ☐ Yes  ☒ No

14. Were you born with, or have you acquired in same way, any title or order of nobility in any foreign State?   ☐ Yes  ☒ No

15. Have you ever:

    a.  knowingly committed any crime for which you have not been arrested?   ☐ Yes  ☒ No

    b.  been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance excluding traffic regulations?   ☐ Yes  ☒ No

(If you answer yes to 15, in your explanation give the following information for each incident or occurrence the city, state, and country, where the offense took place, the date and nature of the offense, and the outcome or disposition of the case).

*No Vote* ③

*No*  🔲

*No*

## Part 8.  Allegiance to the U.S.

If your answer to any of the following questions is "NO", attach a full explanation:

1.  Do you believe in the Constitution and form of government of the U.S.?   ☒ Yes  ☐ No

2.  Are you willing to take the full Oath of Allegiance to the U.S.? (see instructions)   ☒ Yes  ☐ No

3.  If the law requires it, are you willing to bear arms on behalf of the U.S.?   ☒ Yes  ☐ No

4.  If the law requires it, are you willing to perform noncombatant services in the Armed Forces of the U.S.?   ☒ Yes  ☐ No

5.  If the law requires it, are you willing to perform work of national importance under civilian direction?   ☒ Yes  ☐ No

Form N-400 (Rev. 07/17/91)N

*Continued on back*

## Part 9. Memberships and organizations.

A. List your present and past membership in or affiliation with every organization, association, fund, foundation, party, club, society, or similar group in the United States or in any other place. Include any military service in this part. If none, write "none". Include the name of organization, location, dates of membership and the nature of the organization. If additional space is needed, use separate paper.

None

## Part 10. Complete only if you checked block " C " in Part 2.

How many of your parents are U.S. citizens?   ☐ One   ☐ Both   (Give the following about one U.S. citizen parent)

| Family Name | Given Name | Middle Name |
|---|---|---|
| Address | | |

Basis for citizenship:
☐ Birth
☐ Naturalization Cert. No.

Relationship to you (check one):   ☐ natural parent   ☐ adoptive parent
☐ parent of child legitimated after birth

If adopted or legitimated after birth, give date of adoption or, legitimation: (month,day,year)_____

Does this parent have legal custody of you?   ☐ Yes   ☐ No

*(Attach a copy of relating evidence to establish that you are the child of this U.S. citizen and evidence of this parent's citizenship.)*

## Part 11. Signature. *(Read the information on penalties in the instructions before completing this section.)*

I certify or, if outside the United States, I swear or affirm, under penalty of perjury under the laws of the United States of America that this application, and the evidence submitted with it, is all true and correct. I authorize the release of any information from my records which the Immigration and Naturalization Service needs to determine eligibility for the benefit I am seeking.

Signature _Laitana Abdemahmane_   Date March,20,2001

*Please Note: If you do not completely fill out this form, or fail to submit required documents listed in the instructions, you may not be found eligible for naturalization and this application may be denied.*

## Part 12. Signature of person preparing form if other than above. *(Sign below)*

I declare that I prepared this application at the request of the above person and it is based on all information of which I have knowledge.

Signature _____   Print Your Name Nasr Hussain   Date March,20,2001

Firm Name and Address   Amana Printing, 6810 5th Ave, Brooklyn, New York 11220

---

### DO NOT COMPLETE THE FOLLOWING UNTIL INSTRUCTED TO DO SO AT THE INTERVIEW

I swear that I know the contents of this application, and supplemental pages 1 through __0__, that the corrections, numbered 1 through __5__, were made at my request, and that this amended application, is true to the best of my knowledge and belief.

X _ABDERRAHMANE FARHANE_
*(Complete and true signature of applicant)*

Subscribed and sworn to before me by the applicant.

_K. Edwards_ 03-01-02
*(Examiner's Signature )*   Date

# Exhibit C

U.S. Department of Justice
Immigration and Naturalization Service

OMB No. 1115-~~~~

Notice of Naturalization Oath Ceremony

AR # *N4641F8S1*

Date 3-7-02

*ABDERRAHMANE. FARHANE*

H - 1

You are hereby notified to appear for a Naturalization Oath Ceremony on:   **APRIL 19, 2002**

at:   **JACOB JAVITS CONVENTION CENTER**
**35TH STREET & 11TH AVENUE  ENTRANCE**
**NEW YORK, NY 10001**

Please report promptly at   **4:00 PM**

You must bring the following with you:

☒ This letter, WITH ALL OF THE QUESTIONS ON THE OTHER SIDE ANSWERED IN INK OR ON A TYPEWRITER.
☒ Alien Registration Card.
☒ Reentry Permit, or Refugee Travel Document.
☒ Any Immigration documents you may have.
☒ If the naturalization application is on behalf of your child (children), bring your child (children).
☐ Other

Proper attire should be worn.

If you cannot come to this ceremony, return this notice immediately and state why you cannot appear.  In such case, you will be sent another notice of ceremony at a later date.  You must appear at an oath ceremony to complete the naturalization process.

Form N-445 (Rev. 1/8/82)          (SEE OTHER SIDE)

In connection with your application for naturalization, please answer each of the questions by checking "Yes" or "No". You should answer these questions the day you are to appear for the citizenship oath ceremony. These questions refer to actions since the date you were first interviewed on your Application for Naturalization. They do not refer to anything that happened before that interview.

After you have answered every question, sign your name and fill in the date and place of signing, and provide your current address.

You must bring this completed questionnaire with you to the oath ceremony as well as the documents indicated on the front, and give them to the Immigration employee at the oath ceremony. You may be questioned further on your answers at that time.

| AFTER the date you were first interviewed on your Application for Naturalization, Form N-400: | ANSWERS |
|---|---|
| 1. Have you married, or been widowed, separated, or divorced? (If "Yes" please bring documented proof of marriage, death, separation or divorce.) | 1. ☐ Yes ☑ No |
| 2. Have you traveled outside the United States? | 2. ☐ Yes ☑ No |
| 3. Have you knowingly committed any crime or offense, for which you have not been arrested; or have you been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance, including traffic violations? | 3. ☐ Yes ☑ No |
| 4. Have you joined any organization, including the Communist Party, or become associated or connected therewith in any way? | 4. ☐ Yes ☑ No |
| 5. Have you claimed exemption from military service? | 5. ☐ Yes ☑ No |
| 6. Has there been any change in your willingness to bear arms on behalf of the United States; to perform non-combatant service in the armed forces of the United States; to perform work of national importance under civilian direction, if the law requires it? | 6. ☐ Yes ☑ No |
| 7. Have you practiced polygamy; received income from illegal gambling; been a prostitute, procured anyone for prostitution or been involved in any other unlawful commercialized vice; encouraged or helped any alien to enter the United States illegally; illicitly trafficked in drugs or marihuana; given any false testimony to obtain immigration benefits; or been a habitual drunkard? | 7. ☐ Yes ☑ No |

I certify that each of the answers shown above were made by me or at my direction, and that they are true and correct.

Signed at     NEW YORK          NY          , on     4/19/02
               (City and State)                         (Date)

_Jockeme Abdematasher_                                    BKLYN NY 11217.
(Full Signature)                          (Full Address and ZIP Code)

Authority for collection of the information requested on Form N-445 is contained in Sections 101(f), 316, 332, 335 and 336 of the Immigration and Nationality Act (8 U.S.C. 1101 (f), 1427, 1443, 1446 and 1447). Submission of the information is voluntary. The principal purpose for requesting the information are to enable examiners of the Immigration and Naturalization Service to determine an applicant's eligibility for naturalization. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: U.S. Department of Justice, Immigration and Naturalization Service (Room 5304) Washington, DC 20536; and to the Selective Service System, the Department of State, the Department of the Treasury, the Department of Transportation, Central Intelligence Agency, Interpol and individuals and organizations in the processing of any application for naturalization, or during the course of investigation to elicit further information required by the Immigration and Naturalization Service to carry out its functions. Information solicited which indicates a violation or potential violation of law, whether civil, criminal, or regulatory in nature, may be referred, as a routine use, to the appropriate agency, whether federal, state, local or foreign, charged with the responsibility of investigating, enforcing or prosecuting such violations. Failure to provide all or any of the requested information may result in a denial of the application for naturalization.

Public Reporting burden for this collection of information is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: U.S. Department of Justice, Immigration and Naturalization Service (Room 5304), Washington, DC 20536; and to the Office of Management and Budget, Paperwork Reduction Project OMB No. 1115-0052, Washington, DC 20503.

*U.S.GPO:1800-417-FDM2K04

# Exhibit D

Case 1:18-cv-04947-MKB Document 1 Filed 08/13/18 Page 35 of 72 PageID #: 35



No. 26743037

**CERTIFICATE OF NATURALIZATION**

*Personal description of holder as of date of naturalization:*

*Date of birth:* 1954

*Sex:* MALE

*Height:* 5 feet 7 inches

*Marital status:* MARRIED

*Country of former nationality:* MOROCCO

INS Registration No. A04045851

*I certify that the description given is true, and that the photograph affixed hereto is a likeness of me.*

_____
*(Complete and true signature of holder)*

*Be it known that, pursuant to an application filed with the Attorney General*

*at:* NEW YORK, NEW YORK

*The Attorney General having found that:*

**ABDERRAHMANE FARHANE**

*then residing in the United States, intended to reside in the United States when so required by the Naturalization Laws of the United States, and had in all other respects complied with the applicable provisions of such naturalization laws and was admitted to be admitted to citizenship, such person having taken the oath of allegiance in a ceremony conducted by the*

**U.S. IMMIGRATION AND NATURALIZATION SERVICE**

*at:* NEW YORK, NEW YORK

*on:* APR 13 ...

*that such person is admitted as a citizen of the United States of America.*

_____
*Commissioner of Immigration and Naturalization*

IT IS PUNISHABLE BY U.S. LAW TO COPY, PRINT OR PHOTOGRAPH THIS CERTIFICATE, WITHOUT LAWFUL AUTHORITY.

FORM N-550 REV. 6-91

A155

# Exhibit E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

           -v.-                     :    INFORMATION

ABDULRAHMAN FARHANE,                :    S3 05 Cr. 673 (LAP)
     a/k/a "Abderr Farhan,"
                                    :
              Defendant.            :
                                    :

- - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED

NOV 0 9 2006

<u>COUNT ONE</u>

The United States Attorney charges:

          1.   From at least in or about November 2001, up to and
including in or about June 2005, in the Southern District of New
York and elsewhere, ABDULRAHMAN FARHANE, a/k/a "Abderr Farhan," the
defendant, and others known and unknown, unlawfully and knowingly
combined, conspired, confederated and agreed together and with each
other, to violate Section 1956(a)(2)(A) of Title 18, United States
Code.

          2.   It was a part and an object of the conspiracy that
ABDULRAHMAN FARHANE, a/k/a "Abderr Farhan," the defendant, and
others known and unknown, would transport, transmit and transfer,
and attempt to transport, transmit and transfer, a monetary
instrument and funds from a place in the United States to and
through a place outside the United States with the intent to
promote the carrying on of specified unlawful activity, to wit,
ABDULRAHMAN FARHANE, a/k/a "Abderr Farhan," agreed with others to

assist another individual to transfer money from the United States
to locations overseas to purchase weapons and communications
equipment for jihadists in Afghanistan and Chechnya.

(Title 18, United States Code, Section 371.)

<u>COUNT TWO</u>

The United States Attorney further charges:

3.     On or about June 9, 2005, in the Southern District
of New York and elsewhere, ABDULRAHMAN FARHANE, a/k/a "Abderr
Farhan," the defendant, in a matter within the jurisdiction of the
executive branch of the Government of the United States, to wit, an
international and domestic terrorism investigation of, among other
things, fundraising, financing, and recruitment, being conducted by
the Federal Bureau of Investigation ("FBI"), unlawfully, willfully,
and knowingly falsified, concealed, and covered up by trick,
scheme, and device, material facts, and made materially false,
fictitious, and fraudulent statements and representations, to wit,
in response to questions from the FBI, FARHANE falsely told a
special agent of the FBI that (1) he had never met in-person with
a confidential source of the FBI acting in an undercover capacity
("CS-1"), and one of FARHANE's co-conspirators ("CC-1"), a target
of a terrorism-related investigation; (2) he had given the
telephone number of CC-1 to CS-1 only because CC-1 ran a "Western

- 2 -

Union"-type business and could save CS-1 money on overseas transfers; and (3) he had never had any conversations with CS-1 and/or CC-1 regarding sending money or equipment to jihadists overseas.

(Title 18, United States Code, Section 1001(a)(2).)

MICHAEL J. GARCIA
United States Attorney

– 3 –

**A159**

Case: 25-2937, 11/18/2025, DktEntry: 1.1, Page 204 of 237

Case 1:18-cv-04347-MKB   Document 1   Filed 08/13/18   Page 40 of 72 PageID #: 40
Case 1:05-cr-00673-LAP   Document 85   Filed 11/09/06   Page 4 of 4

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v -

**ABDULRAHMAN FARHANE,**

**Defendant.**

## INFORMATION

S3 02 Cr. 673 (LAP)

18 U.S.C. § 371, 18 U.S.C. § 1001

MICHAEL J. GARCIA
United States Attorney.

# Exhibit F

AO 245B   (Rev. 06/05) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

| SOUTHERN | District of | NEW YORK |
| --- | --- | --- |

| UNITED STATES OF AMERICA | JUDGMENT IN A CRIMINAL CASE |
| --- | --- |
| **V.** | |

|  | Case Number: | 1:S305CR00673-04 (LAP) |
| --- | --- | --- |
| ABDULRAHMAN FARHANE | USM Number: | 58376-054 |
|  | Michael Hueston |  |
|  | Defendant's Attorney | |

## THE DEFENDANT:

X pleaded guilty to count(s)     One and Two

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
| --- | --- | --- | --- |
| 18 USC 371 | Conspiracy to Commit Money Laundering | 6/05 | One |
| 18 USC 1001(a)(2) | Making False Statements Involving International Terrorism | 6/9/05 | Two |

The defendant is sentenced as provided in pages 2 through ____6____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

X Count(s)   All Open Counts   ☐ is   X are   dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/23/07

April 16, 2007
Date of Imposition of Judgment

*Loretta A. Preska*
Signature of Judge

Loretta A. Preska, U.S.D.J.
Name and Title of Judge

*April 23, 2007*
Date

Case 1:05-cr-00673-LAP   Document 133   Filed 04/23/07   Page 2 of 6

AO 245B    (Rev. 06/05) Judgment in Criminal Case
           Sheet 2 — Imprisonment

| | | Judgment · Page | 2 | of | 6 |

DEFENDANT:       ABDULRAHMAN FARHANE
CASE NUMBER:     1:S305CR00673-04 (LAP)

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a
total term of:      60 months on count one and 96 months on count two to run consecutively for a total term of 156 months

X   The court makes the following recommendations to the Bureau of Prisons:
    That the defendant be designated to a facility as close as possible to NYC and that he be afforded educational and vocational
    training as well as medical treatment.

☐   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

    ☐   at _____   ☐ a.m.   ☐ p.m.   on _____ .

    ☐   as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐   before 2 p.m. on _____ .

    ☐   as notified by the United States Marshal.

    ☐   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____   to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**A163**

AO 245B     (Rev. 06/05) Judgment in a Criminal Case
            Sheet 3 — Supervised Release

|  |  | Judgment  Page    3    of    6. |
|---|---|---|

DEFENDANT:        ABDULRAHMAN FARHANE
CASE NUMBER:      1:S305CR00673-04 (LAP)

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :     2 years on counts one and two to run


concurrently


    The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of

    future substance abuse. (Check, if applicable.)

X   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

X   The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐   The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐   The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

    If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

    The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

**A164**

Case 1:05-cr-00673-LAP   Document 133   Filed 04/23/07   Page 4 of 6

AO 245B   (Rev 06 05) Judgment in a Criminal Case
Sheet 3C -  Supervised Release

| | | Judgment—Page | 4 | of | 6 |

DEFENDANT:      ABDULRAHMAN FARHANE
CASE NUMBER:    1:S305CR00673-04 (LAP)

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall participate in a mental health program approved by the U.S. Probation Office. The defendant shall continue to take any prescribed medication unless otherwise instructed by the health care provider. The defendant may be required to contribute to the costs of services rendered not covered by third-party payment, if the defendant has the ability to pay. The Court authorizes the release of available psychological and psychiatric evaluations and reports to the health care provider.

2. The defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
           Sheet 5    Criminal Monetary Penalties

Judgment — Page ___5___ of ___6___

DEFENDANT:           ABDULRAHMAN FARHANE
CASE NUMBER:         1:S305CR00673-04 (LAP)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 200.00 | $ | $ |

☐  The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be
   after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

   If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in
   the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid
   before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| **TOTALS** | $ _____ $0.00 | $ _____ $0.00 | |

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the
   fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject
   to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

   ☐  the interest requirement is waived for the    ☐  fine   ☐  restitution.

   ☐  the interest requirement for the    ☐  fine    ☐  restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after
September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Case 1:05-cr-00673-LAP   Document 133   Filed 04/23/07   Page 6 of 6

Judgment — Page ___6___ of ___6___

DEFENDANT:        ABDULRAHMAN FARHANE
CASE NUMBER:    1:S305CR00673-04 (LAP)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A ☒ Lump sum payment of $ __200.00__ due immediately, balance due

     ☐ not later than _____ , or
     ☐ in accordance ☐ C, ☐ D, ☐ E, or ☐ F below; or

B ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

     Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

**A167**

# Exhibit G

1

```
6B9FFARP                    Plea

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                      05 CR 673 (LAP)

 5   ABDULRAHMAN FARHANE,

 6                   Defendant.

 7   ------------------------------x

 8                                      New York, N.Y.
                                        November 6, 2006
 9                                      4:30 p.m.

10
     Before:
11
                    HON. LORETTA A. PRESKA,
12
                                        District Judge
13

14                      APPEARANCES

15   MICHAEL J. GARCIA
          United States Attorney for the
16        Southern District of New York
     JENNIFER RODGERS
17        Assistant United States Attorney

18   MICHAEL HUESTON
          Attorney for Defendant
19

20   Also Present:

21   Fouad Elshiekh, Arabic interpreter

22

23

24

25
```

**A169**

2

6B9FFARP                        Plea

1           (Case called)

2           (In open court)

3           THE COURT:  United States against Farhane.  Is the

4    government ready?

5           MS. RODGERS:  Government is ready.  Jennifer Rodgers

6    for the government.  With me is Brian Murphy with the FBI.

7           THE COURT:  Good afternoon.  For the defendant?

8           MR. HUESTON:  Good afternoon, your Honor.  Michael

9    Hueston for the defense.

10          THE COURT:  Good afternoon, Mr. Hueston.  Is my

11   understanding correct that your client wishes to withdraw his

12   not guilty plea and enter a plea of guilty to the superseding

13   information?

14          MR. HUESTON:  That's correct.

15          (Defendant sworn)

16          THE COURT:  Thank you, sir.  Do you now understand

17   that you are now under oath and if you answer my questions

18   falsely, your answers may later be used against you in a

19   prosecution for perjury or the making of a false statement?

20          THE DEFENDANT:  Yes.

21          THE COURT:  How old are you, sir?

22          THE DEFENDANT:  52 years right now.

23          THE COURT:  And where were you born?

24          THE DEFENDANT:  In Morocco.

25          THE COURT:  Are you a citizen of the United States?

**A170**

3

6B9FFARP                    Plea

1              THE DEFENDANT:  Yes.

2              THE COURT:  How far did you go in school, sir?

3              THE DEFENDANT:  I haven't finished high school, your

4      Honor.

5              THE COURT:  Are you able to understand me with the

6      assistance of our interpreter?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Are you currently or have you recently

9      been under the care of a doctor or a psychiatrist?

10             THE DEFENDANT:  No, but I take some medicines, your

11     Honor.

12             THE COURT:  All right, sir.  Are you currently under

13     the influence of any substance at all, such as alcohol, drugs

14     or any medicine that might affect your ability to understand

15     what you're doing here in court today?

16             THE DEFENDANT:  No.

17             THE COURT:  All right.  Have you been hospitalized or

18     treated recently for alcoholism, narcotic addiction or any

19     other type of drug abuse?

20             THE DEFENDANT:  No.

21             THE COURT:  Have you ever been treated for any form of

22     mental illness?

23             THE DEFENDANT:  Long time ago, your Honor.

24             THE COURT:  How long, sir?

25             THE DEFENDANT:  When I was in Morocco, your Honor, I

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A171

4

6B9FFARP                    Plea

1   had a problem.
2          THE COURT:  All right, could you give me a sense of
3   how many years ago that was, sir?
4          THE DEFENDANT:  That was about in 1981, your Honor.
5          THE COURT:  All right, sir.  Do you have the same
6   problem now?
7          THE DEFENDANT:  Sometimes I get that feeling that I
8   had in 1981, but not all the time.
9          THE COURT:  All right.  Did you receive a diagnosis in
10  1981, sir?
11         THE DEFENDANT:  They said to me that I had neurotic
12  shock.
13         THE COURT:  All right, sir.  Do you feel well enough
14  today to understand what you're doing here in court?
15         THE DEFENDANT:  Yes.
16         THE COURT:  Mr. Hueston, do you have any question
17  whatsoever about your client's competency?
18         MR. HUESTON:  No, I do not, your Honor.
19         THE COURT:  Very well.  Thank you, sir.
20         Mr. Farhane, have you received a copy of the
21  information against you, S3 05 criminal 673?
22         THE DEFENDANT:  Yes.
23         THE COURT:  And have you gone over it with your
24  attorney?
25         THE DEFENDANT:  Yes.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

**A172**

5

6B9FFARP                    Plea

1          THE COURT:  And has your attorney explained the

2    charges against you?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Now, do you understand, sir, that you have

5    the right to have your case presented to the Grand Jury for

6    indictment?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And do you understand that you are under

9    no obligation to give up that right?

10          THE DEFENDANT:  I know there is nobody forcing me to

11   waive my right.

12          THE COURT:  And do you understand, sir, that if you

13   decide not to waive your right, if the government wishes to

14   prosecute you, the government would have to present your case

15   to the Grand Jury, which might or might not indict you?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And do I correctly understand, sir, that

18   after conferring with Mr. Hueston, you've decided that it's in

19   your best interest to waive indictment in this situation?

20          THE DEFENDANT:  Yes.

21          THE COURT:  And am I correct, sir, that you did so in

22   this document, which I'm holding up, which is dated November 9,

23   2006?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And is that your quite distinctive

6

6B9FFARP                        Plea

1    signature, sir, right there on the top line?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Finding Mr. Farhane has voluntarily and

4    knowingly waived his right to have his case presented to the

5    Grand Jury.

6              Now, Mr. Farhane, I asked you a moment ago if your

7    lawyer had explained to you the charges against you in the

8    superseding information, and you told me that he has.  Is that

9    right, sir?

10             THE DEFENDANT:  Correct, your Honor.

11             THE COURT:  May I ask the government to summarize the

12   elements the government would have to prove if Mr. Farhane

13   decided to go to trial on these charges?

14             MS. RODGERS:  Certainly, your Honor.  In Count One,

15   the government would have to prove that the defendant agreed

16   with another person to commit a crime, the object of which was

17   to transmit or transfer money from a place inside the U.S. to a

18   place outside the U.S. with the intent to promote a specified

19   unlawful activity; that the defendant participated in this

20   conspiracy knowingly and voluntarily, and that an overt act was

21   committed in furtherance of that conspiracy.

22             With respect to the second count, the government would

23   have to prove that the defendant made a material statement or

24   representation that that statement or representation was false;

25   that this false statement was made knowingly and willfully, and

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

**A174**

7

6B9FFARP                    Plea

1    that the statement or representation was made in a matter
2    within the jurisdiction of the United States government.
3              THE COURT:  Okay.  Mr. Farhane, do you understand that
4    those are the elements which the government would have to prove
5    if you decided to go to trial on the information?
6              THE DEFENDANT:  Yes.
7              THE COURT:  Counsel, do I correctly understand that
8    there is an agreement between the defendant and the government,
9    which is dated and signed November 9, 2006?
10             MR. HUESTON:  Yes, your Honor.
11             THE COURT:  May I ask the government to summarize,
12   please, the terms and conditions of the agreement?
13             MS. RODGERS:  Certainly, your Honor.
14             The agreement provides that the government will accept
15   a guilty plea from the defendant on Counts One and Two; Count
16   One charging the defendant with conspiring to violate the laws
17   of the United States, and Count Two charging the defendant with
18   making materially false statements.  The agreement provides
19   that the total maximum sentence of incarceration on Counts One
20   and Two is thirteen years imprisonment; Count One carrying a
21   maximum term of five years, and Count Two carrying a maximum
22   term of eight years.  In addition, each count carries a maximum
23   fine of $250,000 and a $100 special assessment.
24             The defendant also agrees in the agreement to waive
25   any objections or defenses as to venue and to plead guilty to

A175

8

6B9FPARP                    Plea

1   the charges in the information here in the Southern District of

2   New York.

3        The agreement provides that in exchange for the guilty

4   plea, the defendant will not be further prosecuted for

5   participating in the conspiracy charged in Count One and for

6   making the materially false statements charged in Count Two.

7   The parties also stipulate to the applicable guidelines range

8   calculations, namely, that the offense level for Count One is

9   42, the offense level for Count Two is 26 and the combined

10  offense level is 42, and after acceptance of responsibility,

11  the final guideline offense level is 39.

12       The parties agree that the defendant's criminal

13  history category is VI, because of the terrorism enhancement,

14  which leads to a sentencing guideline range of what would be

15  360 months to life, but because of the statutory maximums in

16  place, results in a stipulated sentence of 156 months.

17       The parties agree that no departures are warranted,

18  and that neither party will seek any departures, and that the

19  stipulated sentence constitutes a reasonable sentence.   The

20  parties also agree, however, that either party may seek a

21  sentence lower than the stipulated sentence, based upon the 18

22  U.S.C. Section 3553(a) factors.

23       The parties agree that the sentence to be imposed on

24  the defendant is determined solely by the Court, and that the

25  sentencing guidelines are not binding on the Court.   The

9

6B9FFARP                    Plea

1   defendant has agreed that --

2          THE COURT:  The sentencing guidelines are not binding

3   on the Court?

4          MS. RODGERS:  That's correct, your Honor.

5          THE COURT:  Ah.  All right.

6          MS. RODGERS:  The defendant has agreed that he will

7   not file a direct appeal or litigate under 28 U.S.C. Section

8   2255 or 2241 any sentence at or below the stipulated sentence.

9   The defendant also agrees that he has accepted this agreement

10  and decided to plead guilty because he is in fact guilty and

11  waives any and all right to withdraw his plea or attack his

12  conviction on the grounds that the government has failed to

13  produce any discovery material or Jenks Act material or Brady

14  material except for information establishing the defendant's

15  factual innocence.

16         The defendant also waives any right the defendant may

17  have to require DNA testing of any physical evidence in the

18  government's possession.  Those are the essential terms, your

19  Honor.

20         THE COURT:  Thank you.

21         Mr. Farhane, are those the terms and conditions of the

22  agreement as you understand them?

23         THE DEFENDANT:  Yes.

24         THE COURT:  And do you understand, sir, that in this

25  agreement you and the government have agreed to a stipulated

10

6B9FFARP                        Plea

1    sentence of 156 months?  Do you understand that, sir?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And do you understand, sir, that in the

4    agreement you and the government agreed that neither side will

5    seek any departure from that sentence, and that neither a

6    downward nor an upward departure from that stipulated sentence

7    is warranted.

8              THE DEFENDANT:  Yes.

9              THE COURT:  Do you also understand that in this

10   agreement the parties agree that the stipulated sentence of 156

11   months would be a reasonable sentence?  And I'm looking at page

12   five, sir.

13             THE DEFENDANT:  Yes.

14             THE COURT:  Do you also understand, sir, that in this

15   agreement, the parties agree that either party may seek a

16   sentence lower than the stipulated sentence based on the

17   factors set out in the statute, in 18 United States Code

18   Section 3553(a)?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Do you also understand, sir, that in this

21   agreement, you agree that you will not appeal or otherwise

22   litigate a sentence of 156 months or lower?

23             THE DEFENDANT:  Yes.

24             THE COURT:  All right, sir, now, have you had enough

25   time to review the agreement, to go over it with Mr. Hueston

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

**A178**

11

6B9FFARP                    Plea

1    and to have all your questions answered?

2              THE DEFENDANT:  Yes, yes.

3              THE COURT:  I'm holding up the original of the

4    agreement, sir, and turning to the last page.  Is this, again,

5    your very distinctive signature here on the top line where I'm

6    pointing under the words "agreed and consented to"?

7              THE DEFENDANT:  Yes.  Yes.

8              THE COURT:  And do I correctly understand that your

9    willingness to offer to plead guilty is in part a result of

10   this agreement between you and the government?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Counsel, are there any additional

13   agreements between the defendant and the government that are

14   not set forth in the written plea agreement?

15             MS. RODGERS:  No, your honor.

16             MR. HUESTON:  Yes, your Honor, if you could repeat the

17   part of the provision of the agreement concerning the 3553(a)

18   factors?

19             THE COURT:  Yes, sir.  Mr. Farhane, do you understand

20   that in this agreement you and the government have agreed that

21   either side may seek a sentence lower than the stipulated

22   sentence of 156 months, based on the factors that are set out

23   in the statute, and the statute is found at 18 United States

24   Code Section 3553(a)?

25             THE DEFENDANT:  I understand now, your Honor.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

**A179**

12

6B9FFARP                    Plea

1            THE COURT:  All right.  Did you have enough time to

2     talk with Mr. Hueston just now?

3            THE DEFENDANT:  Yes, your Honor.  Thank you very much.

4            THE COURT:  Yes, sir.

5            MR. HUESTON:  Your Honor, to answer your question,

6     there are no other agreements.  Also, for the record, I did

7     have the plea agreement translated into Arabic for Mr. Farhane.

8     There was one modification that was made today, but it was just

9     about the venue aspect.

10            THE COURT:  About the venue?

11            MR. HUESTON:  The venue portion was not in the plea

12     that had been given to me by the government, but in every other

13     respect it was the exact same document.  That was translated

14     for my client and we went over it.

15            THE COURT:  Very well.  Thank you, Mr. Hueston.  Maybe

16     I'll just ask Mr. Farhane about that, to be sure.

17            Mr. Farhane, do you also understand that in this

18     agreement, you have agreed to waive any right you might have to

19     challenge your being prosecuted in this district, rather than

20     some other district?  Do you understand that, sir?

21            THE DEFENDANT:  Yes.

22            THE COURT:  All right.  And again, you've had enough

23     time to go over it with Mr. Houston, is that right, sir?

24            THE DEFENDANT:  Yes, your Honor.  Thank you.

25            THE COURT:  Very well.  Then the agreement is

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

6B9FFARP                    Plea

1    acceptable to the Court.

2              Now, Mr. Farhane, have you been induced to offer to

3    plead guilty as a result of any fear, pressure, threat or force

4    of any kind?

5              THE DEFENDANT:  No.

6              THE COURT:  Have you been induced to offer to plead

7    guilty as a result of any statements by anyone, other than in

8    your written plea agreement, to the effect that you would get

9    special treatment or special leniency or some kind of special

10   consideration if you pleaded guilty rather than going to trial?

11             THE DEFENDANT:  No.

12             THE COURT:  Do you understand, sir, that you have the

13   right to plead not guilty and to proceed to trial?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Do you understand that if you do not plead

16   guilty, you have a right to a speedy and public trial by a jury

17   of twelve persons?

18             THE DEFENDANT:  Yes, I understand.

19             THE COURT:  Do you understand that you have the right

20   to be represented by an attorney at trial and at every stage of

21   the proceedings, including an appeal, and if you cannot afford

22   an attorney, one will be appointed to represent you free of

23   charge?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Do you also understand, sir, that if your

**A181**

14

6B9FFARP                      Plea

1   plea of guilty is accepted, there will be no further trial of

2   any kind?

3            THE DEFENDANT:  I understand, your Honor, yes.

4            THE COURT:  Do you understand that if you pleaded not

5   guilty and went to trial, that upon such a trial, you would be

6   presumed innocent unless and until the government proved your

7   guilt beyond a reasonable doubt to all twelve jurors?

8            THE DEFENDANT:  Yes, your Honor.  I understand.

9            THE COURT:  Do you understand that at such a trial,

10  you would have the right to confront and cross examine all of

11  the witnesses called by the government against you?

12           THE DEFENDANT:  I understand, your Honor, yes.

13           THE COURT:  Do you understand that upon such a trial

14  you could remain silent and no inference could be drawn against

15  you by reason of your silence, or, if you wanted to, you could

16  take the stand and testify in your own defense?

17           THE DEFENDANT:  I understand, your Honor, yes.

18           THE COURT:  And do you understand that at such a trial

19  you would have the right to subpoena witnesses and evidence for

20  your own defense?

21           THE DEFENDANT:  Yes, your Honor.

22           THE COURT:  And do you understand that if your offer

23  to plead guilty is accepted, you give up these rights with

24  respect to these charges against you, and the Court has the

25  power to impose sentence, just as though a jury had brought in

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

**A182**

15

6B9FFARP                        Plea

1    a verdict of guilty against you?

2             THE DEFENDANT:  I understand, your Honor.

3             THE COURT:  Do you understand, sir, if you wanted to,

4    and if the government agreed, you could have a trial before a

5    judge without a jury in which event the burden of proof would

6    still be on the government, and you would still have the same

7    constitutional rights?

8             THE DEFENDANT:  I understand, your Honor.

9             THE COURT:  And do you understand, sir, that upon your

10   plea of guilty to Count One, the Court has the power to impose

11   upon you a maximum sentence of five years imprisonment, a

12   maximum fine, the greatest of $250,000; twice the gross

13   pecuniary gain derived from the offense, or twice the gross

14   pecuniary loss resulting from the offense; a $100 special

15   assessment?

16            THE DEFENDANT:  I understand, your Honor.

17            THE COURT:  All right, sir.  Counsel, I'm looking for

18   supervised release in here.

19            MS. RODGERS:  I don't see it in the agreement, your

20   Honor, so I'll check my code book here.

21            THE COURT:  All right, let me know.  Mr. Hueston?

22            MR. HUESTON:  Your Honor, it's not in the agreement.

23   I'll confer with counsel.

24            THE COURT:  Thank you, counsel.

25            (Pause)

16

6B9FFARP                    Plea

1           MS. RODGERS:  Yes, your Honor, pursuant to 18 United

2   States Code 3583, the maximum sentence of supervised release is

3   three years for both counts.

4           THE COURT:  For both counts, thank you.

5           Now, Mr. Farhane, do you understand, sir, that upon

6   your plea of guilty to Count One in the information, in

7   addition to those other punishments that I just mentioned, the

8   Court has the power to impose upon you a maximum period of

9   supervised release of three years?  Do you understand that,

10  sir?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Mr. Hueston, you're in agreement, are you

13  not?

14          MR. HUESTON:  Yes, ma'am.

15          THE COURT:  Thank you.

16          Now, Mr. Farhane, do you also understand that upon

17  your plea of guilty to Count Two, the Court has the power to

18  impose upon you a maximum sentence of eight years imprisonment,

19  a maximum period of supervised release of three years; a

20  maximum fine of the greatest of $250,000, and a $100 special

21  assessment?

22          Do you understand that, sir?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Do you also understand, sir, that upon

25  your plea of guilty to these two counts, Count One and Count

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

**A184**

17

6B9FFARP                    Plea

1   Two, the maximum period of imprisonment that the Court may

2   impose is 13 years?

3            THE DEFENDANT:  Yes, I understand, your Honor.

4            ' THE COURT:  Do you also understand, sir, that in

5   addition to those other punishments that I just mentioned, on

6   your plea of guilty to these counts the Court must order you to

7   make restitution to the victims of your crime?

8            Do you understand that, sir?

9            THE DEFENDANT:  I understand, your Honor.

10           THE COURT:  Now, I just want to remind you,

11  Mr. Farhane, that we forgot to put into this agreement the

12  provisions that you are subject to up to three years supervised

13  release upon these two counts.  Do you understand that, sir?

14           THE DEFENDANT:  I understand now, your Honor.

15           THE COURT:  All right, and are we all in agreement

16  here, Mr. Hueston, on this?

17           MR. HUESTON:  Yes, we are, your Honor.

18           THE COURT:  Thank you, sir.

19           Now, Mr. Farhane, do you also understand that if the

20  terms and conditions of supervised release are violated, you

21  may be subject to an additional period of imprisonment, which

22  is equal to the period of supervised release, with no credit

23  for time already spent on supervised release?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Have you discussed the sentencing

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

**A185**

18

6B9FFARP                          Plea

1    guidelines with your attorney?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Do you understand that the Court will not

4    be able to determine exactly what guideline applies to your

5    case until after a presentence report has been completed and

6    you and your attorney and the government have a chance to read

7    it and to challenge the facts that are set out by the probation

8    officer?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Do you also understand, sir, that in

11   determining a sentence, it is the Court's obligation to

12   calculate the applicable sentencing guideline range and then to

13   consider that range, any departures from that range under the

14   guidelines, and other sentencing factors set out in that same

15   statute, 18 United States Code Section 3553(a)?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Do you understand that under some

18   circumstances as set out in your plea agreement, you or the

19   government might have the right to appeal whatever sentence is

20   imposed?

21             THE DEFENDANT:  Yes.

22             THE COURT:  And do you understand, sir, that parole

23   has been abolished, so if you're sentenced to prison, you will

24   not be released on parole?

25             THE DEFENDANT:  Yes.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

**A186**

19

6B9FFARP                          Plea

1           THE COURT:  Do you understand that you will not be

2    able to withdraw your plea on the ground that your lawyer's

3    prediction or anybody else's prediction as to the applicable

4    guideline range or as to the actual sentence turns out not to

5    be correct?

6           THE DEFENDANT:  I understand.

7           THE COURT:  Do you understand that the offenses to

8    which you are pleading guilty are felonies?

9           THE DEFENDANT:  I understand.

10          THE COURT:  Are you fully satisfied with the advice,

11   counsel and representation given to you by your attorney,

12   Mr. Hueston?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do I correctly understand that you are

15   offering to plead guilty because you are in fact guilty?

16          THE DEFENDANT:  Yes.

17          THE COURT:  If you wish to plead guilty, sir, I'm

18   going to ask you to tell me what you did.  And as you can see,

19   your answers will be made in Mr. Hueston's presence, and your

20   answers will be recorded on the record.  I remind you that

21   you're still under oath, and if you answer falsely, your

22   answers may later be used against you.

23          Do you understand, sir?

24          THE DEFENDANT:  Yes, I understand, your Honor.

25          THE COURT:  And do you still wish to plead guilty?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

**A187**

20

6B9FFARP                          Plea

1              THE DEFENDANT:  Yes.

2              THE COURT:  Tell me what you did, Mr. Farhane.

3              THE DEFENDANT:  I agreed with others in the month of

4    November and December of 2001 to transfer money for mujahideen

5    in Afghanistan and Chechnya.

6              THE COURT:  And I take it, sir, from what you say,

7    that you were agreeing with other people to transfer money from

8    the United States overseas to Afghanistan and Chechnya, is that

9    right, sir?

10             THE DEFENDANT:  Yes.

11             THE COURT:  And when you say that the money was going

12   to go to the mujahideen, are those individuals who are

13   sometimes referred to as jihadists?  Is that right, sir?

14             THE DEFENDANT:  No, we usually call them mujahideen.

15             THE COURT:  I see.

16             And you knew that was unlawful at the time, did you

17   not, Mr. Farhane?

18             MR. HUESTON:  Your Honor, one moment, please.

19             THE COURT:  Take your time, Mr. Hueston.

20             (Pause)

21             MR. HUESTON:  Your Honor, reask the question again.

22             THE COURT:  Yes, thank you.

23             Mr. Farhane, a few minutes ago you told me what you

24   did with respect to Count One.  My question to you, sir is, you

25   knew, didn't you, that that was unlawful behavior, correct?

**A188**

21

6B9FFARP                    Plea

1              THE DEFENDANT:  I made a mistake, your Honor.

2              THE COURT:  And you knew that was unlawful behavior,

3       isn't that right, sir?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Is there anything further on Count One?

6              MS. RODGERS:  Just, your Honor, if your Honor could

7       inquire as to whether Mr. Farhane voluntarily entered into the

8       agreement and whether, in terms of the overt act requirement,

9       perhaps you could ask whether he attended any meetings with

10      others concerning this agreement.

11             THE COURT:  Now, Mr. Farhane, you told me, sir, that

12      you agreed with others to transmit this money.  Nobody forced

13      you to do that, right, sir?  You did it because you wanted to,

14      right?

15             THE DEFENDANT:  Yes.

16             THE COURT:  And did you, for example, attend any

17      meetings with these other people to discuss or otherwise take

18      steps to transfer the money you talked to me about?

19             THE DEFENDANT:  Yes, one time.

20             THE COURT:  Yes, sir, thank you.  Was there anything

21      further, Ms. Rodgers, as to Count One?

22             MS. RODGERS:  No.  Thank you, your Honor.

23             THE COURT:  Mr. Farhane, tell me what you did with

24      respect to Count Two, sir?

25             THE DEFENDANT:  On June 9, 2005, after all my due

22

6B9FFARP                    Plea

1   respect to the FBI, I lied or I made mistakes on my answers to

2   the questions, while they were doing investigation with regard

3   to transferring money outside of United States to mujahideen in

4   Afghanistan and Chechnya.

5          THE COURT:  All right, sir.  Now, when you gave those

6   false answers, you knew they were false, right?  You didn't

7   make a mistake or something, is that correct, sir?

8          MR. HUESTON:  One moment, your Honor.

9          THE COURT:  Yes, sir.

10         (Pause)

11         MR. HUESTON:  Your Honor, we can proceed.

12         THE COURT:  Certainly.  Mr. Farhane, you told me you

13  made certain statements to the FBI and the matters you told

14  them were not true.  You knew those matters weren't true,

15  didn't you, sir, when you told the FBI?

16         THE DEFENDANT:  Yes.

17         THE COURT:  You knew that was unlawful behavior,

18  correct, sir?

19         THE DEFENDANT:  Yes, your Honor.  I made a mistake.

20         THE COURT:  But you knew it was unlawful behavior,

21  correct?

22         THE DEFENDANT:  Yes.  Yes, your Honor.

23         THE COURT:  Ms. Rodgers, is there anything further

24  with respect to Count Two?

25         MS. RODGERS:  Not from the defendant.  I would just

23

6B9PFARP                    Plea

1    proffer if this matter went to trial or I would proffer here

2    during the guilty plea that the government would show that the

3    statements were material to a terrorist investigation by the

4    FBI at the time.

5              THE COURT:  Very well, ma'am.  And the government

6    certainly represents that it would make a prima facie case,

7    correct?

8              MS. RODGERS:  Yes.

9              THE COURT:  Mr. Hueston, do you know of any valid

10   legal offense that would prevail if Mr. Farhane went to trail?

11             MR. HUESTON:  No, your honor.

12             THE COURT:  And do you know of any reason why he

13   should not plead guilty?

14             MR. HUESTON:  No, your honor.

15             THE COURT:  Very well, then.  The plea is accepted.

16   It's the finding of the Court in the case of the United States

17   against Abdulrahman Farhane, that the defendant is fully

18   competent and capable of entering an informed plea and that his

19   plea of guilty is knowing and voluntary and is supported by an

20   independent basis in fact containing each and every essential

21   element of the offense.

22             My findings are based upon Mr. Farhane's allocution

23   and, in addition, upon my observations of him here in court

24   today.  The plea of guilty is accepted and shall be entered.

25   The defendant is now adjudged to be guilty of the offense.

**A191**

24

6B9FFARP                         Plea

1              Now, Mr. Farhane, as you know, you'll be required to

2      visit with the probation officer and to give the officer

3      certain information to be included in the presentence report.

4      Mr. Hueston may be present with you when you visit with the

5      probation officer, if you want, but certainly both you and he

6      and the government will have a chance to read the presentence

7      report prior to sentencing.

8              Sentencing will be on --

9              THE DEPUTY CLERK:  February 13 at 4:00 p.m.

10             THE COURT:  Is there anything further today, counsel?

11             MS. RODGERS:  Nothing from the government, your Honor.

12             MR. HUESTON:  Nothing from the defendant, your Honor.

13             THE COURT:  Thank you, counsel.  Good afternoon.  I'm

14     sorry you had to wait.

15             (Adjourned)

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2025, the foregoing document was filed electronically using the CM/ECF system, and a copy of the foregoing document was served on the other party to the proceeding in the trial court (who consented to electronic service) at the following email address:

> Jun Xiang
> Assistant United States Attorney
> 1 St. Andrew's Plaza
> New York, NY 10007
> (212) 637-2289
> jun.xiang@usdoj.gov

I hereby further certify that a copy of the foregoing document is to be provided to the District Court at the following address:

> Hon. Loretta A. Preska
> United States District Court
> Southern District of New York
> Daniel Patrick Moynihan
> United States Courthouse
> 500 Pearl St.
> New York, NY 10007-1312

*/s/ Alan E. Schoenfeld*
ALAN E. SCHOENFELD

November 18, 2025