UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

- - - - - - - - - - - - - - - - - - - - - - - - - x

In re: Abderrahmane Farhane                    Docket No. 25-2937

                                               AFFIRMATION IN
                                               OPPOSITION TO MOTION
                                               FOR STAY PENDING
                                               MANDAMUS PETITION

- - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK                    )
COUNTY OF NEW YORK               :        ss.:
SOUTHERN DISTRICT OF NEW YORK   )

JUN XIANG, pursuant to Title 28, United States Code, Section 1746, hereby affirms under penalty of perjury:

1.     I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York, and I represent the United States. I respectfully submit this affirmation in opposition to petitioner Abderrahmane Farhane's motion (the "Motion") to stay proceedings before the Honorable Loretta A. Preska, United States District Judge, pending resolution of Farhane's petition for a writ of mandamus (the "Petition").

## STATEMENT OF FACTS

### A. Farhane's Conviction

2.     After the September 11, 2001 terrorist attacks, Farhane met with a confidential source (the "CS") to discuss ways that Farhane could help send money

to support terrorist jihadists overseas. (PSR ¶¶ 9–11).[1] Farhane introduced the CS to another terrorist, Tarik Ibn Osman Shah. (PSR ¶ 11). Among other things, Farhane, the CS, and Shah discussed sending less than $10,000 at a time to foreign jihadists to avoid drawing law enforcement scrutiny. (PSR ¶ 12).

3.  Farhane was a Moroccan national at the time of his criminal conduct. (PSR ¶¶ 46–52). On March 22, 2001, Farhane applied to become a United States citizen. (A-123). During that process, Farhane denied that he had ever knowingly committed a crime for which he had not been arrested. (A-124–25). On April 19, 2002, Farhane received American citizenship. (A-125).

4.  On May 28, 2005, Shah was arrested with guns, military training manuals, and videotapes of Osama bin Laden. (PSR ¶ 14).

5.  On June 9, 2005, during interviews with federal law enforcement, Farhane asserted that he had never met in person with Shah or the CS and denied discussing with them the possibility of sending money to jihadists overseas. (PSR ¶¶ 15–17).

---

[1] "PSR" refers to the Presentence Report prepared by the Probation Office in connection with Farhane's sentencing; "A-" refers to the appendix filed with Farhane's petition for a writ of mandamus; and "Dkt." refers to an entry on the District Court's docket for this case. Unless otherwise noted, quotations omit all internal quotation marks, citations, and previous alterations.

6.     On October 26, 2005, Farhane was arrested on a criminal complaint charging him with making false statements, in violation of 18 U.S.C. § 1001(a)(2). From his arrest through sentencing, Farhane was represented by Michael Hueston, Esq. ("Trial Counsel"). Farhane was subsequently indicted on charges of conspiracy to provide material support for terrorism, in violation of 18 U.S.C. § 2339A, and making false statements, in violation of 18 U.S.C. § 1001(a)(2). (A-28–34).

7.     On November 9, 2006, Farhane pleaded guilty, pursuant to a plea agreement, to a Superseding Information charging him with conspiracy to commit money laundering, in violation of 18 U.S.C. § 371, and making false statements, in violation of 18 U.S.C. § 1001(a)(2). (*See* A-67–70).

8.     On April 16, 2007, Judge Preska sentenced Farhane to 13 years' imprisonment, to be followed by two years' supervised release. (Dkt. 133).

9.     On or about May 30, 2017, Farhane completed his prison sentence and began serving his term of supervised release.

**B. The Denaturalization Proceeding and Section 2255 Litigation to Date**

10.     On August 13, 2018, the U.S. Attorney's Office for the Eastern District of New York filed an action seeking to denaturalize Farhane. *See United States v. Farhane*, No. 18 Civ. 4347 (RPK) (E.D.N.Y.). That Complaint alleged that Farhane had illegally procured naturalization because (1) his criminal conduct showed an absence of good moral character; (2) his false testimony under oath, for purposes of

3

obtaining naturalization, showed the absence of good moral character, and (3) he had concealed material facts and made willful misrepresentations. (A-130–34).

11. On December 19, 2018, Farhane filed a motion under 28 U.S.C. § 2255 (the "Section 2255 Motion") seeking to vacate his conviction and sentence on the ground that Trial Counsel provided ineffective assistance by failing to advise him of the possibility of denaturalization. Farhane publicly filed an affidavit in support of that motion describing in detail his attorney-client communications with Trial Counsel. (A-85–91 (the "Farhane Affidavit")). Farhane publicly disclosed, among others, the following communications between himself and Trial Counsel:

> 27. Mr. Hueston told me that I had three options in response to the criminal charges: I could cooperate with the government; I could plead guilty; or I could go to trial.
>
> 28. I told Mr. Hueston that I wanted to go to trial and that I did not want to plead guilty. Mr. Hueston told me that it was not a good idea to go to trial. He told me that a jury might be more likely to convict me because I was Muslim and did not speak English like a native speaker.
>
> 29. I told Mr. Hueston that my priority was to have the shortest separation from my family. My wife and all six of my children were financially dependent on me at that time. I wanted to return to them as soon as possible to resume my life with them in Brooklyn.
>
> 30. Mr. Hueston told me that he would negotiate the best possible deal in order to minimize my sentence. He advised me that refusing to plead guilty could result in a sentence as long as thirty years.

31. Despite my wish to go to trial and my reluctance to take a plea bargain, I decided to follow Mr. Hueston's advice. . . .

. . .

37. I am not aware of any effort by Mr. Hueston, in negotiating a plea agreement on my behalf, to reach an agreement with the government that would have protected me—or my children—against the loss of U.S. citizenship and my deportation.

38. At all times during Mr. Hueston's representation of me, my priority was to minimize the length of my separation from my family and the harmful impact on the lives of my wife and children. A plea deal that opened the door to loss of citizenship and deportation, and that exposed two of my children to a similar risk, was contrary to my priorities.

39. I would not have entered a guilty plea if Mr. Hueston had told me that I could lose my U.S. citizenship as a result.

. . .

42. If I had been aware of these consequences of my plea, I would have asked Mr. Hueston to negotiate a different agreement that protected me and my family from these consequences. If that was not an option, I would have refused to plead guilty and insisted on proceeding to trial. I would have chosen to go to trial even if I faced more years in prison as a result.

(A-88–90).

12. Farhane cited and relied upon these attorney-client communications in his argument in support of the Section 2255 Motion, none of which was filed under seal. (*See, e.g.*, Dkt. 229 at 3, 16).

13. On March 31, 2020, Judge Preska denied the Section 2255 Motion, holding that, "at a minimum, [Farhane] failed to demonstrate that his defense

5

lawyer's conduct was objectively unreasonable" because denaturalization was a collateral consequence about which counsel was not required to advise him. (Dkt. 254 at 3–4).

14.    Farhane appealed, again relying on the Farhane Affidavit in his publicly filed briefs. (*See, e.g.*, *Farhane v. United States*, No. 20-1666, Dkt. 58 at 43–44; *id.* Dkt. 60 at 294–300; *id.* Dkt. 125 at 23). A divided panel of this Court affirmed denial of the Section 2255 Motion, holding that possible denaturalization was a collateral consequence of Farhane's guilty plea outside the scope of the Sixth Amendment. *Farhane v. United States*, 77 F.4th 123 (2d Cir. 2023).

15.    This Court then reheard the appeal *en banc*, and Farhane continued to rely on the Farhane Affidavit. (*See Farhane*, No. 20-1666, Dkt. 224 at 6–7). The *en banc* Court ultimately held that "the Sixth Amendment entitles a naturalized U.S. citizen facing the risk of deportation following denaturalization to no less protection than a noncitizen facing the risk of deportation." *Farhane v. United States*, 121 F.4th 353, 357 (2d Cir. 2024) (en banc). The Court expressed no view of the underlying merits of the Section 2255 Motion and remanded for the District Court to determine, in the first instance, whether Farhane had satisfied either of the two prongs of *Strickland v. Washington*, 466 U.S. 668 (1984): deficient performance by counsel and prejudice. *Farhane*, 121 F.4th at 374–76. This Court suggested that, in

conducting further fact-finding, the District Court should give Trial Counsel an opportunity "to describe or to explain his conduct." *Id.* at 375.

16.    The *en banc* Court also identified specific factual disputes that Judge Preska should resolve on remand. These included—as relevant to the prejudice prong of *Strickland*—"whether the defendant has demonstrated a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 376. This Court suggested that Judge Preska permit the parties to engage in factfinding that would test the "credibility of Farhane's assertion that, had he been properly advised, he would have insisted on proceeding to trial." *Id.* This Court directed that this inquiry "should" include "whether Farhane might have placed particular emphasis on immigration consequences in deciding whether or not to plead guilty—enough to forgo the ten-year reduction in his maximum possible sentence that resulted from his entry of a guilty plea." *Id.* at 376 n.19. This Court further suggested that Judge Preska might wish to consider Farhane's claim that, at the time of the plea, he believed "he could have presented viable defenses at trial, and that his trial counsel could have leveraged these defenses to negotiate an alternative plea deal that foreclosed the risk of denaturalization and deportation." *Id.* at 376 n.20.

### C. Proceedings on Remand

17.    On remand, the parties disputed the scope of the waiver of attorney-client privilege that had been effectuated by Farhane's allegations of ineffective assistance of counsel.

18.    Farhane argued that he had waived privilege only as to "communications with trial counsel regarding the potential denaturalization or deportation consequences of his plea." (Dkt. 290 at 1). Farhane also sought a protective order restricting to the Section 2255 litigation the Government's use of any communications over which privilege was waived and barring any Government attorney given access to such communications from participating in the denaturalization proceeding or any future retrial of the criminal case. (Dkt. 290 at 19).

19.    The Government argued that Farhane had waived attorney-client privilege over communications related to *both* prongs of his ineffective-assistance claim, as detailed below (the "Waived Subjects"):

> (1) [Farhane]'s naturalization, including whether the naturalization overlapped in time with the offense conduct, (2) [Farhane]'s desire to live in the United States, (3) the nature and strength of [Farhane]'s ties to Morocco or another foreign country, (4) [Farhane]'s attitudes toward United States citizenship for himself or his family, (5) the perceived strength of the Government's evidence, including potential trial defenses, and (6) [Farhane]'s goals and instructions to Mr. Hueston with respect to plea negotiations.

8

(Dkt. 293 at 7). The Government did not seek any attorney-client communications relating to Farhane's factual guilt. (*Id.* at 10). The Government argued that each of the Waived Subjects was directly implicated by Farhane's *Strickland* claim and would bear directly on the factual disputes that this Court directed the District Court to resolve. (*Id.* at 7). The Government emphasized that Farhane's waiver over the Waived Subjects also flowed directly from his reliance on his publicly filed Farhane Affidavit, which disclosed communications about all of the Waived Subjects. (*Id.* at 8–9). The Government opposed Farhane's request for a protective order. (*Id.* at 9–11).

20.    On October 23, 2025, Judge Preska concluded that Farhane had waived attorney-client privilege over each of the Waived Subjects. (A-94–108). Relying on this Court's precedents in *In re County of Erie*, 546 F.3d 222, 228 (2d Cir. 2008), *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000), and other cases, Judge Preska held that a "privilege-holder may not selectively waive privilege to assert a fact to influence a decisionmaker 'while denying its adversary access to privilege material potentially capable of rebutting [that] assertion.'" (A. 100 (quoting *John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003))). Judge Preska found that Farhane had in fact "relied on" communications about each of the Waived Subjects in asserting and litigating his ineffective-assistance claim. (A-101–03

(applying *Erie*, 546 F.3d at 228)). For example, with respect to his willingness to go to trial and the perceived strength of the evidence, Farhane asserted the following:

> I told Mr. Hueston I wanted to go to trial and I did not want to plead guilty. Mr. Hueston told me that it was not a good idea to go to trial. He told me that a jury might be more likely to convict me because I was Muslim and did not speak English like a native speaker.

(A. 101 (quoting Farhane Aff. ¶ 28)). Similarly, Farhane asserted that he "told Mr. Hueston that [his] priority was to have the shortest separation from [his] family." (A-101 (quoting Farhane Aff. ¶ 29)). Judge Preska found that, by describing these communications in support of the Section 2255 Motion, Farhane had relied upon them to prove the prejudice prong of *Strickland*—that is, to support the claim that "he would not have pled guilty and would have insisted on going to trial but for Mr. Hueston's failure to advise him of the deportation and denaturalization consequences of his plea." (A-101–02).

21.     Judge Preska also granted-in-part and denied-in-part Farhane's motion for a protective order, (a) directing that "communications disclosed by trial counsel shall be filed under seal, and the attorney-client privilege shall not be deemed automatically waived in any other Federal or State proceeding . . . "; and (b) prohibiting the Government from introducing any such communications against Farhane in any other proceeding "without further order of a court of competent jurisdiction or a written waiver by [Farhane]." (A-106). However, Judge Preska denied Farhane's request that any Government attorneys who had participated in

responding to his Section 2255 Motion be barred from participating in his potential criminal re-prosecution or communicating with attorneys handling the denaturalization proceedings. (A-106–07). Judge Preska subsequently denied Farhane's request for a stay of further proceedings pending Farhane's mandamus petition to this Court. (A-113).

22.    Farhane thereafter filed the instant mandamus petition and motion for a stay pending resolution of that petition.

## ARGUMENT

### THE MOTION FOR A STAY SHOULD BE DENIED

23.    The District Court's order regarding the scope of the attorney-client waiver was not an abuse of discretion. The ruling is a routine order that is faithful to this Court's precedents regarding attorney-client privilege; is consistent with this Court's remand instructions; and is part of a consistent practice among District Courts holding that ineffective-assistance claims constitute subject-matter waivers over attorney-client communications relevant to the subjects upon which such movants rely. Farhane has not come close to demonstrating a likelihood of success on the merits of his petition, particularly given the mandamus requirement that a petitioner demonstrate that his "right" to such a writ is "clear and indisputable." *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 381 (2004). Farhane has essentially admitted as much by arguing that mandamus review is available because the "petition raises

11

two important issues *in a context the Second Circuit has not directly addressed*." (Mot. 10 (emphasis added)). In fact, the opposite is true: the lack of on-point precedent *forecloses* mandamus relief because Farhane is *not* clearly and indisputably entitled to the relief he seeks under existing precedent.

24. The other stay factors also weigh against a stay. Farhane has not shown any irreparable injury, as the matter can be litigated on direct appeal following final adjudication of his Section 2255 Motion, and Judge Preska has issued an order prohibiting the Government from using the waived communications for any purpose other than responding to that motion. Moreover, the public interest would not be served by further delay of the District Court proceedings or by a general practice of permitting criminal defendants to use the exceptional remedy of mandamus to obtain interlocutory review of ordinary-course discovery orders.

## A. Applicable Law

25. "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). "It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Id*. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id*. at 433–34.

26.    This Court considers four factors in deciding whether to grant a stay of an order pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*United States v. Grote*, 961 F.3d 105, 122-23 (2d Cir. 2020). The first two factors are the "most critical." *Nken*, 556 U.S. at 434.

27.    With respect to the first factor, "[i]t is not enough that the chance of success on the merits be better than negligible." *Id*. Here, Farhane faces a high hurdle, because he must show a likelihood of obtaining a writ of mandamus, which is a remedy that is warranted "only in exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion," and thus is to be used "sparingly." *In re United States*, 945 F.3d 616, 622-23 (2d Cir. 2019). Indeed, a mandamus petition must establish (1) that he has "no other adequate means to attain the relief he desires . . . to ensure that the writ will not be used a substitute for the regular appeals process"; (2) that "his right to issuance of the writ is clear and indisputable"; and (3) that issuance of the writ "is appropriate under the circumstances" in the discretion of the issuing court. *Cheney*, 542 U.S. at 380–81.

28.    As to the second factor, "simply showing some possibility of irreparable injury fails to satisfy" it. *Nken*, 556 U.S. at 434–35. The third and fourth

"factors merge when the Government is the opposing party." *Id*. at 435. "The degree to which a factor must be present varies with the strength of the others; more of one factor excuses less of the other." *S.E.C. v. Daspin*, 557 F. App'x 46, 48 (2d Cir. 2014).

29.     Where these factors weigh against a stay, courts have denied stays pending appeal even of orders requiring disclosure of materials over which a party had asserted privilege. *E.g.*, *Rubin v. United States*, 524 U.S. 1301, 1301–02 (1998) (Rehnquist, C.J.) (executive privilege); *In re Cnty. of Erie*, 473 F.3d 413, 417 (2d Cir. 2007) (attorney-client privilege).

30.     This Court reviews the denial of a stay for abuse of discretion. *Grote*, 961 F.3d at 123. On direct appeal, this Court would review the District Court's waiver decision and protective order decision for abuse of discretion. *See In re Grand Jury Proceedings*, 219 F.3d at 182; *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 228 (2d Cir. 2001).

## B. Discussion

### 1. Farhane's Mandamus Petition Has No Chance of Success on the Merits

31.     Farhane cannot show that he is likely to succeed on the merits of his mandamus petition. The petition is foreclosed by governing law and relies in substantial part on out-of-Circuit decisions, precluding Farhane from demonstrating a "clear and indisputable" "right" to the writ under this Circuit's precedent. *Cheney*,

14

542 U.S. at 380–81; *cf. United States v. Whab*, 355 F.3d 155, 158–59 (2d Cir. 2004) (holding, in plain error context, that plain error will ordinarily not be found in absence of clear contravention of on-point precedent).

Scope of Waiver

32.     Judge Preska correctly applied this Court's precedents recognizing that "the attorney-client privilege cannot at once be used as a shield and a sword" and, instead, is "waived when defendant asserts a claim that in fairness requires examination of protected communications." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). Judge Preska correctly found that that Farhane's ineffective assistance claim "rel[ies] on privileged advice from his counsel to make his claim or defense" as to all of the Waived Subjects because Farhane has invoked his communications with counsel under *both* the deficient-performance *and* prejudice prongs of his ineffective assistance claim. (A-99–103). Indeed, the Farhane Affidavit expressly describes Farhane's communications with counsel regarding: (1) the perceived strength of the Government's case and the likelihood of an acquittal at trial; (2) the possible sentencing outcomes if Farhane pleaded guilty rather than proceeding to trial; (3) the weight that Farhane placed on limiting the term of imprisonment; (4) the weight that Farhane placed on United States citizenship and being able to remain in the United States; and (5) the plea negotiations that counsel undertook on Farhane's behalf. (A-88–90). There was no

abuse of discretion in Judge Preska's recognition that, by putting those communications before the District Court and this Court in support of his Section 2255 Motion and by putting his communications with counsel at issue with respect to *both* prongs of *Strickland*, Farhane waived privilege as to other communications with counsel that are relevant to *both* of those topics. *See generally Hardy v. United States*, No. 10 Cr. 1123 (JSR), 2012 WL 2674535, at *1 (S.D.N.Y. July 5, 2012); *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Alcoa S.S. Co.*, 232 F.R. D. 191, 198 (S.D.N.Y. 2005) ("[Where a party] places advice that it has received from an attorney at issue in litigation, it has waived the privilege with respect to all such advice on the same topic."); (*see also* Dkt. 293 (collecting cases)).

33. Farhane's arguments to the contrary lack merit. *First*, Farhane misdescribes Judge Preska's ruling as a determination that Farhane had waived privilege over communications irrespective of whether he had relied on them. (Mot. 11). Judge Preska did no such thing. Rather, Judge Preska expressly stated that waiver requires reliance and then concluded that Farhane had relied on such communications as to both prongs of the *Strickland* analysis. (A. 101–03).

34. Indeed, the numerous District Court decisions that reference relevance as the scope-of-waiver standard do so in recognition of the fact that almost all ineffective-assistance claims *necessarily* rely on communications with counsel

16

about both prongs of the *Strickland* standard in the way contemplated by this Court's decision in *Erie*, 546 F.3d at 229. *Erie* therefore does not support Farhane's position.

35.     In *Erie*, this Court simply held that relevance to the subject-matter of a claim, *standing alone*, cannot overcome a valid claim of attorney-client privilege unless the privilege holder has put its attorney's advice at issue. In that civil case, the plaintiffs sought access to privileged emails on the ground that the privilege was waived solely because the emails were relevant to the lawsuit. But this Court rejected that assertion because defendants had not relied on advice of counsel in any way in defending the action. *Erie*, 546 F.3d at 229. *Erie* thus stands for the proposition that the privilege holder must be the party that puts otherwise privileged communications at issue by relying on privileged material; it nowhere requires that reliance be measured on a communication-by-communication basis.

36.     *Second*, Farhane argues that Judge Preska erred by "finding waiver as to communications about certain topics that could help the government rebut Mr. Farhane's ineffective-assistance claim generally, rather than the specific factual assertions at issue." (Mot. 11). Again, the argument misdescribes Judge Preska's decision, which points directly to factual assertions made by Farhane—for example, that he "told Mr. Hueston that [his] priority was to have the shortest separation from [his] family" (A-101 (quoting Farhane Aff. ¶ 28))—that related to the Waived Subjects such that they could be tested only by granting the Government access to

communications about the Waived Subjects. The principle that the scope of waiver of attorney-client privilege turns on the need to rebut a privilege-holder's self-serving assertions is hardly novel; it is the core of the waiver doctrine. *See, e.g.*, *John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003). Farhane made the strategic choice to disclose privileged communications about the full set of Waived Subjects in order to maximize his chances at obtaining relief. Judge Preska did not abuse her discretion in concluding that Farhane should be held to the consequences of that decision.

37.     *Third*, Farhane argues that Judge Preska should have given no weight to the fact that allowing Farhane to characterize his communications with Trial Counsel—while prohibiting Trial Counsel from disputing those characterizations—would be unfair. (Mot. 11). The argument ignores this Court's *en banc* directive that Judge Preska give Trial Counsel a fair opportunity to "explain" himself. *Farhane*, 121 F.4th at 375. That would impossible if, as Farhane contends, Farhane should be permitted to characterize his discussions with Trial Counsel in whatever way he pleases while muzzling Trial Counsel from disputing those characterizations. Indeed, the unfairness of selective waiver is *precisely* the balancing test this Court's precedent requires the District Court to conduct.

38.     For example, Farhane wants the District Court to believe him that "I told Mr. Hueston that I wanted to go to trial and that I did not want to plead guilty"

18

(A-88) but seeks to bar counsel from confirming or denying that allegation or disclosing other communications shedding light on Farhane's appetite for trial. Farhane wants the District Court to believe him that "I would not have entered a guilty plea if Mr. Hueston had told me that I could lose my U.S. citizenship as a result" (A-90) but seeks to bar counsel from disclosing what he recalls Farhane saying about the importance of his citizenship. Farhane wants the District Court to believe him that "If I had been aware of these consequences of my plea, I would have asked Mr. Hueston to negotiate a different agreement that protected me and my family from these consequences" (A-90) but seeks to bar counsel from disclosing the instructions Farhane gave him during plea negotiations. Farhane wants the District Court to believe him that "I would have chosen to go to trial even if I faced more years in prison as a result" (A-90) but seeks to bar counsel from disclosing communications about Farhane's risk tolerance for a longer sentence.

39.    As to each of the Waived Subjects, Farhane has put before the District Court a self-serving account of communications between himself and Trial Counsel but seeks to prevent counsel from disclosing any contradictory or contextualizing evidence on the same topics. There was no abuse of discretion in Judge Preska's determination that that is fundamentally unfair.

Protective Order

40.     Farhane also cannot show a likelihood of success on his claim that Judge Preska abused her discretion in limiting use of the waived communications to this proceeding but not barring Government attorneys who participated in this proceeding from working on any potential re-prosecution of the criminal case merely because those attorneys will have access to material over which privilege was *waived*. (Mot. 12–13). Farhane cites no case in which such a request has been granted. This lack of on-point precedent forecloses mandamus relief, because it is impossible to show that Farhane had a "clear and indisputable" "right" to a ruling in his favor. *Cheney*, 542 U.S. at 380–81.

41.     The implications of Farhane's request border on the absurd. If Farhane is correct and Judge Preska was compelled to grant the requested order, criminal defendants would have a unilateral ability to compel the Government either to prevent the prosecutors responsible for a case from litigating that claim or to require the Government to assign a new team of prosecutors to any future retrial. Absent a clear and indisputable showing that Judge Preska directly violated an on-point decision of this Court or the Supreme Court, a writ of mandamus cannot issue, and Farhane is not entitled to a stay.

### 2. Farhane Will Not Be Irreparably Injured Absent a Stay

31.     Farhane has also failed to demonstrate irreparable injury absent a stay. First, the denaturalization proceeding is currently stayed, as it has been since Farhane filed the Section 2255 Motion in 2019. More importantly, Judge Preska has already issued a protective order prohibiting the Government from using communications about the Waived Subjects in any proceeding (including the denaturalization proceeding or any criminal retrial in the event the Section 2255 Motion is granted). (A-108). Apart from gesturing generically at the importance of privileged communications, Farhane has identified no way in which communications about the Waived Subjects would be relevant to any criminal retrial if the Section 2255 Motion is granted. At such a trial, the Government's burden would be to prove the essential elements of the offenses beyond a reasonable doubt, and communications about the Waived Subjects in no way help the Government satisfy that burden (and even before Judge Preska's protective order, the Government disclaimed any intention of relying on such material at any retrial). Importantly, the Government has not sought—and Judge Preska has not ordered—the disclosure of any attorney-client communications about whether Farhane was, in fact, guilty of committing the offenses.

32.     Nor would disclosure be irreparable even as to the Section 2255 litigation itself. The Supreme Court has recognized as much in explaining why privilege holders must typically await final judgment to appeal an interlocutory

discovery order compelling the disclosure of privileged information. *See, e.g.*, *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009); *accord, e.g.*, *Erie*, 473 F.3d at 417. If the District Court ultimately denies the Section 2255 Motion, Farhane will be able to appeal the District Court's disclosure order. If this Court reverses on that basis, the District Court would then be able to bar the Government from reliance on any incorrectly disclosed materials in the renewed Section 2255 litigation on remand. There is no basis to disrupt the normal finality rules in these circumstances. *See United States v. Maxwell*, 832 F. App'x 21, 23 (2d Cir. 2020).

### 3. A Stay Is Against the Public Interest

33.     Finally, a stay would not serve the public interest. Farhane was recorded trying to send money to jihadists in the aftermath of the September 11 attacks. The public has a strong interest in prompt resolution of this litigation, to ensure certainty regarding Farhane's conviction and sentence for the serious terrorism-related conduct in which he engaged. The public has an equally strong interest in ensuring that those who commit terrorism crimes and then lie about it—while simultaneously seeking the benefits of U.S. citizenship—are not rewarded for their dishonesty. *See United States v. Bert*, 814 F.3d 70, 83 (2d Cir. 2016) ("Certainly, the public is the loser when a criminal trial is not prosecuted expeditiously, as suggested by the aphorism, justice delayed is justice denied.").

## **CONCLUSION**

34. For the foregoing reasons, Farhane's motion should be denied.[2]

Dated: New York, New York
    December 1, 2025

       Respectfully submitted,

       JAY CLAYTON
       United States Attorney

     By: /s/ Jun Xiang
       Jun Xiang
       Assistant United States Attorney
       (212) 637-2289

---

[2] Because mandamus relief is so plainly unwarranted as described above, this Court can and should deny the Petition without ordering a full answer from the Government. *See* Fed. R. App. P. 21(b)(1).

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this opposition complies with the type-volume limitation of the Federal Rules of Appellate Procedure. As measured by the word processing system used to prepare this opposition, there are 5,199 words in this opposition.

JAY CLAYTON
United States Attorney for the
Southern District of New York

By:    JUN XIANG
Assistant United States Attorney
(212) 637-2289